# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

FELIX L. SORKIN,

                    Plaintiff,

      vs.

UNIVERSAL BUILDING PRODUCTS, INC.,

                    Defendant.

Civil Action No. 1:08-CV-133 RC

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF

---

Defendant Universal Building Products Inc. ("UBP") moves the Court pursuant to Fed. R. Civ. P. 56 for summary judgment dismissing the Complaint in its entirety on the ground that, as a matter of law, the products of UBP accused by Sorkin (products sold under the trademark "UNI-CHAIR") do not infringe any claim of U.S. Patent No. 7,237,367 ("the'367 patent"). UBP submits the following brief in support of this motion, as well as the Declaration of Marinus Hansort and the Declaration of Lisa M. Arent. In addition, this motion is premised upon the pleadings and all proceedings held in this case.

UBP seeks dismissal of this action because Sorkin's claim of infringement fails as a matter of law. The UNI-CHAIR products do not infringe the '367 patent. The facts material to Sorkin's allegations of infringement are not in dispute.

As shown below, the Complaint should be dismissed in its entirety because the UNI-CHAIR products do not contain a "pin member," a required element of all asserted claims of the '367 patent. The foot on the bottom of the leg of the UNI-CHAIR products does not have a pointed end. On this basis alone, this action must be dismissed.

In addition, the accusation of infringement against the UNI-CHAIR product fails as a matter of law because certain sizes of the UNI-CHAIR product do not have a two-part leg, or do not have legs at all.  Those sizes therefore are lacking the "first portion" and "second portion," and "end of said first portion," elements required by all asserted claims of the patent.

Further, the UNI-CHAIR products do not infringe asserted claims 1 through 5 or 7 through 10 of the '367 patent because the sides of the "first portion" and/or the "second portion" of the legs on those chairs are not "converging" or "tapering," required elements of those claims. On those chairs, the sides of both portions of the leg in question do not "come closer together" along the length of the portion.  The UNI-CHAIR products do not infringe claims 3, 11, or 12 of the '367 patent also because the UNI-CHAIR products do not have a "pin member" in the general shape of a cone.

Finally, claim 8 of the '367 patent is not infringed by any of the UNI-CHAIR products because the Accused Products are not made of "nylon," a required element of claim 8.  The products are rather manufactured of polypropylene, which is a different material.

## UNDISPUTED MATERIAL FACTS

1.      On March 12, 2008, plaintiff, Felix Sorkin, filed this patent infringement action against UBP, contending that UBP sells "construction chairs covered by the '367 patent."  (Arent Decl., Ex. O) (Compl. ¶ 10).  The Complaint did not specify which UBP products infringe the patent.

2.      The '367 patent was issued on July 3, 2007.  (Arent Decl., Ex. O) (Compl. ¶ 8, Ex. A).

3.      The construction chair described in the '367 patent is for use in tilt wall construction.  (Arent Decl., Ex. O) (Compl. ¶ 9).

A.     **The Products Accused of Infringing the '367 Patent**

4.      Pursuant to P.R. 3-1, on August 11, 2008, Sorkin purported to identify the UBP products he contends infringe the '367 patent, by serving a disclosure.  (Arent Decl. ¶ 2, Ex. A). In that disclosure, he contends that UBP's UNI-CHAIR product infringes claims 1-5 and 8-12 of the '367 patent.  *Id.* at p.1.

5.      In the P.R. 3-1 disclosure, Sorkin asserted that all sizes (the entire product line) of two different versions of construction chairs sold under the trademark "UNI-CHAIR" infringe the patent.  *Id.* at p.2.  Although there are numerous sizes of chairs in the UNI-CHAIR product line, and differences in design, Sorkin provided just two claim charts purporting to set forth how the UNI-CHAIR product depicted in the chart contained each and every element of the asserted claims of the '367 patent.  (Arent Decl., Ex. A).  He provided one claim chart for one size of the version of the UNI-CHAIR product currently sold by UBP (hereafter referred to as the "Current UNI-CHAIR product") and one claim chart for one size of an earlier version of the UNI-CHAIR product previously sold by UBP.  (Arent Decl. ¶ 3).  That particular earlier UNI-CHAIR product is one of the sizes of UNI-CHAIR products in the "first generation" of UNI-CHAIR products. (Hansort Decl. ¶ 41).

6.      Although the specific products are not identified by size in the disclosure, the size of the Current UNI-CHAIR product for which a claim chart was provided appears to be the 4-4.5 size, and the size of the first generation UNI-CHAIR product for which a claim chart was provided appears to be between the 2-2.5 inch and the 3-3.5 inch size of an earlier version of the UNI-CHAIR product.  (Arent Decl. ¶ 3; Hansort Decl. ¶ 41).

7.      As set forth in the chart below, on September 19, 2008, UBP produced manufacturing drawings showing the design and specifications for the UNI-CHAIR products for the following sizes of the Current UNI-CHAIR product and for the following sizes of the earlier

versions of the UNI-CHAIR product that were manufactured by UBP before it began offering the current UNI-CHAIR product for sale.  (Arent Decl. ¶¶ 4, 5).  In addition, also set forth in the chart are the sizes of the Current UNI-CHAIR product, which UBP provided to Sorkin's attorneys on September 26, 2008.  (Arent Decl. ¶¶ 6, 7, Ex. N).

| Manufacturing Drawings Provided:  Current Uni-Chairs, Sizes: | Current UNI-CHAIR Products Provided, Sizes | Manufacturing Drawings for Earlier Version Provided, Sizes: |
|---|---|---|
|  | 0.75 | 0.75 |
| 1-1.5 | 1-1.5 | 1-1.5 |
| 1.25-1.75 | 1.25-1.75 | 1.25-1.75 |
| 2-2.5 | 2-2.5 | 2-2.5 |
| 2.25-2.75 |  | 2.25-2.75 |
| 3-3.5 | 3-3.5 | 3-3.5 |
| 3.25-3.75 | 3.25-3.75 | 3.25-3.75 |
| 4-4.5 | 4-4.5 | 4-4.5 |
| 4.25-4.75 | 4.25-5.75 | 4.25-5.75 |
| 5-5.5 | 5-5.5 | 5-5.5 |
| 5.25-5.75 | 5.25-5.75 | 5.25-5.75 |
| 6-6.5 |  | 6-6.5 |
|  | 6-6.5 with RING |  |
| 6.25-6.75 |  | 6.25-6.75 |
| 7.25-7.75 |  | 7.25-7.75 |
| 7.25-7.75 with RING |  |  |
|  |  | 8-8.5 |
|  | 8.25-8.75 with RING | 8.25-8.75 |

| Manufacturing Drawings Provided:  Current Uni-Chairs, Sizes: | Current UNI-CHAIR Products Provided, Sizes | Manufacturing Drawings for Earlier Version Provided, Sizes: |
|---|---|---|
| | 9-9.5 with RING | 9-9.5 |
| | | 9.25-9.75 |

8.     On November 10 and 11, 2008, Sorkin provided additional claim charts pursuant to P.R. 3.1(b), in which he purports to identify where in each of 12 sizes of the Current UNI-CHAIR product the elements of the asserted claims of the patent are found.  (Arent Decl. ¶ 8, Exs. B-M).  The Current UNI-CHAIR products accused of infringing in those claim charts are set forth in the chart below, along with the earlier version product accused of infringing in the claim chart served on August 11, 2008.  Those UNI-CHAIR products for which claim charts have been provided are referred to in this brief as "the Accused Products," collectively.

| Uni-Chair | Size Accused | Claims Alleged to Be Literally Infringed | Claim Chart is Ex. __ to Arent Declaration |
|---|---|---|---|
| First generation | Between 2-2.5 & 3-3.5 | 1-5 and 8-12 | A |
| Current | 1-1.5 | 1-5 and 8-12 | B |
| Current | 1.25-1.75 | 1-5 and 8-12 | C |
| Current | 2-2.5 | 1-5 and 8-12 | D |
| Current | 3-3.5 | 1-5 and 8-12 | E |
| Current | 3.25-3.75 | 1-5 and 8-12 | F |
| Current | 4-4.5 | 1-5 and 8-12 | G |
| Current | 4.25-4.75 | 1-5 and 8-12 | H |
| Current | 5-5.5 | 1-5 and 8-12 | I |
| Current | 5.25-5.75 | 1-5 and 8-12 | J |
| Current | 6-6.5 with RING | 1-5 and 8-12 | K |
| Current | 8.25-8.75 with RING | 1-5 and 8-12 | L |
| Current | 9-9.5 with RING | 11 and 12 | M |

9.      Sorkin did not provide claim charts for any other sizes of the Current UNI-CHAIR product or of the earlier versions of the UNI-CHAIR product.  *See* (Arent Decl., Exs. A-M).

**B.      The Current UNI-CHAIR Product**

10.      The line of the Current UNI-CHAIR products sold by UBP is shown in Exhibit 1 to the Hansort Declaration.  (Hansort Decl. ¶ 7, Ex. 1).

11.      UBP began offering the Current UNI-CHAIR product for sale in January 2007.  (Hansort Decl. ¶ 9).

12.      UBP designed the Current UNI-CHAIR products in November-December 2006, and UBP's manufacturer began manufacturing the Current UNI-CHAIR products in the December 2006-January 2007 time period.  (Hansort Decl. ¶ 8).

13.      The Current UNI-CHAIR product replaced a different design of the UNI-CHAIR product (the earlier version UNI-CHAIR products are referred to in this brief as the "first generation" and "second generation" UNI-CHAIR products).  (Hansort Decl. ¶ 8).  The first generation and second generation UNI-CHAIR products are addressed below in parts B and C of this statement of facts.

14.      UBP's manufacturer ceased manufacturing the earlier version of the UNI-CHAIR products when it began manufacturing the Current UNI-CHAIR products in December 2006-January 2007.  (Hansort Decl. ¶ 8).

15.      Submitted as exhibits with the Hansort Declaration are manufacturing drawings for certain of the Current UNI-CHAIR products.  (Hansort Decl. ¶¶ 10-11, 13-16, 27-28, Exs. 3-6, 8-A, 9-A, 10-A, 11-A, 12-A, 13-A, 14-A, 15-A, 16-A, 18-A, 20-A, 22-A, 24-A, and 26-A, and10-C-15-C).

16.     The manufacturing drawings are the business records of UBP kept in the ordinary course of business.  (Hansort Decl. ¶ 10).

17.     The manufacturing drawings submitted with the Hansort Declaration set forth the features and characteristics of the UNI-CHAIR products offered for sale at or around the time of the date of the drawings, both as designed and as manufactured for UBP.  (Hansort Decl. ¶ 10). The manufacturing drawings accurately reflect the features of the UNI-CHAIR product depicted in the drawings, and accurately reflect the dimensions of the actual UNI-CHAIR products, within manufacturing tolerances.  (Hansort Decl. ¶ 11).

18.     UBP is submitting as exhibits to the Hansort Declaration, both to the Court (in chambers) and to Sorkin's counsel, a set of Current UNI-CHAIR products.  (Hansort Decl. ¶ 29, Exs. 7-B-16-B, 18-B-20-B, 22-B, 24-B, 26-B-31-B).  This set contains samples of 21 Current UNI-CHAIR products.  *Id.*

19.     The manufacturing drawings and the UNI-CHAIR products submitted as exhibits to the Hansort Declaration, as well as information regarding the UNI-CHAIR products, are identified and summarized in a chart to the Hansort Declaration (Exhibit 40).  (Hansort Decl. ¶¶ 5, 52, Ex. 40).

### 1.     The Wedge-Shaped Foot of the Current UNI-CHAIR Product

20.     All sizes of the Current UNI-CHAIR product have and always had the same wedge foot on the bottom of each leg of the chair.  (Hansort Decl. ¶ 19-21, Exs. 5-6).

21.     The foot on the Current UNI-CHAIR product is and always was in the shape of a wedge.  (Hansort Decl. ¶¶ 15, 16).  The wedge-shaped foot has an edge for a bottom, leaving a narrow stripe for a footprint on the surface it contacts.  *Id.*  That edge is approximately ¼ of an inch long.  *Id.*

22.     The foot on all sizes of the Current UNI-CHAIR product has the same shape. (Hansort Decl. ¶ 19).

23.     The bottom of the foot on the Current UNI-CHAIR product does not come to a point and it does not have any points extending from the bottom of the foot.  (Hansort Decl. ¶ 22).

24.     The edge on the bottom of the wedge-shaped foot of the Current UNI-CHAIR product is not designed to dig into the surface on which the chair sits.  (Hansort Decl. ¶ 23).  It is not designed to dig into the surface like a foot with a pointed end would.  *Id.*

25.     In fact, the foot on the Current UNI-CHAIR product is referred to by UBP as a "staple foot."  (Hansort Decl. ¶ 24).  The shape of the foot is designed such that the top of one or both sides of the foot can be secured to the surface on which the chair is placed by stapling the foot to the surface.  *Id.*  Customers can staple the foot onto a plywood decking, for example, to secure the chair in place and to help prevent the chair from moving when it is under load.  *Id.*

26.     The foot on the Current UNI-CHAIR product does not have the general shape of a cone.  (Hansort Decl. ¶ 25).  It does not have the shape of a cone of any sort.  *Id.*  The foot on the Current UNI-CHAIR product has never had the general shape of a cone nor been in the form of a cone of any sort.  *Id.*

### 2.     The Legs of the Current UNI-CHAIR Product

27.     For the Current UNI-CHAIR product line, the chairs size 5-5.5 inch and taller (both with a ring and without a ring) have never had tapering in either the first or second portion of the leg of the chair.  (Hansort Decl. ¶ 26).  That is, the sides of the leg portions on all Current UNI-CHAIR products of the size 5-5.5 inch and taller (through the 9.25-9.75 inch size) have always been parallel – meaning, on those chairs, the sides of each portion of the leg do not come closer together moving from the top to the bottom of the portion.  *Id.*

28.     For a time, six of the Current UNI-CHAIR products (specifically, the 2-2.5, 2.25-2.75, 3-3.5, 3.25-3.75, 4-4.5, and 4.25-4.75 inch sizes) had tapering in the first portion of the leg. (Hansort Decl. ¶ 27).   However, these six sizes of the UNI-CHAIR products never had tapering in the second portion of the leg (that is, the sides of the second portion of the leg did not come closer together from the top to the bottom of that portion).   *Id.*   Further, the tapering in the first portion of the leg in these size chairs was eliminated in Fall 2008.   *Id.*   That is, the design of these sizes of the Current UNI-CHAIR product was modified in Fall 2008 to make the sides of the first portion of the chair leg parallel and not tapering.   *Id.*

### 3.     The Chemical Composition of the UNI-CHAIR Products

29.     The Current UNI-CHAIR product is and always has been manufactured of polypropylene.   (Hansort Decl. ¶ 31, Ex. 32).   It is not manufactured of nylon.   (Hansort Decl. ¶ 33).   Nylon and polypropylene are different materials.   (Hansort Decl. ¶ 33).

### B.     The Earlier Versions of the UNI-CHAIR Product

30.     UBP first began selling the earliest version of the UNI-CHAIR product in 2005. (Hansort Decl. ¶¶ 34, 35, Ex. 33).

31.     The only one of the first generation UNI-CHAIR products for which Sorkin provided a claim chart appears to be the size between the 2-2.5 inch and the 3-3.5 inch size of the first generation UNI-CHAIR product.   (Hansort Decl. ¶ 41).

32.     UBP has submitted photographs of samples of the first generation UNI-CHAIR products.   (Hansort Decl. ¶ 36, Ex. 34).   Those photographs are kept by UBP in the ordinary course of its business and the photographs accurately depict the first generation UNI-CHAIR product of the sizes shown.   *Id.*

33.     UBP changed the design of the first generation UNI-CHAIR product, and its manufacturer ceased manufacturing the first generation UNI-CHAIR product in June 2006. (Hansort Decl. ¶ 38).

34.     With this design change, in June 2006, UBP's manufacturer began manufacturing the "second generation" UNI-CHAIR for UBP.  (Hansort Decl. ¶ 38, Ex. 35).  At that time, UBP ceased manufacturing the first generation UNI-CHAIR product, and then manufactured only the second generation UNI-CHAIR product.  *Id.*

35.     The first generation and the second generation UNI-CHAIR products offered for sale and sold by UBP always had a foot that had either a flat, square/rectangular bottom (first generation), or an edge for a bottom, leaving a line or narrow stripe for a footprint (second generation).  (Hansort Decl. ¶ 40).  The foot on the first generation UNI-CHAIR product does not have and never had a pointed end.  *Id.*  Nor does the foot on the second generation UNI-CHAIR have a pointed end, and it never had a pointed end.  *Id.*

36.     UBP's manufacturer ceased manufacturing the second generation UNI-CHAIR product six months before the '367 patent issued.  (Hansort Decl. ¶ 6).

### 1.     First Generation UNI-CHAIR Product

37.     As noted above, Sorkin has provided a claim chart accusing just one size of the first generation UNI-CHAIR product of infringing the '367 patent.  *See* (Arent Decl., Ex. A).

38.     The manufacturing drawings for the first generation UNI-CHAIR products discovered after a reasonable search by UBP have been submitted with this motion, as Exhibit 37 to the Hansort Declaration.  (Hansort Decl. ¶¶ 43, 45, Exs. 37, 45).

39.     In addition, UBP has submitted to the Court one of the first generation UNI-CHAIR products – the first generation, 5-5.5 inch size, UNI-CHAIR product.  (Hansort Decl. ¶ 42, Ex. 36).

40.     The foot on the bottom of the leg on Exhibit 36 is representative of the foot on the bottom of all the first generation UNI-CHAIR products.  (Hansort Decl. ¶ 42, Ex. 36).  The foot has a rectangular, flat, bottom.  *Id.*  Other sizes of the first generation UNI-CHAIR product likewise have and had a flat, rectangular or square bottom.  *Id.*

41.     As shown in the manufacturing drawings (Exhibit 37), and as seen in Exhibit 36, the foot on the first generation chairs had a flat bottom, and the dimension of the bottom of the foot is a 1/8th of an inch by 1/5th of an inch rectangle.  (Hansort Decl. ¶ 43, Exs. 36, 37).  The foot has and had a flat bottom – not a pointed bottom.  (Hansort Decl. ¶ 43, Exs. 36, 37).

42.     The foot on all of the sizes of the first generation UNI-CHAIR products has a flat bottom, which is rectangular or square.  (Hansort Decl. ¶ 45).

43.     The foot on the first generation UNI-CHAIR product is similar to the foot depicted on the construction chair shown in the Hartzheim Design Patent, U.S. Design Patent No. D334,133.  (Hansort Decl. ¶ 46, Ex. 38).  The bottom of the foot on the Hartzheim '133 Design patent, like the bottom of the foot on the first generation UNI-CHAIR product, is flat, in a rectangular shape.  *Id.*

44.     The foot on the first generation UNI-CHAIR product is not and was never in the general shape of a cone.  (Hansort Decl. ¶ 40).  It is not and was never in the shape of a cone of any form.  *Id.*

45.     The foot on the bottom of the leg of the first generation UNI-CHAIR product does not have and never had a pointed end.  (Hansort Decl. ¶ 40).

46.     The 3-3.5, 4-4.5, 5-5.5, and 6-6.5 inch sizes of the first generation UNI-CHAIR product were not designed to have, and did not have, tapering in the sides of the second portion of the chair leg.  (Hansort Decl. ¶ 44).  In those sizes of the first generation UNI-CHAIR product,

the sides of the second portion of the leg do not come closer together as you move from the top to the bottom of the second portion.  (Hansort Decl. ¶ 44, Ex. 37).

47.     The first generation UNI-CHAIR product was never made of nylon.  (Hansort Decl. ¶¶ 31-33).

## 2.     Second Generation UNI-CHAIR Product

48.     Sorkin has not provided a claim chart that includes any size of the second generation UNI-CHAIR product.  *See* (Arent Decl., Exs. A-M).

49.     The manufacturing drawings for the second generation UNI-CHAIR products have been submitted with this motion, as Exhibit 39 to the Hansort Declaration.  (Hansort Decl. ¶ 47, Ex. 39).

50.     The manufacturing drawings (Exhibit 39) show that the bottom of the foot on the second generation UNI-CHAIR product is an edge that is approximately ¼ of an inch long.  (Hansort Decl. ¶¶ 47, 48).  That foot leaves a line or narrow stripe for a footprint.  *Id.*

51.     The bottom of the foot on the second generation UNI-CHAIR product is an edge, meaning that the contact between the chair and the surface on which it sits would be in the nature of a line or stripe.  (Hansort Decl. ¶ 48).

52.     The foot on the bottom of the leg of the second generation UNI-CHAIR product does not have and never had a pointed end.  (Hansort Decl. ¶ 40).

53.     The foot on the second generation UNI-CHAIR product is not and was never in the general shape of a cone.  (Hansort Decl. ¶ 40).  It is not and was never in the shape of a cone of any sort.  (Hansort Decl. ¶ 40).

54.     The second generation UNI-CHAIR products of the size 5-5.5 inch and higher (through the 9.25-9.75 inch size) (both with rings and without rings) were designed such that the sides of the first and second portions of the legs of those chairs are not and were not tapering.

(Hansort Decl. ¶ 50, Ex. 39).  That is, the sides of the portion of the chair leg do not come closer together as you move from the top to the bottom of the portion on those sizes of the second generation UNI-CHAIR products.  *Id.*

55.     The second generation UNI-CHAIR products of the size 2-2.5 inch through the size 4.25-4.75 inch (both with rings and without rings) were designed such that the sides of the second portion of the legs of those chairs are not and were not tapering.  (Hansort Decl. ¶ 51, Ex. 39).  That is, the sides of the second portion of the chair leg on those chairs do not come closer together as you move from the top to the bottom of the second portion of the leg.  *Id.*

56.     The second generation UNI-CHAIR was never made of nylon.  (Hansort Decl. ¶¶ 31-33).

## ISSUES PRESENTED

### Current UNI-CHAIR Products:  Issues

1.     Does the wedge foot on the bottom of the Current UNI-CHAIR product meet the definition of "pin member" as construed by the Court; that is, does it have a "point" on the end?  As UBP shows in this motion, the answer to this question is "no," and, therefore, the Current UNI-CHAIR product does not infringe the '367 patent because it is lacking this required element.

2.     Does the wedge foot on the bottom of the Current UNI-CHAIR product have the general shape of a cone?  The answer to this question is "no."  Therefore, the UNI-CHAIR product does not infringe claims 3, 11, or 12 of the '367 patent because it is lacking this required element.

3.     For each size of the Current UNI-CHAIR product accused of infringing, does the product have a two-portion leg, with the first portion extending only outwardly from the receiving area, and a change in the angle from vertical on both the inside and the outside of the

leg, such that there is a bend in the leg on both the inside and the outside of the leg portion? As UBP shows in this motion, the answers to this question is "no" for several sizes of the UNI-CHAIR product and, therefore, those sizes of the UNI-CHAIR product do not infringe the '367 patent because they are lacking this required element.

4.      For each size of the Current UNI-CHAIR product accused of infringing, do the inner and outer sides of the first portion and the second portion of the leg "taper"/"converge" – that is, do the sides of the portion of the leg come closer together as one moves along the leg portion from the top to the bottom of the portion? As shown in this motion, the answer is "no." None of the sizes of the Current UNI-CHAIR products has "tapering" in both the first and second portions of the leg. None of the sizes of the Current UNI-CHAIR ever had tapering in the second portion of the chair leg; several of the sizes never had tapering in either the first or the second portion of the leg. Therefore, none of the Current UNI-CHAIR products infringe any asserted claim of the '367 patent.

5.      Are the Current UNI-CHAIR products made of a "nylon material"? As shown in this motion, the answer is "no." The Current UNI-CHAIR product is manufactured of polypropylene – not nylon. Therefore, claim 8 is not infringed by the Current UNI-CHAIR product.

**Earlier Version UNI-CHAIR Products:  Issues**

6.      For the one older version of the UNI-CHAIR products accused of infringing the '367 patent (see (Arent Decl., Ex. A), does the foot on the bottom of the leg on that size of the first generation UNI-CHAIR product constitute a "pin member" as construed by the Court; that is, does it have a "point" on the end? As UBP shows in this motion, the answer to this question is "no," and, therefore, that accused first generation UNI-CHAIR product does not infringe the '367 patent because it is lacking this required element.

7.      Does the rectangular/square flat bottom foot on the first generation UNI-CHAIR product have the general shape of a cone?  The answer to this question is "no."  Therefore, the first generation UNI-CHAIR product does not infringe claims 3, 11, or 12 of the '367 patent.

8.      For the first generation UNI-CHAIR product, do the inner and outer sides of the first portion and the second portion of the leg "taper"/"converge" – that is, do the sides of the portion of the leg come closer together as one moves along the leg portion from the top to the bottom of the portion?  As shown in this motion, the answer is "no."  The first generation UNI-CHAIR product accused of infringing the patent does not have tapering in the second portion of the leg.  Therefore, the accused first generation UNI-CHAIR product does not infringe any of the asserted claims of the '367 patent.

9.      Is the first generation UNI-CHAIR product made of a "nylon material"?  As shown in this motion, the answer is "no."  The first generation UNI-CHAIR was manufactured of polypropylene – not nylon.  Therefore, the accused first generation UNI-CHAIR product does not infringe claim 8 of the '367 patent.

## ARGUMENT

### Summary Judgment Standard

As the party moving for summary judgment, UBP has the initial burden under Fed. R. Civ. P. 56 of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  As the party asserting patent infringement, Sorkin has the burden of proof at trial of proving his claim of infringement.  As shown in this motion, Sorkin cannot prove infringement because required elements of the claims of the patent are not found in the Accused Products.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (Movant is entitled to summary judgment

if it establishes that the other party has the burden of proof at trial, and the non-movant has failed to "make a showing sufficient to establish the existence of an element essential to [its] case.").

In this case, Sorkin asserts literal infringement of the '367 patent. He does not assert infringement under the doctrine of equivalents. *See* (Arent Decl., Ex. A) (P.R. 3-1 disclosure)

In order to avoid summary judgment, Sorkin must come forward with competent evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Anderson*, 477 U.S. at 257. Fed. R. Civ. P. 56 requires Sorkin to set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson*, 477 U.S. at 248. The dispute in this case is genuine if the evidence is such that a reasonable jury could return a verdict for Sorkin on his infringement claims. *Anderson*, 477 U.S. at 255 ("determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case.").

**The Law on Infringement**

Determination of infringement is "a two-step process in which we first determine the correct claim scope, and then compare the properly construed claim to the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent." *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1247-48 (Fed. Cir. 1998). Claim construction is an issue of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). A determination of infringement, whether literal or under the doctrine of equivalents, is normally a question of fact. *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1300 (Fed. Cir. 2001).

For literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).

**The '367 Patent**

The '367 patent[1] claims a chair, which includes a "receiving area," with a "plurality of legs extending downwardly" from that receiving area, and a "pin member" extending downwardly from the bottom of the leg.  The legs of the chair consist of two portions, with the first portion extending at an angle outwardly from the receiving area, and the second portion extending downwardly or inwardly from the end of the first portion.  (See independent claims 1, 9, and 11, '367 patent, col. 7: lines 24-34, col. 8: lines 9-16, col. 8: lines 29-46); *see also* (Arent Decl., Ex. P) (Claim Construction Order at p. 6) (The claim term "second portion" means "second portion (of a two-portion leg).").  There must be a bend in the leg of the chair on both the inner and outer side of the first and second portions of the leg, with the first portion extending outwardly and the second portion extending downwardly or inwardly.  (Claim Construction Order at pp. 7-8).

In addition, all the claims of the patent require that each leg have a "pin member" extending downwardly from the end of the second portion.  (See independent claims 1, 9, and 11, '367 patent, col. 7: lines 45-46, col. 8: lines 33-34, col. 8: lines 53-54).  As construed by this Court, the "pin member" comes to a point – the member must have a pointed end.  (Claim Construction Order at pp. 16-19).  In addition, several claims of the patent require the "pin member" to be of an "inverted conical shape."  (See dependent claim 3 and independent claim 11, '367 patent, col. 7: lines 49-50, col. 11: lines 54-55).

---

[1] The '367 patent is an exhibit to the Complaint.  The Complaint is Exhibit O to the Arent Declaration.  The pertinent portions of the '367 patent are highlighted in Exhibit O.

In addition, asserted claims 1 through 5 and 8 through 10 of the '367 patent require that the sides of the first and second portions of the leg are "converging" or "tapering," which means that the sides of the leg come closer together from the top of the portion to the bottom of the portion of the leg.  (Claim Construction Order at pp. 13-15) (See independent claims 1, 9, '367 patent, col. 7: lines 36-44, col. 8: lines 18-32).  Claim 8 of the patent also requires that the construction chair is manufactured of "nylon material."  '367 patent, col. 8: lines 5-7.

Sorkin cannot carry his burden of proving literal infringement because the UNI-CHAIR products for which he supplied claim charts pursuant to P.R. 3-1(b) (hereafter, the "Accused Products") do not contain each and every element of the asserted claims of the '367 patent.  For example, the Accused Products lack a "pin member" – the foot on the Current UNI-CHAIR product and on the only size of the first generation UNI-CHAIR product accused of infringing does not have a pointed end.  (Nor does the foot on the second generation UNI-CHAIR have a pointed end.)  Because all claims of the patent require this element and it is missing from all the UNI-CHAIR products, none of the UNI-CHAIR products infringes the '367 patent. Additionally, neither the Current UNI-CHAIR product nor the earlier versions of the UNI-CHAIR products have or had a foot in the general shape of a cone or in the shape of a cone of any sort.  Because they are missing this required element, the UNI-CHAIR products do not infringe claims 3, 11, or 12 of the '367 patent.

Further, several sizes of the Accused Products do not have legs at all or have a one-portion, rather than a two-portion, leg.  Other sizes of the Accused Products do not have "said end of said first portion," because they do not have a change in angle of the leg on both the inner and outer sides of the leg.  *See* (Claim Construction Order at p. 8).  These elements are required of all claims of the patent; therefore, the Accused Products do not infringe the '367 patent.

The Accused Products also are lacking leg portions with "tapering" or "converging" sides in the first and/or second portion of the leg.  Those products therefore do not infringe claims 1 through 5 or 8 through 10 of the '367 patent.

Finally, none of the UNI-CHAIR products infringes claim 8 of the patent, because the UNI-CHAIR product is not manufactured of a nylon material.

## I.      THE CURRENT UNI-CHAIR PRODUCT DOES NOT INFRINGE THE '367 PATENT.

### A.      The Current UNI-CHAIR Product Does not Have a "Pin Member."

Of the Accused Products, 11 of the 12 products are Current UNI-CHAIR products.  All Current UNI-CHAIR products of all sizes (both the Accused Products and those for which claim charts have not been provided) have a wedge-shaped foot of the same shape and dimensions. (Hansort Decl. ¶¶ 15-25, Exs. 5-6).  Therefore, this argument addresses all Current UNI-CHAIR products.

All claims of the '367 patent require a "pin member" "extending downwardly" from the "flat bottom surface," which is at the bottom of the second portion of the leg.  (See independent claims 1, 9, and 11, '367 patent, col. 7: lines 45-46, col. 8: lines 33-34, col. 8: lines 53-54).

The Court has construed "pin member" to mean:  "a portion of the leg that comes to one or more points sharp enough to help prevent the chair from moving when it is under load on the surface on which the chair is placed."  (Claim Construction Order at p. 19).  A "pin member" has a "pointed end."  *See id.* ("No where in the '367 Patent is a hint of a disclosure of a 'pin member' without a pointed end.").

The Current UNI-CHAIR products do not infringe the '367 patent because none of the products contain a "pin member," which is a required element of all of the asserted claims of the '367 patent.  The foot on the bottom of the leg of the Current UNI-CHAIR product does not have a pointed end.  (Hansort Decl. ¶¶ 15-24, Exs. 5, 6; *see also* samples of Current UNI-CHAIR

products, Exs. 7-B-16-B, Exs. 18-B-20-B, 22-B, 24-B, 31-B).  This motion should be granted on this basis alone, as the required pin member is missing from all sizes of the Current UNI-CHAIR products.

The foot of the Current UNI-CHAIR product is in the shape of a wedge, with an edge for a bottom, leaving a narrow stripe for a footprint on the surface the chair contacts.  (Hansort Decl. ¶ 15).  That edge is approximately ¼ of an inch long.  *Id.*  The bottom of the foot on the Current UNI-CHAIR product does not come to a point.  (Hansort Decl. ¶ 15).  The edge of the bottom of the wedge-shaped foot of the Current UNI-CHAIR product is not designed to dig into the surface on which the chair sits.  (Hansort Decl. ¶ 23).

UBP's foot is not designed to serve the purpose of a point, securing the chair into place to prevent the chair from moving when it is under load.  (Hansort Decl. ¶¶ 23-24).  Rather, the foot is a "staple foot," meaning the shape of the foot is designed such that one or both sides of the foot can be stapled to the surface on which the chair sits (such as plywood decking).  *Id.*  UBP's foot does not have a point on the end – rather, the staple has points that secure the chair in place.  (Hansort Decl. ¶ 22).

For these reasons, none of the Current UNI-CHAIR products (including the Accused Products) infringe the '367 patent because they are lacking a "pin member," a required element of all claims of the patent.

### B. Five Sizes of the Current UNI-CHAIR Do Not Infringe the Patent Because They do not Have a Two-Portion Leg.

Beyond the pin member, the following sizes of the Current UNI-CHAIR products do not infringe the patent for the additional reason that they do not have a two-portion leg:  the 0.75, 1-1.5, 1.25-1.75, 2-2.5, and 2.25-2.75 inch sizes.  The '367 patent requires a "first" and "second" portion.  (Claim Construction Order at p. 6).  The '367 patent requires a "two-portion leg."  *Id.*

All claims of the '367 patent require that there are a plurality of legs, with the legs comprising a "first portion "and "second portion."  The "first portion" must extend "outwardly" from the receiving area.  (See independent claims 1, 9, and 11, '367 patent, col. 7: lines 29-30, col. 8, lines 13-14, col. 8: lines 43-44).  The "second portion" must extend only "downwardly" or "inwardly" from "the end of the first portion."  (See independent claims 1, 9, and 11, '367 patent, col. 7: lines 31-34, col. 8, lines 22-24, col. 7: lines 48-50).

Every claim of the patent requires the element of "said end of said first portion."  (See independent claims 1, 9, and 11, '367 patent, col. 7: line 34, col. 8, lines 21-22, col. 8: lines 45-46).  "Said end of said first portion" has been construed by the Court to require a bend in the leg on the inner and outer sides of the leg – that is, a change in the angle of the leg as between the first and second portions, on both the inner and outer sides of the leg portion.  (Claim Construction Order at pp. 7-8).

The Court has construed "end of said first portion" to mean:  "the junction between the first portion of a leg and the second portion, at which the leg's angle from the vertical changes."  (Claim Construction Order at p. 8).  This element requires a change in the angle on both the outside and the inside sides of the leg portion.  *See id.*  For example, this element is missing if the inner side of the first portion and the second portion have the same angle from vertical, such that there is no change in angle on the inner side of the leg from the top of the leg to the bottom of the leg, as illustrated on page 8 of the Court's Claim Construction Order.  *See id.*

The 0.75 inch size of the Current UNI-CHAIR product is not accused of infringing any claim of the '367 patent.  It does not infringe because it has no legs at all.  *See* (Hansort Decl., Ex. 7-B).

The 1-1.5 inch size of the Current UNI-CHAIR product does not infringe the '367 patent because it does not have legs at all, or, at most, it has a short, one-portion leg extending from the

receiving area, from which the wedge foot extends.  *See* (Hansort Decl., Ex. 8-B).  If that small part is considered a "leg," that leg is not a two-portion leg.  There is no "end of the first portion" of that small leg, because there is no change in the angle of the small leg portion on either the inner or the outer side from the end of the receiving area to the top of the wedge foot.  The 1-1.5 inch UNI-CHAIR product does not infringe the patent because the "leg," if any, does not have a "first" and "second" portion.

Likewise, the 1.25-1.75 inch size of the Current UNI-CHAIR product does not infringe the '367 patent because it does not have a "first portion" of the leg extending "outwardly" from the receiving area.  *See* (Hansort Decl., Ex. 9-B).  Rather, the top of the leg extends only *downwardly* from the receiving area on the 1.25-1.75 inch size UNI-CHAIR product.  All claims of the patent require a "first portion" that extends "outwardly" from the receiving area.  The 1.25-1.75 inch UNI-CHAIR product does not meet this element.  Therefore, it does not infringe the patent.  Further, the leg on this size chair does not have a "first portion" and a "second portion," as the short leg extends from the receiving area immediately into the top of the foot.

Likewise, the 2-2.5 inch and 2.25-2.75 inch sizes of the Current UNI-CHAIR product do not infringe the patent because they do not have a two-portion leg.  *See* (Hansort Decl., Exs. 10-B, 11-B).  Rather, the leg on each of those chairs only has one portion.  There is no "end of the first portion," because there is no change in the angle of the inside of the leg on the 2-2.5 inch or the 2.25-2.75 inch Uni-Chair.  The inside of the leg of this chair has one consistent angle from vertical.  In this respect, it is identical to the figure on page 8 of the Claim Construction Order.  As the Court stated, the patent does not read on the leg shown in that figure.  Thus, the 2-2.5 and 2.25-2.75 inch sizes of the Current UNI-CHAIR products do not infringe the patent.

For these reasons, the 0.75, 1-1.5, 1.25-1.75, 2-2.5, and 2.25-2.75 inch sizes of the Current UNI-CHAIR product do not infringe the '367 patent.

**C.    None of the Current UNI-CHAIR Products Infringe Claims 1-5 or Claims 8-10 of the '367 Patent Because The Legs of the Chair Do Not Have Tapering and Converging in the First and Second Portions.**

In addition, none of the Current UNI-CHAIR products infringe Claims 1 through 5 or 8 through 10 of the '367 patent, because the legs on the chairs do not have first and second portions that are "tapering," that is, the inner and outer sides of the leg portions coming closer together.

Independent Claims 1 and 9 both require the inner side of the first portion of the leg to be extending at a greater angle with respect to vertical to the outsider side of the first portion such that the inner and outer side of the first portion "converge toward said end of said first portion." Further, claim 1 requires the inner and outer side of the "second portion" to be "tapering so as to converge at said flat bottom surface." Claim 9 requires the inner and outer sides of the second portion to be "converging toward said flat bottom surface." (Claim Construction Order at pp. 13-15) (See independent claims 1, 9, '367 patent, col. 7: lines 36-44, col. 8: lines 18-32). Because they depend from claims 1 and 9, dependent claims 2 through 8 and 10 all require these elements.

As the Court held in its Claim Construction Order, "converging" and "tapering" are used interchangeably in the patent and were used as synonyms in the prosecution. The Court has construed "[c]onverge toward said end" and "tapering so as to converge at said flat bottom surface" to mean: "that as one moves along the leg from the receiving area of the chair, toward the pin member, the sides of the portion of the leg in question come closer together." (Claim Construction Order at p. 15).

None of the Current UNI-CHAIR products of sizes 5-5.5 inch and taller (through the 9.25-9.75 inch size) infringe claims 1 through 5 or 8 through 10 of the '367 patent, because they do not have and never had tapering in either the first portion or the second portion of the leg.

(Hansort Decl. ¶ 26 & Exs. 16-B, 18-B-20-B, 22-B, 24-B, 26-B-31-B; *see also* Exs. 16-A-27-A). That is, the sides of the portions of legs on those size of the Current UNI-CHAIR products have always been parallel – meaning, the sides of the leg portions do not come closer together as you move from the top to the bottom of the leg portion. *Id.*

Sorkin apparently agrees with this argument as to the 9-9.5 inch size of the Current UNI-CHAIR product, as he does not accuse that chair of infringing claims 1 through 5 or 8 through 10, and accuses that chair of infringing only claims 11 and 12 of the patent. *See* (Arent Decl., Ex. M). Claims 11 and 12 do not include the "converging"/"tapering" element.

Nor do any of the other sized Current UNI-CHAIR products (shorter than the 5-5.5 inch size) infringe claims 1 through 5 or 8 through 10 of the '367 patent because those chairs do not have, and have never had, tapering it he second portion. (Hansort Decl. ¶ 27). Tapering in the second portion is a required element of those claims of the patent. Because it is absent, then the Current UNI-CHAIR products of sizes 2-2.5 inch through 4.25-5.75 inch do not infringe the '367 patent.

For these reasons, Sorkin cannot carry his burden of proving that any of the Current UNI-CHAIR products infringe claims 1 through 5 or 8 through 10 of the '367 patent because these chairs do not have two-portion legs, with the inside and the outside of the first portion and the second portion of the leg coming closer together as one moves along the leg from the top of the portion to the bottom of the portion.

>    **D.     Nor Do Any of the Current UNI-CHAIR Products Infringe Claims 3, 11 or 12 Because the Foot on the Product is not in the General Shape of a Cone.**

Nor do any sizes of the Current UNI-CHAIR product infringe claims 3, 11, or 12 of the '367 patent, because all of those claims require a "pin member" "being of an inverted conical shape." (See dependent claim 3 and independent claim 11, '367 patent, col. 7: lines 49-50, col. 11: lines 54-55).

The Court has construed "inverted conical shape" to mean:  "having the general shape of a cone, the wide end of which is at the top and the narrow end is at the bottom."  (Claim Construction Order at p. 21).  The foot on the Current UNI-CHAIR product does not contain this element, as the foot is not in the shape of a cone of any form.  (Hansort Decl. ¶ 25).

For this reason, the Current UNI-CHAIR product does not infringe claims 3, 11, or 12 of the '367 patent.

### E.    None of the UNI-CHAIR Products Infringe Claim 8 Because They are Not Made of Nylon.

Claim 8 requires the chair of claim 1, with the receiving area and legs "being integrally formed together of a nylon material."  See (dependent claim 8, '367 patent, col. 8: lines 5-7).

The Current UNI-CHAIR products are made and were always made of polypropylene – not nylon.  (Hansort Decl. ¶¶ 31-33).  That is a different material than nylon.  Therefore, the Current UNI-CHAIR products do not infringe claim 8 of the '367 patent.

## II.    THE ACCUSED FIRST GENERATION UNI-CHAIR PRODUCT DOES NOT INFRINGE THE '367 PATENT.

In order to properly accuse the UBP UNI-CHAIR products of infringing the '367 patent, P.R. 3-1 required Sorkin to provide a claim chart for each size of the first generation, second generation, and Current UNI-CHAIR products he contends infringes the '367 patent, showing how all the elements of the asserted claims are found in each accused size of the UNI-CHAIR products.  As Sorkin has argued, the UNI-CHAIR products come in various different sizes, with different dimensions.  With the exception of some features that are uniform across all sizes (for example, the foot on the UNI-CHAIR products or the chemical composition of the Uni-Chairs), each size UNI-CHAIR is not the same.

To accuse a product of infringing a patent, the Patent Rules of this District require the patentee to identify with specificity the product (by name or model number) and to provide a claim chart for each model of the product alleged to infringe.  Specifically, P.R. 3-1 provides:

> Not later than 10 days before the Initial Case Management Conference with the Court, a party claiming patent infringement must serve on all parties a "Disclosure of Asserted Claims and Infringement Contentions."   Separately for each opposing party, the "Disclosure of Asserted Claims and Infringement Contentions" shall contain the following information:
>
> (a) Each claim of each patent in suit that is allegedly infringed by each opposing party;
>
> (b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus must be identified by name or model number, if known. Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;
>
> (c) A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function;
>
> (d) Whether each element of each asserted claim is claimed to be literally present or present under the doctrine of equivalents in the Accused Instrumentality

Although Sorkin's P.R. 3-1 disclosure purports to accuse all sizes of the first generation UNI-CHAIR products of infringing the '367 patent, he provides a claim chart for only one size of the first generation UNI-CHAIR products.  (Arent Decl., Ex. A).  Sorkin has provided a claim chart accusing only one size of the earlier versions of the UNI-CHAIR product of infringing the '367 patent – the first generation UNI-CHAIR product of the size between the 2-2.5 and 3-3.5

inch sizes.  *See id.*  That first generation UNI-CHAIR product is referred to in this argument as the "Accused first generation UNI-CHAIR product."  Sorkin has provided no claim charts accusing any of the second generation UNI-CHAIR products of infringing the patent.  *See id.*

UBP requests the Court to rule that Sorkin is precluded from contending that any size of the first generation or second generation UNI-CHAIR products infringes the '367 patent, with the exception of the one Accused first generation product.  No claim charts were provided for any other size of the first generation product and no claim charts were provided for any of the sizes of the second generation product.  If Sorkin wished to accuse other sizes of the first generation UNI-CHAIR products or any size of the second generation UNI-CHAIR products of infringing, he was required to provide a claim chart setting forth how each such product contains each and every element of the asserted claims.  Sorkin failed to do so.

### A.      The First Generation UNI-CHAIR Products Do not Infringe.

The Accused first generation UNI-CHAIR product does not infringe the '367 patent because it does not contain a "pin member."  Moreover, even with respect to the first generation UNI-CHAIR products not accused of infringing the '367 patent,[2] those products also are lacking a "pin member" and therefore do not infringe the '367 patent.  The first generation UNI-CHAIR products all have a foot with a flat, rectangular or square bottom.  (Hansort Decl. ¶¶ 42-43, 46, 36, 38).

The foot on the bottom of the first generation UNI-CHAIR product had and has a rectangular or square, flat, bottom.  (Hansort Decl. ¶ 42).  The dimension of the bottom of the foot is a 1/8th of an inch by 1/5th of an inch rectangle.  (Hansort Decl. ¶ 43, Ex. 37).  The foot on the bottom of the first generation UNI-CHAIR has and had a flat bottom – not a pointed bottom.

---

[2] Sorkin should not be able to accuse other sizes of the first generation UNI-CHAIR product of infringing the '367 patent because he did not provide claim charts for those sizes.

(Hansort Decl. ¶ 40).  The foot on the first generation chair does not have and never had a pointed end.  *Id.*

The foot on the first generation UNI-CHAIR is similar to depicted in U.S. Design Patent No. D334,133 issued to Hartzheim ("the Hartzheim '133 Design patent").  (Hansort Decl. ¶ 46, Ex. 38).  The foot on the Hartzheim chair has a flat, rectangular bottom, like the flat, rectangular bottom of the first generation Uni-Chair.  *Id.*  During the prosecution of the '367 patent, Sorkin stated that a foot on the chair of the Hartzheim '133 Design patent does not constitute a "pin member."  (Claim Construction Order at p. 17) (citing (Prosecution History at p. 36 of 88) (U.S. Design Patent No. D334,133 issued to Hartzheim "does not show a pin member.")).

Further, the foot on the bottom of the first generation UNI-CHAIR product is not and was never in the general shape of a cone or in the shape of a cone of any sort.  (Hansort Decl. ¶ 40).

**B.**     **The Second Generation UNI-CHAIR Products Are not Accused of Infringing the Patent.**

As noted above, Sorkin has not accused any size of the second generation UNI-CHAIR products of infringing the '367 patent.

Further, the second generation UNI-CHAIR product does not infringe the '367 patent because it is lacking a "pin member."  The foot on the second generation UNI-CHAIR patent does not have and has never had a pointed end.  (Hansort Decl. ¶ 40).  Rather, the foot is an edge that is approximately ¼ of an inch long.  (Hansort Decl. ¶¶ 47-48, Ex. 39).  The contact between the chair and the surface on which it sits would be in the nature of a line or a narrow stripe.  (Hansort Decl. ¶ 48).  Nor has the bottom of the foot of the second generation UNI-CHAIR product ever been in the general shape of a cone or in the shape of a cone of any sort.  (Hansort Decl. ¶ 40).

The second generation UNI-CHAIR products are also lacking the required two-portion leg (for sizes smaller than the 2-2.5 inch size) and therefore lack the required elements of "first

portion" and "second portion."  *See* (Hansort Decl., Ex. 39).  The second generation UNI-

CHAIR products are also lacking "tapering" in the first portion and the second portion of the leg.

(Hansort Decl. ¶¶ 50, 51, Ex. 39).

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, the Court should grant UBP's motion for summary judgment

and dismiss the Complaint in its entirety, with prejudice, on the ground that UBP's products do

not infringe the '367 patent.

DATED: August 3, 2009.

/s/ Lisa M. Arent
Kenneth R. Nowakowski
Lisa M. Arent
Gary R. Plotecher
WHYTE HIRSCHBOECK DUDEK S.C.
555 East Wells Street
Suite 1900
Milwaukee, WI 53202
Telephone:  414-273-2100
Fax:  414-223-5000
Email:  knowakowski@whdlaw.com
        larent@whdlaw.com
        gplotecher@whdlaw.com

Attorneys for Defendant Universal Building
Products, Inc.

Kevin P. Walters
CHAFFE MCCALL, L.L.P.
815 Walker Street
Houston, Texas 77002
Telephone: 713-546-980
Fax: 713-546-9806
E-mail:  walters@chaffe.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing Motion and Brief upon counsel for the plaintiff, Paul S. Beik, via U.P.S. Next Day delivery on August 3, 2009, and I further served this document upon plaintiff's counsel via electronic mail.  In addition, a copy of the foregoing Declaration will be served upon plaintiff's counsel via the ECF system.

/s/ Lisa M. Arent _____