**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **FELIX L. SORKIN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:08-cv-133** |
| | § | |
| **UNIVERSAL BUILDING PRODUCTS, INC.,** | § | |
| | § | |
| **Defendant.** | § | **JURY** |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE RON CLARK:

Plaintiff Felix L. Sorkin ("Sorkin") files his response in opposition to Defendant Universal Building Products, Inc.'s ("UBP") motion for summary judgment as follows:

### INTRODUCTION

On August 3, 2009, UBP filed a motion for summary judgment of non infringement. (See CM/ECF Dkt. 36). UBP's motion should be denied because its construction chairs fall within the scope of claims 1, 2, 3, 4, 5, 8, 9, 10, 11 and 12 of U.S. Patent No. 7,237,367 (the '367 Patent). Sorkin submits this brief, a declaration and claim charts to establish that UBP's chairs include, in addition to the other required elements, a pin member, a two-portion leg, and a second portion of the chair's leg that converges or tapers as taught by the '367 Patent. This evidence establishes, at a minimum, that there are genuine issues of material fact as to whether UBP's accused products contain all the required elements of the asserted patent claims. Accordingly, the motion for summary judgment should be denied.

**RELEVANT FACTS**

1.      On March 12, 2008, plaintiff Felix L. Sorkin filed an original complaint alleging infringement of the '367 Patent.  (*See* CM/ECF Dkt. 1).  Sorkin asserts that UBP's UNI-CHAIR construction chairs infringe one or more of the claims of the '367 Patent.  (*Id*.).

2.      The USPTO issued the '367 Patent on July 3, 2007, entitled "Construction Chair For Use With Tilt Wall Construction." (*See* Sorkin Declaration Exhibit A).

3.      One of the stated purposes and advancements of the '367 Patent over the prior art is a chair for use in tilt-wall construction that minimizes the adverse effects of thermal expansion upon the chair.  (*See* Sorkin Declaration Exhibit A at p. 5).

4.      Another stated purpose and advancement over the prior art is a chair with a pin member extending outwardly from a bottom surface of the leg that minimizes the contact with the underlying surface. (*See* Sorkin Declaration Exhibit A at p. 5).

5.      The '367 Patent contains twelve (12) claims.  Of these, claims 1, 9 and 11 are independent claims. (*See* Sorkin Declaration Exhibit A at p. 8).

6.      On March, 12, 2009,  Sorkin served his Patent Rule 3-1 Initial Disclosures and infringement contentions, which included two claim charts.  (See CM/ECF Dkt. 24).  The two claim charts provide the infringement analysis which formed the basis of this action.  (*Id*.). The first chart was attached to the Initial Disclosures as Exhibit B-1 and pertained to the earlier version of the UNI-CHAIR.  (*Id*.).  The second chart was attached to the Initial Disclosures as Exhibit B-2 and pertained to the current version of the UNI-CHAIR. (*Id*.).

7.      UBP served UNI-CHAIR products of various additional sizes as part of its required disclosures.  Sorkin subsequently submitted twelve (12) additional claim charts showing

the infringement analysis for the additional UBP construction chairs that were produced by UBP..

All of the UBP construction chairs that were served with the Initial Disclosures will be referred

to hereinafter as the "Accused Products."

8.    The Accused Products in this litigation include only those UBP construction

chairs for which Sorkin has submitted claim charts.  Sorkin has provided claim charts for all

variations of UNI-CHAIR products which UBP produced prior to the deadline for initial

disclosures.   After the deadline, UBP served manufacturing drawings, but no physical products

for additional UBP UNI-CHAIR products.  Physical samples fo these additional sizes of the

UNI-CHAIR products were not produced until UBP served its motion for summary judgment.

Therefore, the only UNI-CHAIR products which Sorkin asserts infringement in this lawsuit are

those referenced in Sorkin's claim charts attached as Exhibits B - O to Sorkin's declaration.  The

Accused Products are as follows:

•  The construction chair shown in Exhibit B-1 of the Initial Disclosures is one of

the earlier versions, or first generation UNI-CHAIR.  Sorkin alleges that this chair infringes

claims 1-5 and 8-12.  A copy of this claim chart is attached to the Sorkin Declaration as Exhibit

B.

•  The construction chair shown in Exhibit B-2 of the Initial Disclosures is one of

the current versions of the UNI-CHAIR.  Sorkin alleges that this chair infringes claims 1-5 and 8-

12.  A copy of this claim chart is attached to the Sorkin Declaration as Exhibit C.

•  The construction chair labeled Bates No. UBP 000581 is a current version of the

1-1.5 inch size UNI-CHAIR.  Sorkin alleges that this chair infringes claims 1-5 and 8-12.  A

copy of this claim chart is attached to the Sorkin Declaration as Exhibit D.

• The construction chair labeled Bates No. UBP 000582 is a current version of the 1.25-1.75 inch size UNI-CHAIR.  Sorkin alleges that this chair infringes claims 1-5 and 8-12.  A copy of this claim chart is attached to the Sorkin Declaration as Exhibit E.

•The construction chair labeled Bates No. UBP 000583 is a current version of the size 2-2.5 inch UNI-CHAIR.  Sorkin alleges that this chair infringes claims 1-5 and 8-12.  A copy of this claim chart is attached to the Sorkin Declaration as Exhibit F.

•The construction chair labeled Bates No. UBP 000584 is a current version of the size 3-3.5 inch UNI-CHAIR.  Sorkin alleges that this chair infringes claims 1-5 and 8-12.  A copy of this claim chart is attached to the Sorkin Declaration as Exhibit G.

•The construction chair labeled Bates No. UBP 000585 is a current version of the size 3.25-3.75 inch UNI-CHAIR.  Sorkin alleges that this chair infringes claims 1-5 and 8-12.  A copy of this claim chart is attached to the Sorkin Declaration as Exhibit H.

•The construction chair labeled Bates No. UBP 000586 is a current version of the size 4-4.5 inch UNI-CHAIR.  Sorkin alleges that this chair infringes claims 1-5 and 8-12.  A copy of this claim chart is attached to the Sorkin Declaration as Exhibit I.

•The construction chair labeled Bates No. UBP 000587 is a current version of the size 4.25-4.75 inch UNI-CHAIR.  Sorkin alleges that this chair infringes claims 1-5 and 8-12.  A copy of this claim chart is attached to the Sorkin Declaration as Exhibit J.

•The construction chair labeled Bates No. UBP 000588 is a current version of the size 5-5.5 inch UNI-CHAIR.  Sorkin alleges that this chair infringes claims 1-5 and 8-12.  A copy of this claim chart is attached to the Sorkin Declaration as Exhibit K.

•The construction chair labeled Bates No. UBP 000589 is a current version of the size 5.25-5.75 inch UNI-CHAIR.  Sorkin alleges that this chair infringes claims 1-5 and 8-12.  A copy of this claim chart is attached to the Sorkin Declaration as Exhibit L.

•The construction chair labeled Bates No. UBP 000590 is a current version of the size 6-6.5 inch UNI-CHAIR.  Sorkin alleges that this chair infringes claims 1-5 and 8-12.  A copy of this claim chart is attached to the Sorkin Declaration as Exhibit M.

•The construction chair labeled Bates No. UBP 000591 is a current version of the size 8.25-8.75 inch UNI-CHAIR.  Sorkin alleges that this chair infringes claims 1-5 and 8-12.  A copy of this claim chart is attached to the Sorkin Declaration as Exhibit N.

•The construction chair labeled Bates No. UBP 000592 is a current version of the size 9-9.5 inch UNI-CHAIR.  Sorkin alleges that this chair infringes claim 11.  A copy of this claim chart is attached to the Sorkin Declaration as Exhibit O.

9.     UBP apparently concedes that the Accused Products contain a receiving area. As shown in Exhibit B-1 Sorkin's Initial Disclosures, the UBP chair has a receiving area and a plurality of legs extend downwardly from the receiving area.  (*See* Sorkin Declaration Exhibit B). The first portion of the legs of the Accused Products clearly contain portions that extend outwardly and downwardly from the receiving area. (*Id*.).  The second portion of the legs extends vertically downwardly or inwardly from the first portion.  (*Id*.). The first and second portions of the legs taper or converge as they move away from the receiving area. (*See* Sorkin Declaration ¶ 27).  On each of the Accused Products, as you move from the top portion of the leg from the receiving area toward the pin member, the width of the sides of the leg come closer together. Extending from the flat bottom surface of the second portion of the leg is a pin member.  (*See*

Sorkin Declaration ¶ 9).  The pin member is a conical shape and extends to an elongated point. (*See* Sorkin Declaration ¶ 42).

10.     Likewise, the construction chairs shown in Exhibits C-M of the Sorkin Declaration each have a receiving area and a plurality of legs extending downwardly from the receiving area.  (*See* Sorkin Declaration Exhibits C-O). The first portion of the legs extends outwardly and downwardly from the receiving area.  (*Id*.). The first portions of the legs may be formed partially or wholly integrated with the receiving area.  (*Id*.). The second portions of the legs extend vertically downwardly or inwardly from the first portions.  (*Id*.). The first and second portions of the legs taper or converge they move away from the receiving area.  (See Sorkin Declaration ¶¶ 29-40). A pin member extends downwardly from the second portions of the legs. The pin member is of an inverted conical shape and extends to a point at the bottom thereof. (*See* Sorkin Declaration ¶¶ 41-44).

11.     The construction chair shown in Exhibit N of the Sorkin Declaration has a receiving area and a plurality of legs extending downwardly from the receiving area.   (*See* Sorkin Declaration Exhibit N).  The legs have a first portion and a second portion.  (*Id*.).  The first portions of the legs extend at an angle outwardly from the receiving area.  (*Id*.).  The second portions of the legs extend vertically downwardly from the end of first portions.  (*Id*.). A pin member extends vertically downwardly from the flat bottom surface of the second portion. (*Id*.). The pin member is of an inverted conical shape with a point at the end opposite the flat bottom surface.

12.     The chairs shown in Exhibits C-O of the Sorkin Declaration all have a pin member of the same approximate size, configuration and dimension.  (*See* Sorkin Declaration ¶

44). The pin member in these chairs extends outwardly and horizontally from the flat bottom surface.

13.     The pin members of the chairs shown in Exhibits C-O of the Sorkin Declaration each have a wide end at the top and a narrow end at the bottom.   (*See* Sorkin Declaration ¶ 43).

## BACKGROUND: THE '367 PATENT

13.     The '367 Patent relates to a construction chair used to support reinforcing bars or mesh above a surface in post-tension concrete construction. (See Sorkin Declaration ¶ 4).  The '367 Patent teaches a novel and useful construction chair that solves the significant problem of thermal expansion of the construction chairs associated with the prior art in the field of post-tension concrete construction.  (*See* Sorkin Declaration Exhibit A at p. 5). The '367 Patent reduces, if not eliminates, the adverse affects of thermal expansion in two ways.  First, the tapered, two-portion legs help reduce the movement of the legs and pin members as thermal expansion occurs. (*Id*.).  Second, the small profile of the pin member prevents it from extending outwardly from the surface of the concrete panel once the thermal expansion has occurred.  (*Id*.). The '367 Patent is a significant advancement and as such, Sorkin's products have achieved great commercial success in the field of tilt wall concrete construction.  (*See* Sorkin Declaration ¶ 2).

### I. The Independent Claims of the '367 Patent

14.     The '367 Patent issued with twelve (12) claims, including three independent claims: 1, 9 and 11.  (*See* Sorkin Declaration ¶ 2).  Independent Claim 1 reads as follows:

> A chair comprising:
>         a receiving area;
>         a plurality of legs extending downwardly from said receiving area,
>     each of said plurality of legs comprising:
>                 a first portion extending at an angle outwardly from said
>     receiving area; and

a second portion extending from an end of said first position opposite said receiving area, said second portion extending only vertically downwardly or inwardly from said end of said first portion, said second portion having a flat bottom surface opposite said end of said first portion, said first portion having an inner side and an outer side, said inner side extending at a greater angle with respect to vertical than an angle that said outer side extends with respect to vertical such that said inner side and said outer side converge toward said end of said first portion, said second portion having an inner side and an outer side tapering so as to converge at said flat bottom surface; and

a pin member extending vertically downwardly from said flat bottom surface.

(*See* Sorkin Declaration Exhibit A). Independent Claim 9 reads as follows:

A chair comprising:

a receiving area; and

a plurality of separate legs extending downwardly from said receiving area, each of said plurality of legs comprising:

a first portion extending at an angle outwardly from said receiving area;

a second portion extending from an end of said first portion opposite said receiving area, said first portion having a length greater than a length of said second portion, said second portion extending at an angle that is different than said angle that said first portion extends from said receiving area, said second portion having a flat bottom surface opposite said end of said first portion, said second portion extending only vertically downwardly or inwardly from said end of said first portion, said first portion having an inner side and outer side, said inner side extending at a greater angle with respect to vertical than an angle that said outer side extends with respect to vertical such that said inner side and said outer side converge toward said end of said first portion, said second portion having an inner side and an outer side, said inner and outer sides of said second portion converging toward said flat bottom surface; and

a pin member extending vertically downwardly from said flat bottom surface.

(*Id*.).  Independent Claim 11 reads as follows:

A chair comprising:

a receiving area; and

a plurality of legs extending downwardly from said receiving area, each of said plurality of legs comprising:

a first portion extending at an angle outwardly from said

> receiving area;
>
> a second portion extending at an end of said first portion opposite said receiving area, said second portion having a flat bottom surface opposite said end of said first portion, said second portion extending only vertically downwardly or inwardly from said end of said first portion, said first portion having a length greater than a length of said second portion; and
>
> a single pin member extending vertically downwardly from said flat bottom surface, said pin member being of an inverted conical shape and having a point formed at an end thereof opposite said flat bottom surface. (*Id*.).

## II. The Court's Construction of Disputed Claim Terms of the '367 Patent

After a *Markman* hearing, the Court entered its Order Construing Claim Terms of United States Patent No. 7,237,367 ("Claim Construction Order") on July 9, 2009. (*See* CM/ECF Dkt. 33). The Claim Construction Order is attached to the Sorkin Declaration as Exhibit P. The claim terms pertinent to this Response are "converge/converging," "tapering," "pin member" and "inverted conical shape." The definitions of "second portion" and "end of said first portion" are also pertinent in establishing the two-portion leg.

The Court held that "[c]onverge toward said end" and "tapering so as to converge at said flat bottom surface" mean "that as one moves along the leg from the receiving area of the chair toward the pin member, the sides of the portion of the leg in question come closer together." (Sorkin Declaration Exhibit P at p. 13).

Further, the Court held that "pin member" means "a portion of the leg that comes to one or more points sharp enough to help prevent the chair from moving when it is under load on the surface on which the chair is placed." (Sorkin Declaration Exhibit P at p. 16).

Further , the Court held that "inverted conical shape" means "having the general shape of a cone, the wide end of which is at the top and the narrow end is at the bottom." (Sorkin Declaration Exhibit P at p. 20).

Further, the Court held that "second portion" should be construed to mean "second portion (of a two-portion leg)."  (Sorkin Declaration Exhibit P at p. 6).

Finally, the Court held that "end of said first portion" means "the junction between the first portion of a leg and the second portion, at which the leg's angle from the vertical changes."  (Sorkin Declaration Exhibit P at p. 7).

## SUMMARY JUDGMENT STANDARD AND STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *SRI Int'l v. Matsushita Elec. Corp*., 775 F.2d 1107, 1116 (Fed. Cir. 1985) (*en banc*). The moving party bears the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In applying this standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the non-moving party. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp*., 420 F.3d 1369 (Fed. Cir. 2005); *MacLachlan v. Exxon Mobil Corp*., 350 F.3d 472 (5th Cir. 2003).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial.  *Env. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but

disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). The Federal Circuit reviews a grant of summary judgment *de novo*. *Scaltech, Inc. v. Retec/Tetra, L.L.C.*, 269 F.3d 1321, 1327 (Fed. Cir. 2001).

Patent infringement analysis occurs in two steps. First, the Court determines the scope and meaning of the patent claims as a matter of law. *N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1344 (Fed. Cir. 2005). Then the allegedly infringing device or method is compared to the properly construed claims, either literally or by substantial equivalent. *RF Del., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1266 (Fed. Cir. 2003). Whether the accused devise meets the limitations of the construed claims is a question of fact. *Id.*; *Bai v. L & L Wings Inc.*, 160 F.3d. 1350, 1353 (Fed. Cir. 1998).

## **ARGUMENT**

I.     **Summary Judgment Should be Denied Because the Evidence Establishes that the Accused UNI-CHAIR Products Include a Pin Member and a Two-Portion Leg that Tapers and Converges**

Infringement of the '367 patent hinges on the shape and configuration of various components of UBP's UNI-CHAIR products, and whether these shapes and configurations fall within the construed meaning of the claim terms of the '367 patent. Under the Court's construction of the terms pin member, two portion leg, taper and converge/converging, the accused UNI-CHAIR products contain each element of the asserted claims and therefore infringe the '367 Patent. At the very least, the evidence reveals genuine issues of material fact that must be

decided by the jury and UBP's motion should be denied.

### A.    Genuine Issues of Material Fact Preclude Summary Judgment For Independent Claims 1 and 9

UBP's motion fails because it does not meet the legal standard requiring that there be no genuine issues as to any material fact.   In its motion for summary judgment, UBP relies on three general arguments for non-infringement of Independent Claims 1 and 9.  First, UBP claims that the UNI-CHAIR products do not contain a pin member. (*See* UBP Motion at p. 1).  UBP also claims that certain UNI-CHAIR products do not have a two-portion leg.  (*Id*.).  Finally, UBP claims that the first portion and/or the second portion of the legs of the UNI-CHAIR products do not "converge" or "taper."  (*Id*.).  Evidence submitted by Sorkin shows that each of these elements are present in the Accused Products.

### 1.    The Accused UNI-CHAIR Products Contain a Pin Member

UBP claims that the "wedge foot" on the bottom of the UNI-CHAIR products does not meet the definition of the "pin member" as construed by the Court.  (*See* UBP Motion at p. 19). UBP's argument partially ignores the definition of "pin member" as construed by the Court.  (*See* Sorkin Declaration ¶ 8). Specifically, UBP's argument fails to recognize that the Court's definition contemplates a pin member with "a point or several points."  (*Id*.). The Court defined "pin member" as "a portion of the leg that comes to one or more points sharp enough to help prevent the chair from moving when it is under load on the surface on which the chair is placed." (Claim Construction Order at p. 16).   The Court's definition contemplates that a point is a relative term and includes what UBP refers to as a "narrow edge." (*See* Sorkin Declaration ¶ 8).

Much of UBP's argument concerns the intended design of the UNI-CHAIR product, stating that the "foot [was] not designed to serve the purpose of a point, securing the chair into

place to prevent the chair from moving when it is under load." (UBP Motion at p. 20).   Even if that were the intention of the design, it does not mean that the pin member of the UNI-CHAIR feet could not accomplish the stated goal of the pin member as described in the '367 patent.  (*See* Sorkin Declaration ¶ 8).  The UBP pin members accomplish the same goal, namely "digging in" and preventing movement of the chair.  (*See* Sorkin Declaration ¶¶ 9-22).  Sorkin argues that the pin member of the UNI-CHAIR foot would certainly "dig in" to a certain extent, effectively preventing movement of the chair under load, because the UNI-CHAIR pin member comes to a point or several points. (*Id.*).

A claim chart showing the early version of the UNI-CHAIR is attached to Sorkin's Declaration as Exhibit B.  (See Sorkin Declaration Exhibit B).  Referring to the row labeled "Claim 1, Element 6" there is shown an example of the pin member of this early UNI-CHAIR producs. (*Id*; *See also* Sorkin Declaration  ¶ 9).  The pin member is indicated by the arrow.  (*Id.*). This shows that the pin member comes to several points, having a minimal profile which accomplishes the goal of digging in. (*Id.*).

The 1-1.5 inch size UNI-CHAIR product is shown in Sorkin's "000581 CLAIM CHART." (*See* Sorkin Declaration Exhibit D).  Referring to the rows labeled "Claim 1, Element 6" and "Claim 9, Element 2" the pin member of the current UNI-CHAIR products is shown. (*Id.*). The pin member is indicated by the arrow.  (*See* Sorkin Declaration ¶ 11).   The photograph clearly shows a pin member that is a "portion of the leg that comes to one or more points..." as required by the Court's definition.  (*Id.*).

Exhibit 5 (filed under seal) to UBP's motion for summary judgment provides an engineering drawing focusing on the "wedge-shaped foot" of the UNI-CHAIR products.  (*See*

UBP Motion Exhibit 5). As shown in "Detail A" of Exhibit 5, the foot of the UNI-CHAIR diminishes to "several points" with a width of only one quarter of an inch.  (*See* Sorkin Declaration ¶ 8).  "Detail B" of Exhibit 5 shows a view at an angle perpendicular to that shown in "Detail A."  (*Id*.).  "Detail B" shows the sharp bottom end of the pin member which fits the Court's definition of and counters UBP's argument that the foot of the UNI-CHAIR product would not "dig in" and prevent movement of the chair.  (*Id*.).

In its motion for summary judgment, UBP states that "[a]ll Current UNI-CHAIR products of all sizes...have a wedge-shaped foot of the same shape and dimensions." (UBP Motion at p. 19). Thus, the preceding argument applies to all current UNI-CHAIR products shown in Sorkin Declaration Exhibits C-O.  Under the Court's definition of "pin member," the Accused Products contain this element.  UBP cannot meet its burden that the Accused Products lack a pin member as a matter of law.

### 2.     The Accused UNI-CHAIR Products Have A Two-Portion Leg

In its motion, UBP claims that certain of the UNI-CHAIR products do not have a two-portion leg.  (*See* UBP Motion at p. 20).  UBP's argument is an attempt to distract the Court from the claim charts that Sorkin have submitted, each of which show UBP products with two-portion legs. (*See* Sorkin Declaration ¶¶ 24-26).  Contrary to UBP's claims, as shown in Sorkin's claim charts, each of the UNI-CHAIR products have a two-portion leg.

The UNI-CHAIR product 1-1.5 inch size is shown in Sorkin's "000581 CLAIM CHART." Referring to the rows labeled "Claim 1, Element 2" and "Claim 9, Element 2" it is readily apparent that the product has a leg with two portions. (*See* Sorkin Declaration Exhibit D). The first portion is indicated by the upper arrows, and the second portion is indicated by the

lower arrows.   (*Id*.; See also Sorkin Declaration ¶ 24).   The first portion is formed integrally

with the receiving area and extends angularly outwardly therefrom.  (*Id*.). The second portion

extends vertically downwardly from the first portion.   (*Id*.). The end of the first portion can be

seen as a line drawn between (1) the point on the outer side of the leg where the angle changes;

and (2) the midpoint of the curved inner side of the leg.  The angles of both the inner side of the

leg and outer side of the leg change, thus this chair has a two-portion leg. (*Id*.).

The UNI-CHAIR product 1.25-1.75 inch size is shown in Sorkin's "000582 CLAIM

CHART." Referring to the row labeled "Claim 1, Element 2," it is even more clear that the

product has a two-portion leg. (*See* Sorkin Declaration Exhibit E). The first portion is indicated

by the upper arrows and the second portion is indicated by the lower arrows.  (*Id*.; *See also*

Sorkin Declaration ¶ 25). The first portion is formed integrally with the receiving area and

extends angularly outwardly therefrom.  (*Id*.).  The second portion extends vertically downwardly

from the first portion.   (*Id*.).  The "end of the first portion" can be seen as a line drawn between

(1) the point on the outer side of the leg where the angle changes; and (2) the midpoint of the

curved inner side of the leg. (*Id*.). The angles of both the inner side of the leg and outer side of

the leg change, thus the chair has a two-portion leg. (*Id*.).

The UNI-CHAIR product 2-2.5 inch size is shown in Sorkin's "000583 CLAIM

CHART." (*See* Sorkin Declaration Exhibit F).  Referring to the rows labeled "Claim 1, Element

2" and "Claim 9, Element 2" it can easily be seen that the product has a two-portion leg. (*Id*.; *See*

*also* Sorkin Declaration ¶ 26).  The first portion is indicated by the upper arrows and the "second

portion" is indicated by the lower arrows.   (*Id*.). The first portion is formed integrally with the

receiving area and extends angularly outwardly therefrom.  (*Id*.). The second portion extends

vertically downwardly from the first portion.   (*Id*.). The "end of the first portion" can be seen as a line drawn between (1) the point of juncture between the inner side of the leg and the receiving area.   (*Id*.).  The angles of both the inner side of the leg and outer side of the leg change, thus the chair has a two-portion leg. (*Id*.).

Accordingly, each of the Accused Products contain a leg with two portions.

**3.      The Accused UNI-CHAIR Products Have Legs That Taper And/Or Converge**

In its motion for summary judgment, UBP claims that none of the Current UNI-CHAIR products have tapering and converging legs.   (*See* UBP Motion at p. 23).  UBP's argument is rather conclusive and ignores features which are easily seen in the Sorkin claim charts and examples of UNI-CHAIR products submitted to the Court.  Under the Court's construction of these terms, the Accused Products contain the required taper and/or convergence.

The Court has construed "[c]onverge toward said end" and "tapering so as to converge at said flat bottom surface" to mean: "that as one moves along the leg from the receiving area of the chair, toward the pin member, the sides of the portion of the leg in question come closer together." (Claim Construction Order at p. 15).  Further, the Court's definition does not require a continuous taper, stating that "[t]he patentee's statement does not clearly require constant tapering, or a convergence at a uniform rate, or even a constantly changing rate." (*Id*.).  As shown in Sorkin's claim charts, each of the UNI-CHAIR products have legs that converge or taper as defined by the Court.

A current UNI-CHAIR product is attached to Sorkin's Declaration as Exhibit C.  (*See* Sorkin Declaration Exhibit C).  Referring to the rows labeled "Claim 1, Element 3" and "Claim 1, Element 5" it can easily be seen that the legs of the product taper or converge. (*Id*.; *See also*

Sorkin Declaration ¶ 29). The arrows in the row labeled "Claim 1, Element " point to the section of the first portion of the legs that taper or converge. (*Id*.).  This arrow shows that the first portion of the leg converges as you move toward the second portion.  (*Id*.). The arrow in the row labeled "Claim 1, Element 5" point to the converging or tapering section of the second portion. (*Id*.). Specifically, these arrows point to a section of the second portion of the leg which tapers or converges toward the flat bottom surface adjacent the pin member of the chair. (*Id*.). The leg portions of the Accused Products satisfy the Court's construction because "the sides of the portion of the leg in question come closer together" as one moves along the leg from the receiving area to the pin member.  (*Id*.).

The UNI-CHAIR product 1-1.5 inch size is shown in Sorkin's "000581 CLAIM CHART." (*See* Sorkin Declaration Exhibit D).  Referring to the rows labeled "Claim 1, Element 3" and "Claim 1, Element 5" it can easily be seen that the legs of the product taper or converge. (*Id*.; *See also* Sorkin Declaration ¶ 30). The arrows in the row labeled "Claim 1, Element 3" point to the section of the first portion of the legs that taper or converge.  (*Id*.).  This arrow shows that the first portion of the leg converges as you move toward the second portion. (*Id*.). The arrow in the row labeled "Claim 1, Element 5"  point to the converging or tapering section of the second portion.  (*Id*.). Specifically, these arrows point to a section of the second portion of the leg which tapers or converges toward the flat bottom surface adjacent the pin member of the chair. (*Id*.). The leg portions of the Accused Products satisfy the Court's construction because "the sides of the portion of the leg in question come closer together" as one moves along the leg from the receiving area to the pin member.  (*Id*.).

The UNI-CHAIR product 1.25-1.75 inch size is shown in Sorkin's "000582 CLAIM CHART." (*See* Sorkin Declaration Exhibit E).  Referring to the rows labeled "Claim 1, Element 3" and "Claim 1, Element 5" it can easily be seen that the legs of the product taper or converge. (*Id.*; *See also* Sorkin Declaration ¶ 31). The arrows in the row labeled "Claim 1, Element 3" point to the section of the first portion of the legs that taper or converge.  (*Id.*).  This arrow shows that the first portion of the leg converges as you move toward the second portion. (*Id.*). The arrow in the row labeled "Claim 1, Element 5"  point to the converging or tapering section of the second portion.  (*Id.*). Specifically, these arrows point to a section of the second portion of the leg which tapers or converges toward the flat bottom surface adjacent the pin member of the chair. (*Id.*). The leg portions of the Accused Products satisfy the Court's construction because "the sides of the portion of the leg in question come closer together" as one moves along the leg from the receiving area to the pin member.  (*Id.*).

The UNI-CHAIR product 2-2.5 inch size is shown in Sorkin's "000583 CLAIM CHART." (*See* Sorkin Declaration Exhibit F).   Referring to the rows labeled "Claim 1, Element 3" and "Claim 1, Element 5" it can easily be seen that the legs of the product taper or converge. (*Id.*; *See also* Sorkin Declaration ¶ 32).  The arrows in the row labeled "Claim 1, Element 3" point to the section of the first portion of the legs that taper or converge.  (*Id.*).  This arrow shows that the first portion of the leg converges as you move toward the second portion. (*Id.*). The arrows in the row labeled "Claim 1, Element 5" point to the section of the second portion of the leg which tapers or converges toward the flat bottom surface adjacent the pin member of the chair.  (*Id.*). The leg portions of the Accused Products satisfy the Court's construction because

"the sides of the portion of the leg in question come closer together" as one moves along the leg from the receiving area to the pin member. (*Id.*).

The UNI-CHAIR product 3-3.5 inch size is shown in Sorkin's "000584 CLAIM CHART." (*See* Sorkin Declaration Exhibit G). Referring to the rows labeled "Claim 1, Element 3" and "Claim 1, Element 5" it can easily be seen that the legs of the product taper or converge. (*Id.*; *See also* Sorkin Declaration ¶ 33). The arrows in the row labeled "Claim 1, Element 3" point to the section of the first portion of the legs that taper or converge. (*Id.*). This arrow shows that the first portion of the leg converges as you move toward the second portion. (*Id.*). The arrows in the row labeled "Claim 1, Element 5" point to the section of the second portion of the leg which tapers or converges toward the flat bottom surface adjacent the pin member of the chair. (*Id.*). The leg portions of the Accused Products satisfy the Court's construction because "the sides of the portion of the leg in question come closer together" as one moves along the leg from the receiving area to the pin member. (*Id.*).

The UNI-CHAIR product 3.25-3.75 inch size is shown in Sorkin's "000585 CLAIM CHART." (*See* Sorkin Declaration Exhibit H). Referring to the rows labeled "Claim 1, Element 3" and "Claim 1, Element 5" it can easily be seen that the legs of the product taper or converge. (*Id.*; *See also* Sorkin Declaration ¶ 34). The arrows in the row labeled "Claim 1, Element 3" point to the section of the first portion of the legs that taper or converge. (*Id.*). This arrow shows that the first portion of the leg converges as you move toward the second portion. (*Id.*). The arrows in the row labeled "Claim 1, Element 5" point to the section of the second portion of the leg which tapers or converges toward the flat bottom surface adjacent the pin member of the chair. (*Id.*). The leg portions of the Accused Products satisfy the Court's construction because

"the sides of the portion of the leg in question come closer together" as one moves along the leg from the receiving area to the pin member.  (*Id*.).

The UNI-CHAIR product 4-4.5 inch size is shown in Sorkin's "000586 CLAIM CHART." (*See* Sorkin Declaration Exhibit I).  Referring to the rows labeled "Claim 1, Element 3" and "Claim 1, Element 5" it can easily be seen that the legs of the product taper or converge. (*Id*.; *See also* Sorkin Declaration ¶ 35).  The arrows in the row labeled "Claim 1, Element 3" point to the section of the first portion of the legs that taper or converge.  (*Id*.).  This arrow shows that the first portion of the leg converges as you move toward the second portion. (*Id*.). The arrows in the row labeled "Claim 1, Element 5" point to the section of the second portion of the leg which tapers or converges toward the flat bottom surface adjacent the pin member of the chair.  (*Id*.). The leg portions of the Accused Products satisfy the Court's construction because "the sides of the portion of the leg in question come closer together" as one moves along the leg from the receiving area to the pin member.  (*Id*.).

The UNI-CHAIR product 4.25-4.75 inch size is shown in Sorkin's "000587 CLAIM CHART." (*See* Sorkin Declaration Exhibit J). Referring to the rows labeled "Claim 1, Element 3" and "Claim 1, Element 5" it can easily be seen that the legs of the product taper or converge. (*Id*.; *See also* Sorkin Declaration ¶ 36).  The arrows in the row labeled "Claim 1, Element 3" point to the section of the first portion of the legs that taper or converge.  (*Id*.).  This arrow shows that the first portion of the leg converges as you move toward the second portion. (*Id*.). The arrows in the row labeled "Claim 1, Element 5" point to the section of the second portion of the leg which tapers or converges toward the flat bottom surface adjacent the pin member of the chair.  (*Id*.). The leg portions of the Accused Products satisfy the Court's construction because "the sides of

the portion of the leg in question come closer together" as one moves along the leg from the receiving area to the pin member.  (*Id*.).

The UNI-CHAIR product 5-5.5 inch size is shown in Sorkin's "000588 CLAIM CHART." (*See* Sorkin Declaration Exhibit K). Referring to the rows labeled "Claim 1, Element 3" and "Claim 1, Element 5" it can easily be seen that the legs of the product taper or converge. (*Id*.; *See also* Sorkin Declaration ¶ 37).  The arrows in the row labeled "Claim 1, Element 3" point to the section of the first portion of the legs that taper or converge.  (*Id*.).  This arrow shows that the first portion of the leg converges as you move toward the second portion. (*Id*.). The arrows in the row labeled "Claim 1, Element 5" point to the section of the second portion of the leg which tapers or converges toward the flat bottom surface adjacent the pin member of the chair.  (*Id*.). The leg portions of the Accused Products satisfy the Court's construction because "the sides of the portion of the leg in question come closer together" as one moves along the leg from the receiving area to the pin member.  (*Id*.).

The UNI-CHAIR product 5.25-5.75 inch size is shown in Sorkin's "00589 CLAIM CHART." (*See* Sorkin Declaration Exhibit L).  Referring to the rows labeled "Claim 1, Element 3" and "Claim 1, Element 5" it can easily be seen that the legs of the product taper or converge. (*Id*.; *See also* Sorkin Declaration ¶ 38).  The arrows in the row labeled "Claim 1, Element 3" point to the section of the first portion of the legs that taper or converge.  (*Id*.).  This arrow shows that the first portion of the leg converges as you move toward the second portion. (*Id*.). The arrows in the row labeled "Claim 1, Element 5" point to the section of the second portion of the leg which tapers or converges toward the flat bottom surface adjacent the pin member of the chair.  (*Id*.). The leg portions of the Accused Products satisfy the Court's construction because

"the sides of the portion of the leg in question come closer together" as one moves along the leg from the receiving area to the pin member.  (*Id*.).

The UNI-CHAIR product 6-6.5 inch size is shown in Sorkin's "000590 CLAIM CHART." (*See* Sorkin Declaration Exhibit M ).  Referring to the rows labeled "Claim 1, Element 3" and "Claim 1, Element 5" it can easily be seen that the legs of the product taper or converge. (*Id*.; *See also* Sorkin Declaration ¶ 39).  The arrows in the row labeled "Claim 1, Element 3" point to the section of the first portion of the legs that taper or converge.  (*Id*.).  This arrow shows that the first portion of the leg converges as you move toward the second portion. (*Id*.). A close examination of that particular chair shows that the first portion of the leg has a width of approximately 0.65" adjacent the receiving area and a width of approximately 0.55" adjacent the second portion of the leg. (*Id*.). The arrows in the row labeled "Claim 1, Element 5" point to the section of the second portion of the leg which tapers or converges toward the flat bottom surface adjacent the pin member of the chair.  (*Id*.). The leg portions of the Accused Products satisfy the Court's construction because "the sides of the portion of the leg in question come closer together" as one moves along the leg from the receiving area to the pin member.  (*Id*.).

The UNI-CHAIR product 8.25-8.75 inch size is shown in Sorkin's "000591 CLAIM CHART." (*See* Sorkin Declaration Exhibit N).  Referring to the rows labeled "Claim 1, Element 3" and "Claim 1, Element 5" it can easily be seen that the legs of the product taper or converge. (*Id*.; *See also* Sorkin Declaration ¶ 40).  The arrows in the row labeled "Claim 1, Element 3" point to the section of the first portion of the legs that taper or converge.  (*Id*.).  This arrow shows that the first portion of the leg converges as you move toward the second portion. (*Id*.). A close examination of that particular chair shows that the first portion of the leg has a width of

approximately 0.65" adjacent the receiving area and a width of approximately 0.55" adjacent the second portion of the leg. (*Id.*). The arrows in the row labeled "Claim 1, Element 5" point to the section of the second portion of the leg which tapers or converges toward the flat bottom surface adjacent the pin member of the chair.  (*Id.*).The leg portions of the Accused Products satisfy the Court's construction because "the sides of the portion of the leg in question come closer together" as one moves along the leg from the receiving area to the pin member.  (*Id.*).

> **B.     Genuine Issues of Material Fact Preclude Summary Judgment On Claims 3, 11 and 12 Because the Foot of the Accused UNI-CHAIR Products is a General Shape of a Cone.**

UBP's motion fails because it does not meet the legal standard requiring that there be no genuine issues as to any material fact. In its motion for summary judgment, UBP rather conclusively claims that the foot of the current UNI-CHAIR products is not in the general shape of a cone.  (*See* UBP Motion at pp. 24-25).  UBP's argument fails to address the meaning of "inverted conical shape," which the Court construed as "having the *general* shape of a cone, the wide end which is at the top and the narrow end is at the bottom." (Claim Construction Order at p. 21; emphasis added).  The evidence submitted by Sorkin shows that the "foot" of the Accused Products has the general shape of a cone.

The Court rejected UBP's highly technical definition of "inverted conical shape" in favor of a more simple definition, noting that "[t]he patentee chose the word 'conical' and not 'cone'..." (Claim Construction Order at pp. 20-21).  A review of the UNI-CHAIR products shows that the feet of the products do indeed have the "general shape of a cone."  (*See* Sorkin Declaration ¶¶ 42-44). The "general shape of a cone" does not require an "exact shape of a cone." (*See* Sorkin Declaration ¶ 41).  Many objects are the "general shape of a cone" without having the

geometric definition of a cone.  (*Id.*).  For example, a volcano is universally accepted to have the shape of a cone.  However, volcanos do not necessarily have a round base, have very irregular sides, and (assuming it has erupted in the past) lack  pointed tops.   However, a volcano does have a wide portion at one end and a narrow portion at the other end, thus, the general shape of a cone.

The UNI-CHAIR product 1-1.5 inch size is shown in Sorkin's "00581 CLAIM CHART." (*See* Sorkin Declaration Exhibit D).  Referring to the rows labeled "Claim 3" and "Claim 11, Element 5" it can easily be seen that the pin member has the "general shape of a cone."  (*Id.*; *See also* Sorkin Declaration ¶ 43).  The arrow in the row labeled "Claim 3" points to the pin member. (*Id.*).  Specifically, it can be seen in these rows that there is a wide end at the top of the pin member and a narrow end at the bottom of the pin member.   (*Id.*). The pin members have a rounded, oval wide end (*i.e.* the base of the conical shape) and taper toward the narrow bottom end (*i.e.* the top of the conical shape) and fall within the Court's definition of inverted conical shape. (*Id.*).

In its motion for summary judgment, UBP states that "[a]ll Current UNI-CHAIR products of all sizes...have a wedge-shaped foot of the same shape and dimensions." (UBP Motion at p. 19). Thus, the preceding argument applies to all current UNI-CHAIR products.   See Sorkin Declaration ¶ 44).  The Court's definition of "inverted conical shape" is not limited to the geometric definition of a cone.   The UNI-CHAIR products contain a foot that is the general shape of a cone and therefore contain this element.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff prays that the Court deny UBP's Motion for Summary Judgment in its entirety and grant Plaintiff such other and further relief to which he may be entitled.

Respectfully submitted,

_/s/Paul S. Beik_____
John S. Egbert
Texas Bar No. 06479550
Paul S. Beik
Texas Bar No. 24054444
Egbert Law Offices, PLLC
412 Main Street, 7th Floor
Houston, Texas  77002
Telephone: (713) 224-8080
Facsimile:  (713) 223-4873
Email: mail@egbertlawoffices.com
Email: pbeik@egbertlawoffices.com

Attorneys for Plaintiff
Felix L. Sorkin

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing has been served via the Court's electronic filing systems on the 28th day of August, 2009 to the following counsel of record:

Kenneth R. Nowakowski
Lisa Arent
Gary R. Plotecher
Whyte Hirschboeck Dudek S.C.
555 East Wells Street, Suite 1900
Milwaukee, WI 53202

Attorneys for Defendant
Universal Building Products, Inc.

＿＿/s/Paul S. Beik＿＿＿＿＿＿＿
Paul S. Beik