**\*\* NOT FOR PRINTED PUBLICATION \*\***

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| FELIX L. SORKIN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 1:08-CV-133 |
| v. | § | |
| | § | |
| UNIVERSAL BUILDING PRODUCTS, | § | JUDGE RON CLARK |
| | § | |
| *Defendant*. | § | |

<u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff Felix L. Sorkin filed suit against Defendant Universal Building Products ("UBP"), claiming that thirteen of UBP's UNI-CHAIR construction chairs infringe one or more claims of United States Patent No. 7,237,367 ("the '367 patent"). UBP now moves for summary judgment, arguing that none of its products literally infringe the asserted claims of the '367 patent.

Because none of the accused products fulfill the limitation found in each asserted claim that the claimed construction chair be comprised of a "pin member," the accused products do not literally infringe any of the asserted claims of the '367 patent. UBP's motion for summary judgment is granted.

## I. Background

The '367 patent relates generally to chairs and spacers that are used in concrete construction for supporting post-tension cables, rebar, or mesh in a desired position – usually above a surface – before concrete is poured. Normally, a receiving area formed on the chair will

1

contact and support the rebar, while the base of the chair rests on a deck or grade. When the concrete is poured, the chair will support the post-tension cable or rebar a proper distance above the bottom surface.  According to the specification, the claimed chairs have several advantages, including being corrosion-proof, inexpensive, easy to manufacture and use, and able to minimize the adverse effects of thermal expansion on the chair.

Sorkin claims that thirteen different sizes of UBP's UNI-CHAIR products, twelve of which are currently made and one of which is a "first generation" product no longer made[1], literally infringe[2] one or more of claims 1-5 and 8-12 of the '367 patent:

| UNI-CHAIR | Size | Claims Asserted to be Literally Infringed |
|---|---|---|
| First generation (not currently made) | Between 2-2.5 and 3-3.5 inches | 1-5 and 8-12 |
| Currently made | 1-1.5 inches | 1-5 and 8-12 |
| Currently made | 1.25-1.75 inches | 1-5 and 8-12 |
| Currently made | 2-2.5 inches | 1-5 and 8-12 |
| Currently made | 3-3.5 inches | 1-5 and 8-12 |
| Currently made | 3.25-3.75 inches | 1-5 and 8-12 |
| Currently made | 4-4.5 inches | 1-5 and 8-12 |
| Currently made | 4.25-4.75 inches | 1-5 and 8-12 |
| Currently made | 5-5.5 inches | 1-5 and 8-12 |

---

[1]As described by UBP – and not refuted by Sorkin – "first generation" UNI-CHAIRS were manufactured between 2005 and June 2006.  "Second generation" UNI-CHAIRS were manufactured between June 2006 and January 2007.  The current UNI-CHAIRS were manufactured beginning in January 2007.  The '367 patent issued in July 2007.

[2]Sorkin asserts only literal infringement, not infringement under the doctrine of equivalents.  *See* Def. Mot. Sum. J. Ex. A, Pl. P.R. 3-1 Initial Disclosures, at pp. 16-17 [Doc. # 36].

| Currently made | 5.25-5.75 inches | 1-5 and 8-12 |
| Currently made | 6-6.5 inches | 1-5 and 8-12 |
| Currently made | 8.25-8.75 inches | 1-5 and 8-12 |
| Currently made | 9-9.5 inches | 11 and 12 |

## II.  Applicable Law

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986).  Movant may show that the undisputed material facts affirmatively establish a right to judgment.  Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986).

In order to avoid summary judgment, the  party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335 (1986); *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356.  Fed. R. Civ.  P. 56 requires the non-moving party to set forth specific facts showing that there is a genuine issue for trial.  *Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514.  Only a genuine dispute over a material fact (a fact which might affect the

outcome of the suit under the governing substantive law) will preclude summary judgment. *Id.* at 248, 106 S. Ct. at 2510.

The dispute in this case is genuine if the evidence is such that a reasonable jury, properly instructed on the clear and convincing evidentiary standard, could return a verdict for Sorkin on infringement. *Id.* at 255, 106 S. Ct. at 2514 ("determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."). If the factual context renders a claim implausible (for example if the claim simply makes no economic sense), nonmovants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Id.* Only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

### III.  Applicable Law on Literal Infringement

A determination of literal infringement is "a two-step process" in which "the court first determines the meaning of disputed claim terms, and then compares the accused device to the claims as construed." *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1354 (Fed. Cir. 2009). Claim construction is an issue of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S. Ct. 1384 (1996); *Wavetronix*, 573 F.3d at 1355. "Literal infringement of a

4

properly construed claim is a question of fact." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006).

For literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). "The absence of any limitation of the asserted claim defeats literal infringement." *Research Plastics, Inc. v. Fed. Packaging Corp.*, 421 F.3d 1290, 1297 (Fed. Cir. 2005).

### IV. Discussion

In support of its motion for summary judgment, UBP makes the following arguments: (1) none of the currently manufactured UNI-CHAIRS infringe any of the asserted claims because they do not have a "pin member" as that term has been defined by this court; (2) five sizes of the currently manufactured accused products – sizes 0.75, 1-1.5, 1.25-1.75, 2-2.5, and 2.25-2.75 – do not infringe any of the asserted claims because they do not have a two-portion leg; (3) none of the currently manufactured accused products infringe asserted claims 1-5 or 8-10 because the legs of the chair do not have "tapering" or "converging" in the first and second portions; (4) none of the currently manufactured accused products infringe asserted claims 3, 11, or 12 because the foot on the product is not in the general shape of a cone; (5) none of the currently manufactured accused products infringe asserted claim 8 because they are not made of nylon; (6) Sorkin is precluded from accusing any first or second generation chairs not included in his P.R. 3-1 claim charts of infringement, which UBP argues was limited only to first generation chairs sized 2-2.5 and 3-3.5 inches; and (7) the accused first generation chairs do not infringe because they do not contain a "pin member." Because the court finds that none of the accused products has a "pin member," it need not address the remainder of UBP's arguments in any detail.

5

A.      "Pin Member"

UBP's first argument is that none of the accused products infringe any of the asserted

claims because they do not have a "pin member," as that term has been defined by this court.

1.      *The court's construction of "pin member"*

"Pin member" was defined in the court's *Markman* order as "a portion of the leg that

comes to one or more points sharp enough to help prevent the chair from moving when it is

under load on the surface on which the chair is placed."  Doc. # 33, at p. 19.

2.      *First generation UNI-CHAIR*

Sorkin failed to provide claim charts as required by P.R. 3-1(c) which specifically identify

"where each element of each asserted claim is found within *each* Accused Instrumentality" for

the first generation UNI-CHAIR (emphasis added).[3]  Sorkin states in his P.R. 3-1 Infringement

Contentions[4] that the first generation chairs are available in multiple sizes from 0.75-9.75 inches,

and that "all available sizes" infringe one or more of the asserted claims.  However, the court has

seen only one claim chart for the first generation product, in which Sorkin failed entirely to

identify the size of the product being accused.  *See* Def. Mot. Sum. J., Ex. A, Attachment B-2 to

Sorkin's P.R. 3-1 Initial Disclosures.

---

[3]Sorkin acknowledges in his summary judgment response that no claim charts were ever provided for the second generation UNI-CHAIR products.  *See* Doc. # 42, at p. 3 ("The construction chair shown in Exhibit B-1 of the Initial Disclosures is one of the earlier versions, or first generation UNI-CHAIR.  Sorkin alleges that this chair infringes claims 1-5 and 8-12."). The court therefore finds that Sorkin has failed to accuse any of the second generation UNI-CHAIR products of infringement.

[4]Sorkin later amended his claim charts to include a separate chart for each accused size of UBP's currently manufactured products, but did not provide any further clarification as to the accused first generation products. *See* Def. Mot. Sum. J., Exs. B-M.

6

Based on the picture in the claim chart of this unidentified first generation product, UBP states in its "Statement of Undisputed Material Facts" that Sorkin's first generation claim chart limits the accused products to one chair, sized somewhere between 2-2.5 and 3-3.5 inches. Under L.R. CV-56(b), Sorkin was required to respond to UBP's "Statement of Undisputed Material Facts." Instead, he merely designated his own list of "Relevant Facts" without specifically pointing out what portions of UBP's "Statement of Undisputed Material Facts" he agreed or disagreed with. Therefore, Sorkin will not be heard to complain that some other document or key fact regarding the accused first generation products was not considered. *See* L.R. CV-56(c) ("The court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment."). Sorkin simply fails to counter UBP's contention that he should be limited to the specific example – which UBP states is either the 2-2.5 or 3-3.5 inch size – disclosed in his claim chart.

Regardless of the size accused, the first generation products do not infringe because they lack a pin member. As discussed above, a "pin member" is " a portion of the leg that comes to one or more points sharp enough to help prevent the chair from moving when it is under load on the surface on which the chair is placed." In arriving at this construction, the court relied on Sorkin's own prior art – United States Patent Nos. 5,555,693 and 5,791,095 – which described a "pin member" with a pointed end sharp enough to "bite" into a surface. *See* '095 patent, 5:38-40 ("The projections have a point at the bottom of sufficient sharpness so as to bite into a surface supporting the chair **10** when the chair **10** is under load."); '693 patent, 3:6-10; Doc. # 33 at pp. 17-18. Sorkin's prior description of "pin member" is relevant to what a person of ordinary skill

7

in the art would have understood this claim term to mean. *See Cook Biotech, Inc. v. Acell, Inc.*, 460 F.3d 1365, 1373 (Fed. Cir. 2006). Also relevant is the fact that Sorkin distinguished United States Design Patent No. D334,133 – which discloses a foot at the bottom of a construction chair that does not end in a point – on the basis that it "does not show a pin member." Amendment and Response of October 20, 2003, Def. Cl. Const. Br., Ex. 1, at p. 36 of 88 [Doc. # 24].

In contrast to the "pin member" of the '367 patent, the example of the first generation product submitted by UBP – which is actually the 5-5.5 RING inch size[5] – has a leg with a flat rectangular bottom. *See* Def. Mot. Sum. J., Decl. of Marinus Hansort, Ex. 36 (5-5.5 RING inch size construction chair), Ex. 34 (photographs of first generation UNI-CHAIR products), Ex. 37 (manufacturing drawings of the first generation UNI-CHAIR products, showing that the foot on all first generation chairs have a flat bottom with dimensions of 1/8 inch by 1/5 inch). Even under a very liberal interpretation of the claims in light of the specification, it is clear that a flat bottomed "pin member" is not what is described.

In an earlier case dealing with a pointed object, the Federal Circuit affirmed the district court's construction of "spike" to mean a structure with a pointed tip "which tip may be sharp or slightly rounded." *See ICU Med. Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1374-75 (Fed. Cir. 2009). In that case, as in this one, a "spike" or a "point" may have degrees of sharpness, but unless the patentee acts as his or her own lexicographer, such words do not denote a flat surface.

---

[5]UBP states that because the first generation products are no longer manufactured, it was not possible to locate a sample in the size Sorkin accuses of infringement. Nevertheless, UBP has submitted photographs and manufacturing drawings of the other first generation products that demonstrate that the structure of the legs' bottoms are the same for the first generation products, regardless of size.

Sorkin argues  that the pointed corners of the rectangular flat foot "accomplish the goal of digging in."   Supposedly, this achieves a result similar to what the claim construction order states is achieved by one or more points of the pin member: to help prevent the chair from moving when it is under load.  This a doctrine of equivalents ("DOE") argument.  Under the DOE, an accused product infringes "if it performs substantially the same function in substantially the same way to obtain the same result as the claimed product or process."  *Hughes Aircraft Co. v. U.S.*, 717 F.2d 1351, 1361 (Fed. Cir. 1983) (internal citations omitted).  Setting aside the question of whether a flat foot, or even some kind of  "digging" effect achieved by the corners or sides of a flat rectangular surface, performs in  "substantially the same way" as using one or more points to bite into the surface, Sorkin has never claimed, in pleadings or Infringement Contentions, infringement under the DOE.

A product with a flat, rectangular bottom to its leg does not literally infringe a patent claim which requires the claimed product to come to one or more sharp points.  Since Sorkin gave no notice of a DOE contention, summary judgement is appropriate.

3.    *Currently manufactured UNI-CHAIR products*

The same argument holds true for all of UBP's currently manufactured UNI-CHAIR products.  As shown in all physical samples of the currently manufactured UNI-CHAIR products submitted to the court[7], the base of the leg ends in wedge-shaped foot, which comes to a narrow,

---

[6]The court notes that none of Sorkin's patents – the '367 or the earlier '693 and '095 – use the phrase "digging in" or even the word "dig."

[7]Def. Mot. Sum. J., Decl. of Marinus Hansort, Exs. 7-B, 8-B, 9-B, 10-B, 11-B, 12-B, 13-B, 14-B, 15-B, 16-B, 18-B, 19-B, 20-B, 22-B, 24-B, 26-B, 27-B, 28-B, 29-B, 30-B, and 31-B. These represent sizes ranging from 0.75 inches to 9.75 inches, and include several sizes which are not actually accused by Sorkin of infringement.  The wedge-shaped base of the leg remains

flat ridge shaped like a blade.  *See also* Def. Mot. Sum. J., Decl. of Marinus Hansort, Ex. 2 (photographs of various sizes of the currently manufactured UNI-CHAIR products); Ex. 3 (manufacturing drawings for the currently manufactured UNI-CHAIR products), Ex. 5 (same), Ex. 6 (same for those product sizes with a ring).  As with the flat, rectangular base on the first-generation products' leg, the blade-like ridge on the currently manufactured products' leg does not meet the "pin member" claim requirement.  The bottom of the foot is not one or more points with some degree of sharpness; it instead ends in a shape more akin to a narrow flat line.   No DOE contentions have been made, so the court need not consider whether the blade or ridge at the foot of the legs of the accused products performs substantially the same function in substantially the same way to obtain the same result as the point(s) at the end of the claimed pin member.

B.       UBP's Other Arguments

The court need not reach the remainder of UBP's arguments to resolve this motion. However, it notes that none of the accused products meet the limitation in claim 8 that the chair's receiving area and legs be made of a nylon material.  UBP states, and Sorkin does not dispute, that the UNI-CHAIR products are all made of polypropylene.  While both polypropylene and nylon are thermoplastic polymers – i.e., they turn soft when heated and harden when cooled – they have different chemical structures, melting points, and uses.  It is difficult to imagine how Sorkin could have alleged in good faith that these products literally infringed claim 8 after a pre-

---

consistent across all sizes.

suit investigation, much less after it received samples and other discovery from UBP.[8]  This

provides an independent basis for granting summary judgment as to claim 8.

C.      Conclusion

        The court will therefore grant UBP's motion for summary judgment of non-infringement

for all currently manufactured UNI-CHAIR products and the first generation product depicted in

Sorkin's claim chart.  None of these products fulfill the limitation, found in each asserted claim

of the '367 patent, that the construction chair be comprised of a pin member (i.e., a portion of the

leg that comes to one or more points that are sharp enough to help prevent the chair from moving

when it is under load).  Therefore, the accused products do not literally infringe the asserted

claims of the '367 patent.

        IT IS THEREFORE ORDERED that Defendant Universal Building Products, Inc.'s

Motion for Summary Judgment [Doc. # 36] is GRANTED.

        So **ORDERED** and **SIGNED** this **2**  day of **November, 2009.**

_____
Ron Clark, United States District Judge

---

[8]Although only claim 8 includes the limitation that the receiving area and legs of the chair be formed of nylon, there is a strong argument based on the specification that this is the *only* embodiment of the '367 patent.  Under the heading "Brief Summary of the Invention," the specification states "In the present invention, the receiving area and the plurality of legs are integrally formed together of a nylon material."  '367 patent, 5:10-11.  Further, the specification notes that "nylon material is a superior material to that of the cheaper polymeric material used with prior art chairs."  6:25-26.  Although there is a presumption that dependent claims are of "narrower scope than the independent claims from which they depend under the doctrine of claim differentiation[,] . . . Presumptions are rebuttable . . [and] will be overcome by a contrary construction dictated by the written description or prosecution history."  *Regents of Univ. of Cal. v. Dakocytomation Cal. Inc.*, 517 F.3d 1364, 1375 (Fed. Cir. 2008) (internal quotations omitted).  Taken as a whole, the specification strongly indicates that the claims of the '367 patent are exclusively directed to chairs with receiving areas and legs made of a nylon material.