### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

FELIX L. SORKIN,

                  Plaintiff,

    vs.

UNIVERSAL BUILDING PRODUCTS, INC.,

                  Defendant.

Civil Action No. 1:08-CV-133

JUDGE RON CLARK

---

### DEFENDANT UNIVERSAL BUILDING PRODUCTS, INC.'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS PURSUANT TO 35 U.S.C. § 285 AND FED. R. CIV. P. 11 AND SUPPORTING BRIEF

Pursuant to 35 U.S.C. § 285 and Fed. R. Civ. P. 11, defendant Universal Building Products Inc. ("UBP") moves the Court to award UBP its attorneys' fees and costs of defending this action from the beginning of this case through the present motion for attorneys' fees and costs. (To date, that amount totals $300,738.94.) This motion is premised upon the pleadings in this case, including the motion for summary judgment and supporting materials previously filed by UBP. It is also supported by the Third Declaration of Lisa M. Arent, filed with this motion.

## RELEVANT PROCEDURAL FACTS

**1.**    <u>The Complaint and Preliminary Infringement Contentions</u>

Felix Sorkin filed this action against UBP on March 12, 2008, alleging infringement of U.S. Patent No. 7, 237,367 ("the '367 patent"). (Arent Decl., Ex. O) (Doc. # 36-21). The Complaint alleged that UBP sells "construction chairs covered by the '367 patent." *Id.* (Compl. ¶ 10). The Complaint did not specify which UBP products infringe the patent.

Pursuant to P.R. 3-1, on August 11, 2008, Sorkin provided his disclosure of asserted claims and infringement contentions, purporting to identify which products of UBP infringe the

patent.  (Arent Decl. ¶ 2, Ex. A) (Doc. ## 36-3-36-4).  In that disclosure, Sorkin attached two product lists of UNI-CHAIR products, accusing all sizes of the "first generation" product (nine sizes) of infringing the '367 patent, and accusing all sizes of the Current UNI-CHAIR product (19 sizes) of infringing the patent.  (Arent Decl., Ex. A at 2, & Attachment A).  Specifically, "Sorkin asserts that each embodiment, in all available sizes, infringes one or more of the claims of the '367 patent."  *Id.*

Although Sorkin purported to accuse 28 different embodiments of the UNI-CHAIR products of infringement, in his August 2008 infringement contention document he submitted claim charts for only two different embodiments of the products.  Sorkin did not identify which two sizes of the UNI-CHAIR product are shown in the charts.  Nor did the claim charts identify specifically where in each of those products each element of each asserted claim of the patent is found.  *See* (Arent Decl., Ex. A, Attachments B-1, B).  Rather, the claim charts have crude arrows pointing to the UNI-CHAIR products, to represent the presence of broadly stated claim elements of each claim of the patent.  *See id.*

On September 19, 2008, UBP produced to Sorkin manufacturing drawings showing the design and specifications for the UNI-CHAIR products for the first generation products, the second generation products, and the Current products.  (UBP's Initial Summary Judgment Brief at 3-5) (Doc. # 36).  UBP also produced laboratory test results showing that the UNI-CHAIR products are composed of polypropylene.  (Arent 2nd Decl. ¶ 4; Hansort Decl., Ex. 32) (Doc. ## 36-2, 36-23).

Beyond the manufacturing drawings, UBP also supplied exemplars of various sizes of the Current UNI-CHAIR products.  On September 26, 2008, UBP produced to Sorkin 13 different sizes of the Current UNI-CHAIR products.  (UBP's Initial Summary Judgment Brief at 3-5).

UBP's counsel discussed the claim charts with Sorkin's counsel, and Sorkin's counsel agreed to supply additional claim charts.  (Arent 3rd Decl. ¶ 2).  On November 10 and 11, 2008, Sorkin provided additional claim charts for 12 of the UNI-CHAIR products.  (Arent Decl. ¶ 8, Exs. B- M).  Those corresponded to 12 of the 13 sizes of Current UNI-CHAIR products UBP supplied to Sorkin.  (UBP's Initial Summary Judgment Brief at 3-5).  Sorkin did not accuse the 0.75 inch size of the UNI-CHAIR product of infringing the patent.

Again, the additional claim charts suffered from the same lack of detail found in the original two claim charts served in September 2008.  These additional claim charts merely had photographs of the accused product, and contained crude arrows pointing generally to the chair, to purportedly show the presence of broad claim limitations in the product.  *See* (Arent Decl., Exs. B-M).

### 2.   <u>Initial Claim Construction Disclosures</u>

Between September 26, 2008 and October 15, 2008, the parties identified the terms and phrases of the asserted claims of the '367 patent that were in dispute, and provided their constructions of each of those terms and phrases along with the extrinsic evidence supporting those constructions.  (Arent 3rd Decl. ¶ 3).  Counsel for the parties met to discuss their respective proposed claim constructions in Chicago on October 24, 2008.  (Arent 3rd Decl. ¶ 4).  Thereafter, the parties conferred to draft and file the Joint Claim Construction and Prehearing Statement.  (Doc. #21).  The parties could not reach agreement on the construction of any of the disputed claim terms or phrases.  *See id.*

The Joint Claim Construction and Prehearing Statement ("Joint Statement") was filed on November 5, 2008.  For many of the disputed terms and phrases, Sorkin asserted that the plain meaning applies, merely restating the claim language.  For the key claim terms, such as "pin member" (required by all the claims of the patent), and "tapering"/"converge" (required by all

but two claims), Sorkin proposed constructions that are contrary to the patent specification and the plain meaning of the terms.

### 3.   Service of the Rule 11 Motion

On December 23, 2008, before the claim construction briefing commenced in this case, UBP served a motion pursuant to Fed. R. Civ. P. 11(c)(2) upon Sorkin.  (Arent 3rd Decl. ¶ 5, Ex. V).  The Rule 11 motion argued that all of the assertions of infringement of the '367 patent lacked a factual and legal basis.  (Motion at 1).  Sorkin lacked a factual and basis to make such allegations when he filed this action, and he lacked such a basis to continue to allege infringement of the '367 patent.  *Id.*  The motion accordingly demanded Sorkin to withdraw the Complaint in its entirety.

The Rule 11 motion set forth in detail the elements missing from the accused products (the UNI-CHAIR products for which claim charts were provided).  For each accused product, the motion identified by Bates number: (a) any exemplars of the product provided; (b) the manufacturing drawings depicting that product; and (c) the lab test results regarding the chairs' chemical composition, all of which show that the products do not contain all elements of the asserted claims of the '367 patent.

Specifically, the Rule 11 motion set forth the following arguments that the accused products do not infringe the asserted claims of the '367 patent:

- the 1-1.5, 1.25-1.75, and 2-2.5 inch sizes of the UNI-CHAIR product do not infringe because they have no legs at all (Motion at 5, part I.A);

- the 1.25-1.75 and 2-2.5 inch sizes of the UNI-CHAIR product do not infringe because, if they have legs at all, they are only one-portion legs (Motion at 5, part I.B.);

- the 3-3.5, 3.25-3.75, 4-4.5, and 4.25-4.75 inch sizes of the UNI-CHAIR product do not infringe claims 1 through 10 of the '367 patent because the sides of the second portion of the leg are not tapering (Motion at 6-7, part II);

- the 5-5.5, 5.25-5.75, 6-6.5, and 8.25-8.75 inch sizes of the UNI-CHAIR product do not infringe claims 1 through 10 of the '367 patent because the sides of the first and second portions of the leg are not tapering (Motion at 7-9, part III);

- none of the sizes of the UNI-CHAIR product infringe claim 8 of the '367 patent because they are not made of "nylon material" (Motion at 9, part IV);

- the UNI-CHAIR product does not infringe claims 3, 11, or 12 of the '367 patent, because the shape of the foot on the bottom of the legs is not an "inverted conical shape" (Motion at 9-10, part V); and

- none of the sizes of the UNI-CHAIR product infringe the '367 patent because the product does not contain a "pin member" (Motion at 10-11, part VI).

Sorkin did not respond to the Rule 11 motion served on December 23, 2008.  (Arent 3rd Decl. ¶ 6).  He did not dismiss this action, and he continued to assert that the UNI-CHAIR products infringe claims 1 through 5 and 7 through 12 of the patent.

### 4.    <u>Claim Construction Briefing and Hearing</u>

The parties filed their claim construction briefs on February 12, 2009 (Sorkin's Brief) (Doc. # 23) and March 12, 2009 (UBP's Brief) (Doc. # 24).

UBP prepared a Technology Synopsis for the Court, filing it on April 16, 2009.  (Doc. #27).  Sorkin thereafter filed a notice with the Court that he agreed with UBP's Technology Synopsis.  (Doc. #28).

The Court held its Markman hearing in Beaumont on May 27, 2009, at which counsel appeared.  A representative of UBP (Marinus ("Rens") Hansort) appeared at the Markman hearing to answer the Court's technical questions.  (Hearing Trans. at 6-7).  Felix Sorkin did not appear at the Markman hearing.  *See id.*

On July 9, 2009, the Court issued its Order Construing Claim Terms of United States Patent No. 7,237,367 ("Claim Construction Order").  (Doc. # 33).  In the claim construction, the Court defined "pin member" to be "a portion of the leg that comes to one or more" "sharp" "points."  (Claim Construction Order at 16-19).  The Court noted that the patent states that the

"pin member has a point formed at an end thereof of the flat bottom surface." *Id.* at 17.  The

patent specification notes in various places that the "pin member" has a "point." *Id.* at 17-18.

Also in the claim construction, the Court defined "tapering" and "converge" to have their

plain meaning:  "that as one moves along the leg from the receiving area of the chair toward the

pin member, the sides of the portion of the leg in question come closer together."  (Claim

Construction Order at 14-15).

5.        **Summary Judgment Motion**

UBP filed its motion for summary judgment on August 3, 2009.  (Doc. #36).  Because

Sorkin asserted that "each embodiment, in all available sizes," infringes the patent, UBP's

motion for summary judgment provided evidence to demonstrate that none of the UNI-CHAIR

products of any size or version infringes the patent.  Thus, the motion for summary judgment

discussed the "first generation," "second generation," and Current UNI-CHAIR products, and

responded to the accusation of infringement for those products.

In support of its motion for summary judgment, UBP assembled and submitted to the

Court 21 of the UNI-CHAIR products (20 Current products and 1 sample of the "first

generation" product), and the manufacturing drawings for the Current UNI-CHAIR product and

for the first generation and second generation products.  *See* (Hansort Decl., Exhibits) (Doc.

## 36-23-36-32).  UBP also supplied the declaration of Rens Hansort, which set forth the factual

background of its manufacture and sale of the various versions of the UNI-CHAIR products and

the design and specifications of those products material to this case.

All of this information and evidence was distilled into a statement of undisputed facts in

UBP's summary judgment brief, consisting of 56 different points of undisputed facts that were

material to the motion for summary judgment.  (UBP's Initial Summary Judgment Brief at 2-13).

Further, UBP set forth the issues to be decided by the Court in its determination of the motion.

*Id.* at 13-15.  UBP's summary judgment brief demonstrated that the accused products do not infringe because they lack one or more required element of every claim of the patent asserted to be infringed.  These all were previously disclosed to Sorkin in the motion served in December 2008.

Sorkin filed his response to UBP's motion for summary judgment on August 28, 2009. (Doc. #41).  Sorkin did not respond to UBP's statement of undisputed facts; therefore they were admitted.  *See* (UBP's Summary Judgment Reply Brief at 1-2) (Doc. # 45); *see also* (Summary Judgment Order at 7) (Doc. # 46).  In addition, Sorkin submitted his own declaration, which consisted of conclusory statements that each element of each asserted claim of the patent is found in the accused products, merely citing to the claim charts for these assertions.  (Doc. # 41-2).  Further, the declaration redefines the meaning of several key claim terms contrary to the Court's claim construction, to conclude that the redefined term is found in the accused products.

In his summary judgment response, Sorkin continued to maintain that the accused products infringe the asserted claims of the '367 patent.  He did not withdraw any claims or concede that any accused products are not infringing.  For example, he did not withdraw his accusation that the UNI-CHAIR products infringe claim 8 of the patent.  (Response Brief at 1).  However, his brief contains no response to UBP's proof that the products do not infringe claim 8 because they are not made of nylon.

### 6.  <u>Amendments of Disclosures</u>

After the claim construction, Sorkin did not file amended infringement contentions or in any way change his accusations of infringement.  (Arent 3rd Decl. ¶ 7).  He did not withdraw any of his contentions of infringement, modify his claim charts, or assert new theories of infringement such as the doctrine of equivalents.  Sorkin continued to accuse all of the products of infringing that he originally accused in his disclosure of September 2008.

Sorkin's deadline for filing amended infringement contentions was August 10, 2009. (Arent 2nd Decl. ¶ 6)  (Doc. # 45-2).  Sorkin did not amend those contentions or withdraw or modify any of his accusations of infringement.

Pursuant to P.R. 3-3 and 3-6, UBP served its Amended Invalidity Contentions on August 28, 2009.  (Arent 3rd Decl. ¶ 8).

**7.    Discovery Requests**

The parties did not serve written discovery requests prior to the briefing of the summary judgment motion.  (Arent 3rd Decl. ¶ 9).  The parties first served written discovery requests on October 15, 2009.  *Id.*  This Court issued its ruling on the summary judgment motion on November 2, 2009, two weeks before the discovery responses were due.

No depositions were scheduled or held in this case prior to the Court's ruling on the summary judgment motion.  (Arent 3rd Decl. ¶ 10).

**ARGUMENT**

**I.    ATTORNEYS' FEES AND COSTS SHOULD BE AWARDED UNDER § 285 OR, IN THE ALTERNATIVE, UNDER FED. R. CIV. P. 11.**

UBP moves the Court to enter an award requiring Sorkin to compensate UBP for its attorneys' fees and costs incurred in this action, which total $300,738.94.  (Arent 3rd Decl. ¶ 11). (This total includes UBP's statutory costs set forth in its Bill of Costs, which UBP is separately filing with the Court.)  (The Judgment awarded UBP its statutory costs, which UBP is submitting pursuant to Fed. R. Civ. P. 54.)  UBP moves the Court to hold that this is an "exceptional case" and exercise its discretion to award UBP its attorneys' fees and costs pursuant to 35 U.S.C. § 285.  As an additional and/or alternative ground for such an award, UBP moves for such an award pursuant to Fed. R. Civ. P. 11.

As set forth below, as the prevailing party in this case, UBP is entitled to an award of its attorneys' fees and costs because this case was filed without a proper basis and in bad faith, and

it was continued even though Sorkin never had a basis to claim that UBP infringed the '367

patent.  As shown below, at various turns in this case, Sorkin took positions that were baseless

and without merit, which show he never had a plausible claim that UBP's UNI-CHAIR products

infringe the '367 patent, and that Sorkin knew that his claims were baseless.

### A.   The Governing Law Regarding § 285 and Fed. R. Civ. P. 11.

Different standards govern an award of attorneys' fees and costs under 35 U.S.C. § 285

and Fed. R. Civ. P. 11.  Those standards are discussed below.

### 1.   Law Regarding Awards of Fees Under 35 U.S.C. § 285.

"The court in exceptional cases may award reasonable attorney fees to the prevailing

party."  35 U.S.C. § 285.  As this Court has explained, the standard for such a determination is as

follows:

> The determination of whether a case is exceptional, and, thus,
> eligible for an award of attorneys' fees under § 285 is a two-step
> process.  First, the district court must determine whether a case is
> exceptional.  After determining that a case is exceptional, the
> district court must determine whether attorney fees are appropriate.
> Conduct that can form a basis for finding a case exceptional
> includes inequitable conduct before the PTO, misconduct during
> litigation, vexatious or unjustified litigation, and frivolous suit.

*Computer Acceleration Corp. v. Microsoft Corp.*, 2007 U.S. Dist. LEXIS 87357 (E.D. Tex.

2007) (citations omitted); *see also Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1245

(Fed. Cir. 2003) (same).  The movant must prove that the case is exceptional by clear and

convincing evidence.  *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003).

The Federal Circuit has " 'recognized many types of misconduct that may create an

exceptional case for purposes of awarding fees.' "  *Synthon IP, Inc. v. Pfizer, Inc.*, 484 F. Supp.

2d 437, 441 (E.D. Va. 2007), *aff'd*, 281 Fed. Appx. 995 (Fed. Cir. 2008).  "A case may be

deemed exceptional when there has been some material inappropriate conduct related to the

matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the

patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." *Brooks Furniture Manuf. Inc. v. Dutailer Int'l, Inc.*, 393 F.3d 1378, (Fed. Cir. 2005). Thus, a Rule 11 violation can serve as a basis for finding a case exceptional. *Digeo v. Audible*, 505 F.3d 1362, 1368 (Fed. Cir. 2007).

"When 'the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence.' " *Phonometrics*, 350 F.3d at 1246 (quoting *Eltech Sys., Corp. v. PPG Indus.*, 903 F.2d 805, 811 (Fed. Cir. 1990)). This standard is met when the patentee never articulates a viable theory of infringement. *Phonometrics*, 350 F.3d at 1247. "Although a lawsuit pursued in bad faith is a sufficient basis for imposing attorney fees under § 285, such bad faith requires not misleading pre-litigation conduct, but vexatious, unjustified, or frivolous litigation." *Forest Labs.*, 339 F.3d at 1329-30. "For purposes of the § 285 exceptional case analysis, the Federal Circuit has recognized that '[a] frivolous infringement suit is one which the patentee knew, or, on reasonable investigation, should have known was baseless.' " *Synthon IP, Inc. v. Pfizer, Inc.*, 484 F. Supp. 2d, 437, 442 n.2 (E.D. Va. 2007) (quoting *Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269, 1273-74 (Fed. Cir. 2004)).

"Absent misconduct in the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Brooks Furniture*, 393 F.3d at 1381. "Where, as here, the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence. The alternative, abuse of the courts through

manifestly unreasonable lawsuits based on uninvestigated allegations, would constitute a blot on the escutcheon of the law and a violation of Rule 11, Fed. R. Civ. P." *Eltech*, 903 F.2d at 811.

"The inadequacy of pre-filing preparation may be relevant to the 'exceptional case' question." *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1035 (Fed. Cir. 2002). The "exceptional case" determination is separate from a motion for attorneys' fees under Fed. R. Civ. P. 11. A court may decline to find a case an "exceptional case," although an award of fees may be appropriate under Rule 11. *See id.* Likewise, a case may be held an "exceptional case" and fees awarded even though a Rule 11 motion is not filed.

Once a court has determined that a case is exceptional, it then must determine whether an award of fees is appropriate in the case. These determinations are within the Court's discretion. The Court may consider a number of factors, including the " 'closeness of the case, tactics of counsel, the conduct of the parties and any other factors that may contribute to a fairer allocation of the burdens of litigation as between the winner and loser.' " *Synthon IP*, 484 F. Supp. 2d at 442 (quoting *J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc.*, 822 F.2d 1047, 1051 (Fed. Cir. 1987)). The Court may weigh factors such as the degree of culpability, the closeness of the questions, and litigation behavior. *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1359 (Fed. Cir. 2008).

The purpose of § 285 "is to reimburse a *party* injured when forced to undergo an 'exceptional' case." *Mathis v. Spears*, 857 F.2d 749, 753 (Fed. Cir. 1988) (emphasis in original). The purpose of such an award is to compensate that party. *Id.* Such an award also serves as a deterrent to bringing clearly unwarranted suits. *Id.* at 754. Typically, an award of attorneys' fees under § 285 is not properly assessed against counsel, but rather against the party. *Phonometrics*, 350 F.3d at 1253.

2.      **Rule 11 Requirements for Awarding Fees and Costs.**

Rule 11 requires that

> a party, when signing a pleading or any other paper before the
> court, certify four specific representations:  that the party is not
> filing the paper "for any improper purpose, such as to harass or to
> cause unnecessary delay or needless increase in the cost of
> litigation"; its claims or defenses are plausible under existing or
> potential future law; the allegations are supported by evidence or
> likely to be supported with further investigation; and that any
> denials of allegations are so supported.  A violation of any one of
> these, including filing for an improper purpose, can merit
> sanctions. Under the current version, courts may in rare
> circumstances sanction parties for pleadings like those here that,
> although having plausible legal theories based in fact, have an
> underlying improper purpose.

*Federal Deposit Insurance Corp. v. Maxxam*, 523 F.3d 566, 577 (5th Cir. 2008).

For a violation of Rule 11, a court may impose sanctions against the offending party and

his attorney:

> Rule 11 authorizes the imposition of sanctions on an attorney and
> represented party when the attorney signs a "pleading, motion, or
> other paper" (1) without having first conducted a "reasonable
> inquiry" into whether it is "well grounded in fact"; (2) without
> having first conducted a "reasonable inquiry" into whether it is
> "warranted by existing law or a good faith argument for the
> extension, modification, or reversal of existing law"; or (3) which
> is "interposed for purposes of delay, harassment, or increasing
> costs of litigation."  Thomas v. Capital Sec. Services, Inc., 836
> F.2d 866, 873-74 (5th Cir. 1988) (en banc).  Rule 11 imposes an
> objective standard of "reasonableness under the circumstances."
> Id. at 873 (citations omitted).  We apply an abuse of discretion
> standard "across-the-board to all issues in Rule 11 cases,"
> recognizing that "[t]he trial judge is in the best position to review
> the factual circumstances and render an informed judgment"
> concerning such issues.  Id. at 872-73.

*Elliott v. M/V Lois B*, 980 F.2d 1001, 1006-07 (5th Cir. 1993).

Rule 11(c) contains a safe harbor provision that requires the moving party to first serve

the motion for sanctions upon the opposing party, providing the party 21 days within which to

withdraw the offending pleading.  If the moving party serves this notice and the pleading is not withdrawn, it may then file the motion for sanctions with the court.

Once the movant establishes the elements of a Rule 11 violation with respect to a complaint, the burden then shifts to the non-movant to show that it made a reasonable presuit inquiry into its claim.  *Digeo v. Audible*, 505 F.3d 1362, 1368 (Fed. Cir. 2007).  The patent holder must be prepared to demonstrate exactly why it believed before filing the claim that it had a reasonable chance of proving infringement.  *Id.* (quoting *View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)).

The central purpose of Fed. R. Civ. P. 11 is to deter baseless filings.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990).

**B.     UBP is Entitled to An Award of Attorneys' Fees Under § 285, or In the Alternative, Under Rule 11.**

UBP should be awarded its attorneys' fees and costs against Sorkin on the ground that this is an "exceptional case" under § 285.  This is an exceptional case because it was objectively baseless, and because Sorkin certainly knew (or recklessly did not care) that there was never any plausible claim that the UNI-CHAIR products infringe the '367 patent.

Sorkin never had a plausible claim that those products infringe the patent, because they do not have a "pin member" as defined by the patent specification.  UBP served a Rule 11 motion upon Sorkin, setting forth in detail why the products do not infringe the patent, identifying several claim elements not found in the UNI-CHAIR products and citing the evidence supporting these contentions.  However, Sorkin failed to withdraw the Complaint upon receiving such notice, and he continued this litigation.  At every turn of this case, Sorkin has taken frivolous positions regarding the meaning of the claim terms and the basis of the allegations of infringement.

Sorkin simply filed and continued this case in order to burden his competitor, to impose it with the costs of this litigation, without bothering to have a good faith basis for asserting that it infringes the patent.  Although this case was handled very efficiently by UBP's counsel, with an eye toward minimizing costs, to mount an appropriately thorough and complete defense, this case has imposed a substantial financial burden upon UBP.  This case, which was filed in March 2008 and concluded with the judgment of dismissal on summary judgment on November 2, 2009, cost UBP over $300,000 in attorneys' fees and costs.

Sorkin failed to conduct an adequate pre-suit investigation and in filing a Complaint that he knew lacked objective merit.  Sorkin further engaged in litigation misconduct, making this an "exceptional case" under § 285, when Sorkin continued this case without withdrawing his claims in full or even in part, even after they were shown to be without merit.  Sorkin submitted legal positions on the claim construction, for example, that disregarded the clear language of the patent specification and that were contrary to Sorkin's own statements to the PTO during prosecution. Sorkin failed to submit claim charts to support his claim that all sizes of the UNI-CHAIR product (28 different chairs in total) infringe the patent.  Finally, Sorkin submitted frivolous positions in opposition to UBP's motion for summary judgment and did not contest any of the facts submitted by UBP.

Sorkin personally engaged in litigation misconduct in this case.  He submitted his own declaration, which contains unsupported, conclusory allegations that UBP's products infringe the patent, but he ignored the Court's claim construction and defined claim terms in a manner that was previously rejected by the Court.  Further, the declaration contains statements that are made in bad faith at the very least, and are potentially false and misleading.

Also as shown below, Sorkin and his attorneys violated Rule 11 when they filed this action without first conducting a pre-suit investigation.  Further, even if Sorkin did conduct such

an investigation, he violated Rule 11 by filing this action because his claims that the UNI-

CHAIR products infringe the '367 patent are objectively baseless.

For these reasons, UBP's motion pursuant to § 285 and Rule 11 should be granted.

Following are examples of Sorkin's conduct that establishes that this is an "exceptional case"

justifying an award to UBP of its attorneys' fees and costs under § 285 and also establish a

violation of Rule 11:

> **1.     Sorkin Failed to Conduct a Pre-Suit Investigation or Filed Suit Knowing that the UNI-CHAIR Products Do Not Infringe.**

The Court should declare this case an exceptional case on the ground that Sorkin filed

this action without a factual or legal basis.  The Current UNI-CHAIR products all have a wedge-

shaped foot, leaving a line on the surface on which the chair sits.  The first generation UNI-

CHAIR products have a flat, rectangular foot.  Thus, Sorkin knew at all times that these chairs

lacked the "pin member" as described in the patent – the legs of these chairs do not end in a

point.  Sorkin apparently had at least one of the Current UNI-CHAIR products and one of the

first generation products in his possession when he filed suit.  He therefore knew that the feet of

those products do not have pointed ends.

At the outset – even before filing suit – Sorkin had the obligation to obtain and inspect

the various UNI-CHAIR products (the products themselves were publicly available for purchase,

see (Hansort Decl., Exs. 1, 33; Doc. ## 36-24, 36-26)).  "When information is publicly available,

the Patent Rules require plaintiffs to set forth specific theories of infringement at the outset of the

case. . . .  Before bringing suit, plaintiffs are expected to rigorously analyze all publicly available

information, and early in the case plaintiffs must explain their infringement theories in detail."

*Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 817 (E.D. Tex. 2006); *accord Connectel,*

*LLC v. Cisco Systems, Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005); *Am. Video Graphics,*

*L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) ("In non-software patent

cases, plaintiffs are usually able to purchase defendants' products and ascertain the mechanics of how those products infringe before plaintiffs bring suit.").

However, Sorkin apparently failed to conduct a pre-suit investigation regarding the UNI-CHAIR products, filing an action accusing UBP products of infringing without examining all of the products against the claims of the '367 patent.  Sorkin's initial claim charts only accused two unidentified UNI-CHAIR products of infringing the patent.  Sorkin states that these two charts "formed the basis of this action."  (Response Brief at 2) (Doc. # 41).

When he filed this action, Sorkin apparently only had two sizes of the UNI-CHAIR product – the two chairs pictured in his claim charts.  In his response to the motion for summary judgment, Sorkin represented that he had no other UNI-CHAIR products other than the two initially accused products, because he stated that he provided additional claim charts subsequently as to only those UNI-CHAIR products for which *UBP provided samples.* (Response Brief at 3).  "Sorkin has provided claim charts for all variations of UNI-CHAIR products which UBP produced prior to the deadline for initial disclosures."  *Id.*  This statement represented that Sorkin did not previously have any other sizes of chairs in his possession beyond the 13 sizes of chairs produced by UBP in September 2008 (and the one first generation chair for which he provided a claim chart).  *Id.*

These arguments lead to the conclusion that Sorkin only had two embodiments of the UNI-CHAIR product prior to filing suit and prior to serving his preliminary infringement contentions in September 2008.  Yet Sorkin accused all sizes of the UNI-CHAIR products (first generation and Current versions) of infringing.  This was baseless, as he possessed only two sizes of the chairs.  Sorkin's summary judgment response represents that he did not provide claim charts until he had a sample of the particular sized UNI-CHAIR product in his possession and he did not obtain such samples until UBP provided them in this case.

Thus, Sorkin's summary judgment response and his submission of just two claim charts at the outset lead to the conclusion that Sorkin failed to examine all sizes of the UNI-CHAIR product before filing this action and before serving his infringement contentions.  He therefore filed this action without a basis for concluding that the UNI-CHAIR products infringe the '367 patent.

Further, Sorkin did not hone his claims of infringement after he was provided sample UNI-CHAIR products and manufacturing drawings for those products in September 2008.  For example, the manufacturing drawings and the samples demonstrated that the foot of the UNI-CHAIR products (all versions of them) do not end in a point.  Rather, the Current UNI-CHAIR products have a wedge-shaped foot.  The earlier versions end in a line/edge foot and/or a rectangular, flat, foot.

Nor did Sorkin withdraw his accusation that the UNI-CHAIR products infringe claim 8 of the patent, when UBP provided lab test results showing that the UNI-CHAIR products are made of polypropylene, not nylon.  As this Court stated in its summary judgment ruling:  "It is difficult to imagine how Sorkin could have alleged in good faith that these products literally infringed claim 8 after a pre-suit investigation, much less after it received samples and other discovery from UBP."  (Order at 10-11).

Sorkin did not serve claim charts for each and every one of the 28 embodiments he accused of infringing the '367 patent – rather, he served charts for only two products.  This was contrary to the Local Patent Rules, which require "a chart identifying specifically where each element of each asserted claim is forward within each accused instrumentality . . . ."  P.R. 3-1.

The claim charts he did provide failed to explain how and where in each size of the accused products the elements of the asserted claims are found.  Rather, his charts merely quoted the claim language and depicted crude arrows pointing to a photograph of the chair.  These

charts failed to show the basis for his claims of infringement.  Further, Sorkin never supplied

disclosures to set forth the basis for his claims of infringement.

> **2.      Sorkin's Claim Construction Positions Demonstrate That He Knew
> That the UNI-CHAIR Products Do Not Infringe the '367 Patent.**

Sorkin's arguments in the claim construction proceedings likewise demonstrate that he

lacked a good faith basis in fact or law to assert that UBP infringes the '367 patent.  All claims of

the '367 patent require a "pin member."  Thus, it was critical to Sorkin's claims that the foot on

the accused products meets the definition of "pin member."

The specification of the '367 patent, and Sorkin's statements in the prosecution of the

patent, clearly defined what is meant by "pin member."  Throughout the specification, Sorkin

defined "pin member" to be a member that has a point and ends in a point.  The specification

refers to other Sorkin patents, which have members ending in a point.  In the patent prosecution,

Sorkin distinguished over the foot on a prior art construction chair (the Hartzheim '133 Design

patent) by arguing that the rectangular, narrow foot on that chair is not a "pin member."  (UBP's

Initial Summary Judgment Brief at 28).

Sorkin's lack of good faith in filing and continuing this action is demonstrated by his

positions throughout the case.  For example, this is apparent in Sorkin's proposed definition of

"pin member": "a member having a bottom position below a top, the bottom having a profile

smaller than a profile of the flat bottom surface of the leg."  (Joint Statement at 4).  This

definition ignored the plain meaning of "pin."  It also ignored the language of the specification,

which repeatedly refers to the "pin member" as having a "point" or a "pointed end."  The

specification set forth the inventor's definition of "pin member"; however, in litigation Sorkin

ignored that definition, contrary to established law regarding the interpretation of patent claim

terms.  Further, Sorkin contradicted himself – in prosecution of the patent, Sorkin stated that a

prior art construction chair that has a rectangular, flat bottomed foot (the '133 Hartzheim Design

patent) did not have a "pin member"; however, the broad definition proposed in Sorkin's claim construction positions would read on that previously-distinguished prior art.

Sorkin took these positions on the meaning of "pin member" because the UNI-CHAIR products do not have a "pointed end" on the foot.  Sorkin attempted by his claim construction argument to re-write the patent to effectively eliminate the requirement of a "pin member" and to encompass any chair with a foot on the bottom.

Likewise, Sorkin's definition of "tapering" in litigation departs from the use of that term in the patent specification and Sorkin's statements to the PTO during prosecution. Distinguishing over the prior art, Sorkin contended to the PTO that legs whose sides are "generally parallel" are not converging, thus confirming that "tapering" and "converging" have their plain meaning in this context.  (Joint Statement at 29-30).  However, in this litigation, Sorkin abandoned this representation, and argued that "tapering" does not occur along the length of the sides of the leg.  Rather, "tapering," he argued, is what occurs only at the "flat bottom surface," arguing that the patent defines "tapering" is used in a special way, to mean "to converge at the flat bottom surface."  (Joint Statement at 4).

Thus, for "tapering" and "converge," Sorkin ignored the language of the patent and his own statements during the patent prosecution to re-write those terms to encompass construction chairs whose legs are generally parallel.  Sorkin did so in order to encompass the legs of the UNI-CHAIR product, which were generally parallel.

Sorkin did not have a good faith basis in law or fact to file this action.  His positions on claim construction, as shown above, make clear that he did not have a good faith basis to assert that the UNI-CHAIR products have a pin member or that the first and second portions of the legs of the chairs were tapering.

**3.     Sorkin Failed to Withdraw this Action After Being Served with the Rule 11 Motion.**

UBP provided Sorkin an opportunity to withdraw this action, serving its Rule 11 motion that showed various reasons why the accused UNI-CHAIR products do not infringe the '367 patent.  On December 23, 2008, before claim construction briefing, UBP served upon Sorkin its Rule 11 motion, demonstrating in detail that the UNI-CHAIR products do not infringe the '367 patent.  (These same arguments were asserted in support of UBP's motion for summary judgment.)  However, Sorkin failed to withdraw the Complaint or to withdraw any of his accusations of infringement.  In so doing, Sorkin imposed upon UBP and the Court the time and expense involved in the claim construction briefing, the Markman hearing, and the summary judgment motion.  Sorkin was provided an opportunity to reverse course and to assess his claims of infringement objectively, in good faith.  He failed to do so, and instead, persisted in all the claims originally asserted.

**4.     Sorkin Should Have Sought to Dismiss this Action After the Court Issued the Claim Construction Ruling.**

The Court's Claim Construction Order held that a "pin member" requires a pointed end, rejecting Sorkin's asserted construction of "pin member," and further rejected Sorkin's constructions of "tapering"/ "converge" and "inverted conical shape."  The Order therefore confirmed that Sorkin's arguments on these terms were erroneous as they were contrary to the patent specification and they had no basis in the patent or the law.  There simply was no basis for Sorkin's positions on these terms and Sorkin did not have a good faith basis in making his arguments about the meaning of those terms or in asserting that those claim elements are found in the UBP products.

     **5.**     **Sorkin's Summary Judgment Response Further Demonstrates that Sorkin Did Not Have Good Faith in Filing and Continuing this Action.**

Sorkin's response to the motion for summary judgment further confirms that he lacked good faith in filing and continuing this action.

First, Sorkin did not file any response to UBP's statement of undisputed material facts. (UBP's Summary Judgment Reply Brief at 1) (Doc. # 45).  Thus, Sorkin conceded that all UBP's asserted facts were true and admitted.  There thus were no disputed issues of fact on the allegations of infringement.

Second, Sorkin's response contained a false statement regarding the timing of the documents provided by UBP in its disclosures under the Patent Rules.  Sorkin stated that UBP provided manufacturing drawings for the UNI-CHAIR products "after the deadline" for initial disclosures.  (Response Brief at 3; Fact No. 8) (Doc. # 31).  That was untrue.  UBP produced its manufacturing drawings on September 19, 2008, pursuant to the Scheduling Order and the Patent Rules.  (UBP's Initial Summary Judgment Brief at 7) (Doc. # 36.

Third, as noted above, Sorkin's response brief represented that, beyond the two UNI-CHAIR products depicted in the initial infringement contentions, the only samples of the UNI-CHAIR products he had were those that UBP produced to him.  This reflects that Sorkin failed to obtain samples of all the UNI-CHAIR products before filing this lawsuit.  Thus, he failed to conduct an adequate pre-suit investigation.

Fourth, in response to the motion for summary judgment, Sorkin supplied his own declaration.  This declaration contained conclusory statements that are cut and pasted and repeated for every size chair with little or no variation, referencing the claim charts that purported to accuse the UNI-CHAIR products of infringing without providing any detail or basis

to explain his contentions.  Sorkin's declaration stated that the elements of each asserted claim are found in the accused products.

Further, Sorkin's declaration redefined the claim terms in a manner that was contrary to the Court's claim construction.  For example, Sorkin used the top-larger-than-the-bottom definition of pin member, to assert that UBP's product has a pin member.  (Sorkin Decl. ¶¶ 8, 9) (noting that the current UNI-CHAIR product has an "edge" on the bottom what is 1/4 of an inch long; calling the foot on the first generation chair "rather minimal").  Yet this construction was rejected in the Claim Construction Order.

In addition, Sorkin testified in his declaration that a small bevel at the bottom of the legs of the UNI-CHAIR product meets the definition of "tapering," even though the Court defined "tapering" to mean a narrowing along the length of the legs.  Sorkin testified that the bevel (a small indentation at the end of the leg) would be found in any plastic construction chair, as that is a necessary feature[1] for manufacturing purposes.  (Sorkin Decl. ¶ 27).  If this were true, and Sorkin conceived the invention with the intention that a small bevel constitutes "tapering" in the second portion, then Sorkin mislead the PTO in the prosecution of the patent when he represented that "tapering" is a novel invention of the '367 patent, which distinguishes the claimed chair from the prior art.  (Joint Statement at 28-29).  Sorkin did not have that meaning of "tapering" in mind when prosecuting the patent.  For example, in the prosecution of the patent, Sorkin asserted that the Sorkin '095 patent (likewise a plastic construction chair) did not have "tapering" legs because the sides of the legs "extend generally parallel to each other."  (Joint Statement at 29).  If the bevel on the bottom of the legs on the UNI-CHAIR products constitutes "tapering," and such a feature were, as Sorkin has testified, necessarily found in *all* plastic construction chairs, then the Sorkin '095 patent chair likewise would have a bevel at the bottom

of the leg, and, as such, have "tapering" in the legs as Sorkin has re-defined that term in this case.

Presumably, Sorkin did not make false statements to the PTO in stating that the Sorkin '095 patent does not have "tapering" legs. Sorkin's declaration testimony in this case, that a bevel at the end of generally parallel legs constitutes "tapering," therefore was made in bad faith, if not falsely, given his prior statements to the PTO. Sorkin testified that the bevel on the bottom of the second portions of the leg on 11 of the accused UNI-CHAIR products constitutes tapering. (Sorkin Decl. ¶¶ 30-40).

In addition, Sorkin's declaration reasserted his definition of "inverted conical shape," arguing that the UNI-CHAIR product has this feature "appears" to be in the shape of cone. (Sorkin Decl. ¶¶ 42-43). However, the Court previously rejected the argument that "conical shape" means the "appearance of a cone." (Claim Construction Order at 20-21). Sorkin did not have a good faith basis for stating in sworn testimony that the foot on the UNI-CHAIR product is in the general shape of a cone because it appears in a photo to have a cone shape.

<u>Fifth</u>, as the Court noted in its summary judgment ruling (pages 10-11), Sorkin persisted in arguing that claim 8 is infringed,[2] even though it was undisputed that the UNI-CHAIR products are not manufactured of nylon. Indeed, Sorkin did not bother to provide any response to the summary judgment argument on this point. However, he continued to argue that claim 8 is infringed.

<u>Sixth</u>, Sorkin's response ignored the Court's claim construction that "pin member" requires that the legs of the chair end in one or more "sharp[]" "points." Sorkin did not argue that the UNI-CHAIR products end in a "sharp" "point." Rather, he argued that the foot of the

---

[1] "Regarding the UNI-CHAIR product shown in Exhibits C-O, the limitations of injection molding technology require a taper in the second portion of the leg as it approaches the pin member." (Sorkin Decl. ¶ 27).

chair ends in a line (an "edge"), which consists of "several points." (Response Brief at 12).

Further, he essentially made a doctrine of equivalents argument, contending that the UNI-

CHAIR product's foot "could . . . accomplish  the stated goal of the pin member." (Response

Brief at 13).  However, Sorkin did not assert the doctrine of equivalents as a theory of

infringement in this case.

With regard to the "first generation" UNI-CHAIR product, Sorkin did not argue that such

product ends in a "sharp" "point."  Nor did Sorkin respond to the fact that the foot on the first

generation chair has a flat, rectangular-shaped bottom.  Sorkin also did not respond to UBP's

argument that such foot is materially the same as the foot on the Hartzheim '133 Design patent,

which Sorkin stated to the PTO is not a pin member.  (Initial Summary Judgment Brief at 28).

Seventh, Sorkin's response demonstrated that Sorkin drew the line between the first and

second portions of the leg as described in the '367 patent inconsistently between different sizes

of the UNI-CHAIR product, to argue that even chairs that have no legs at all or only one-portion,

short legs, have two-portion legs.  Such argument was objectively meritless because it was

inconsistent with the claim language and with Sorkin's arguments on larger sizes of the UNI-

CHAIR products.  (Reply Brief at 6 n.7).  In short, Sorkin arbitrarily drew lines to designate the

first and second portions, without consulting the claim language.

In addition, Sorkin did not respond to UBP's argument that the "first portion" of the leg

on the 1.25-1.75 inch product (if there is a first portion) extends only downwardly, not

outwardly, as required.  (Reply Brief at 7).  Nor did Sorkin respond to the argument that the 2-

2.5 inch chair is identical to the figure on page 8 of the Claim Construction Order and therefore

lacks an "end of the first portion."  (Reply Brief at 7).

---

[2] The Court also observed that there is a strong argument that the patent claims *only* a chair made of nylon.
(Summary Judgment Order at 11 n. 8).  In other words, all claims require a nylon chair.  This is another reason
Sorkin's claims of infringement were baseless.

Eighth, Sorkin did not show that the "second portion" of the UNI-CHAIR products have "tapering" sides or refute UBP's showing that such sides are generally parallel.  (Reply Brief at 7).  Rather, Sorkin merely relied upon a small bevel at the end of the second portion to argue that there is tapering in the second portion of those chairs.  This argument is contrary to the Court's construction of "tapering," and is inconsistent with the Court's comments on that term at the Markman hearing.  (Reply Brief at 8).  And, as noted above, it is also inconsistent with Sorkin's statements in the prosecution about the novelty of "tapering" legs.

Ninth, Sorkin did not dispute the fact that the foot on the Current UNI-CHAIR product is in the shape of a wedge.  Such foot does not have continuous curved sides as would an object in the shape of a cone.  Likewise, Sorkin did not dispute the fact that the foot on the first generation product is not in the general shape of a cone.  Rather, Sorkin argued the rejected claim construction, asserting that such foot has an appearance of a cone, as viewed in photographs.

## II.   UBP SHOULD BE AWARDED ALL ITS ATTORNEYS' FEES AND COSTS INCURRED IN THIS CASE.

UBP seeks an award of all of its attorneys' fees and its costs incurred in this case pursuant to § 285 and Fed. R. Civ. P. 11.  (The judgment in this case awards UBP its taxable costs.)  Accordingly, UBP asks the Court to require Sorkin to pay UBP a total of $300,738.94 for those fees and expenses.

It is in the Court's discretion to determine the reasonable attorneys' fees and costs to award.  *McLain v. Lufkin Inds., Inc.*,  (E.D. Tex. 2009).  To decide the appropriate attorneys' fee, the trial court must calculate a "lodestar" fee by multiplying the number of hours reasonably expended on the case by a reasonable hourly rate.  *Id.* (citing *Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1999)).  A rate is reasonable if it is line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and

reputation.  *Id.*  When the claimed rate and number of hours are established reasonable, the resulting product is presumed to be reasonable.  *Id.*

Modification of the lodestar amount (up or down) is based upon a consideration of the 12 factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Those factors include the time and labor required in the case; the skill required; the attorney's customary fee; the amount involved and the results obtained; the attorneys' experience, reputation, and ability; and awards in similar cases.  *Id.*  Under section 285, a court may award the entire amount of attorneys' fees and costs requested.  *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553 (Fed. Cir. 1989).

The fees and expenses sought in this case were necessarily and reasonably incurred in the defense of this action.  The billing rates for UBP's attorneys are reasonable and below market rates for patent litigation counsel in Texas and nationally.  (Arent 3rd Decl. ¶¶ 18-25).  Further, this case was handled with the appropriate level of diligence and concern for costs and efficiencies.  The total fees and costs incurred on behalf of UBP by its counsel are in line with, and significantly below, the total fees and costs billed on average in patent infringement cases in Texas and nationally for cases of this size.  (Arent 3rd Decl. ¶¶ 16-17).

UBP is submitting to the Court *in camera* and under seal the complete, unredacted, monthly invoices for its attorneys' fees and costs received from its counsel of record in this case (from the law firms of Whyte Hirschboeck Dudek S.C. and Chaffee McCall, L.L.P.). (Arent 3rd Decl. ¶¶ 14-15).  The descriptions of the work performed on such invoices and other details reveal attorney work product and may reveal attorney-client privileged communications as well. *Id.*  Thus, the complete, unredacted bills are not being provided to opposing counsel.  *Id.* Instead, UBP is supplying opposing counsel copies of the bills, with the descriptions of the time entries redacted.  *Id.*  This provides the detail of the dates on which time on this matter was

incurred, the attorney or paralegal who provided that work and the time incurred, and the individual's hourly billing rate.  *Id.*

To supply information regarding the type and nature of the work performed, UBP is providing a summary chart, which details the total attorneys' fees and costs for each bill and provides a summary of the work performed on this case during the time period covered by the bill.  (Arent 3rd Decl. ¶¶ 12-14, Ex. W).

## CONCLUSION

UBP should be awarded its full fees and costs pursuant to § 285, to compensate it for the injury Sorkin caused when he filed this action.  Sorkin filed this action without concern for the merits and apparently in an effort to harm his competitor.  Further, a full award of fees and costs is appropriate under Rule 11, to deter such frivolous filings.  Patent infringement cases impose a substantial financial burden on defendants, and they require a significant amount of the Court's time.

Accordingly, UBP moves the Court to enter the proposed order (attached).  UBP requests the Court to:  (1) find that this case is an "exceptional case" under 35 U.S.C. § 285, and award UBP its attorneys' fees and costs incurred in this action in the amount of $300,738.94, requiring Felix Sorkin to pay UBP that amount; or, in the alternative, to (2) find that Fed. R. Civ. P. 11 has been violated by the filing of this action and continuation of this action, and award UBP its attorneys' fees and costs incurred in this action in the same amount, requiring Felix Sorkin and his lawyers, Egbert Law Offices, PLLC, to pay UBP that amount.

DATED: November 19, 2009.

/s/  Lisa M. Arent
Kenneth R. Nowakowski
Lisa M. Arent
Gary R. Plotecher
Whyte Hirschboeck Dudek S.C.
555 East Wells Street
Suite 1900
Milwaukee, WI 53202
Telephone:  414-273-2100
Fax:  414-223-5000
E-mail:  knowakowski@whdlaw.com
        larent@whdlaw.com
        gplotecher@whdlaw.com


Kevin P. Walters
Chaffe McCall, L.L.P.
815 Walker Street
Houston, Texas 77002
Telephone: 713-546-980
Fax: 713-546-9806
E-mail:  walters@chaffe.com

Attorneys for Defendant Universal Building
Products, Inc.


## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing document upon counsel for the plaintiff, Paul

S. Beik, via e-mail on November 19, 2009.  In addition, a copy of the foregoing document will

be served upon plaintiff's counsel via the ECF system.

/s/ Lisa M. Arent

## <u>CERTIFICATE OF CONFERENCE</u>

I have complied with the meet and confer requirement of Local Rule CV-7(h).  I provided counsel for the plaintiff with a draft of the foregoing motion and brief on the afternoon of July 19, 2009, in advance of filing this motion.  On August 18, 2009, I had a telephone conference with counsel for plaintiff regarding the fact that UBP was moving for its fees and costs in this action.  Given the amount of attorneys' fees and costs demanded by this motion, it is reasonable to assume that Sorkin will not consent to this motion and will oppose it.  (Sorkin's counsel will confirm Sorkin's position to me after he has an opportunity to review this motion and supporting materials.)  The present motion for attorneys' fees and costs is therefore opposed at this time.

Dated:  November 19, 2009.

/s/ Lisa M. Arent