**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **FELIX L. SORKIN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:08-cv-133** |
| | § | |
| **UNIVERSAL BUILDING PRODUCTS, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
FOR AN AWARD OF ATTORNEYS' FEES AND COSTS PURSUANT TO 35 U.S.C. §
285 AND FED. R. CIV. P. 11**

TO THE HONORABLE JUDGE RON CLARK

Plaintiff Felix L. Sorkin ("Sorkin") files his response in opposition to Defendant Universal

Building Products, Inc.'s ("UBP") motion to declare this case exceptional and to award attorneys'

fees under 35 U.S.C. § 285 and Rule 11 as follows:

**INTRODUCTION**

The Court ruled that the accused UBP construction chair products do not contain a "pin

member" as required by all claims of U.S. Patent No. 7,237,367 (the " '367 Patent"). Therefore, the

Court ruled that the accused products do not infringe the '367 Patent. Sorkin argued and provided

factual and legal basis that the accused products, under a proper claim construction, did in fact

contain a pin member. However, the Court disagreed, Sorkin lost, and (pre-appeal) does not seek

to re-open his infringement case against UBP. This Court, however, must still decide in this original

post-judgment, pre-appeal proceeding whether this case– from a substantive standpoint or due to the

manner in which it was handled– is an exceptional case for which over $300,000.00 or any other

amount of fees should be shifted to Sorkin.  Based upon and re-urging Sorkin's prior filed pleadings and this brief, the answer is unequivocally – "NO."

UBP cannot overcome the insurmountable hurdles to its motion.  Sorkin and Sorkin's attorneys took all proper actions and conducted extensive due diligence prior to filing suit.  First, there was an objectively reasonable basis and multiple reasonable arguments for infringement of the '367 Patent that existed before Sorkin filed suit and they continue to exist today.  More than one skilled, experienced, and competent intellectual property attorney advised Sorkin before and during this case that reasonable arguments for infringement existed and continue to exist.  There is a *per se* objective basis for this case even though the Court ruled against Sorkin.  Second, Sorkin, as the patent owner, presumptively had the subjective right based upon the advice of patent attorneys to resolve the infringement dispute against UBP in Court.  Sorkin, upon the advice of counsel and in subjective good faith, filed this suit and alleged that the accused products infringed upon his patent rights.  Sorkin engaged in no litigation misconduct before or during the course of this lawsuit.  This case is not "exceptional" and UBP's motion should be denied.

## UBP'S MOTION LACKS MERIT AND SHOULD BE DENIED

UBP asks this Court to declare this case to be exceptional under 35 U.S.C. § 285 and Rule 11 and thereby to shift fees to Sorkin.  This is not an "exceptional case."  There is no basis to shift fees to Sorkin.

**The law for Section 285**

Proof by clear and convincing evidence of an exceptional case is rare and involves a two-step test.  *Insituform of North America, Inv. v. Midwest Pipeliners, Inc*., 192 WL 477083 *1 (S.D. Ohio 1992); *Serio-US Industries, Inc. v. Plastic Recovery Technologies Corp*., 459 F.3d 1311, 1321-1322

(Fed. Cir. 2006); *Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.*, 393 F.3d 1378, 1381-1384 (Fed. Cir. 2005); *Visto Corp. v. Sproqit Technologies, Inc.*, 2007 WL 160942 **2-4 (N.D. Cal. 2007). It is narrowly applied. *Id*. UBP must first establish either (1) Sorkin's suit was objectively baseless <u>and</u> filed for a subjective bad faith purpose or (2) Sorkin engaged in egregious bad faith litigation conduct that created gross injustice. *Id*. An objectively baseless claim requires that no two objective attorneys could dispute any of the construction of the claims of the '367 Patent and, then based upon the differing constructions of the claims, argue for some form of infringement. *Id*. It requires more than proof of Sorkin's loss in the district court and more than proof that this Court ruled against Sorkin. *Insituform.*, 1992 WL 477083 * 1; *Haynes International, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1994); *Bicon, Inc. v. Straumann Co.*, 356 F.Supp.2d 6, 8 (D. Mass. 2005). It focuses on what a hypothetical attorney could argue and not necessarily was argued. *Visto*, 2007 WL 160942 at * 2; *Dutailier*, 393 F.3d at 1381-1384. Subjective bad faith or egregious bad faith litigation conduct requires dishonest and unambiguously outrageous conduct greater than misstatements or negligence. *Swift Agricultural Chemicals Corp. v. Mississippi Chemical Corp.*, 1986 WL 11610 * 12 (S.D. Miss. 1986).

Next, if UBP can meet the first step (which it cannot), then it must prove, under the totality of the circumstances and a subsidiary five-part test, that some attorneys' fees should be awarded and, if so, what amount should be awarded to commensurate with the sanctionable conduct. *Dutailier*, 393 F.3d at 1381. This Court need not address the five-part test until UBP satisfies the first-step described in the prior paragraph. *Dutailier*, 393 F.3d at 1384. No fees should be shifted to Sorkin.

**The Law for Rule 11**

Pursuant to Rule 11(a), pleadings, written motions, and other papers must be signed by an attorney of record, or by a party proceeding *pro se.* Rule 11(b)(3) provides an attorney or unrepresented party presenting such documents "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b)(3) (emphasis added).

A Court may impose sanctions against a party and his attorney for a violation of Rule 11. Rule 11 authorizes the imposition of sanctions on any attorney and represented party when the attorney signs a pleading, motion or other paper (1) without having first conducted a reasonable inquiry into whether it is well grounded in fact; (2) without having first conducted a reasonable inquiry into whether it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; or (3) which is interposed for purposes of delay, harassment, or increasing costs of litigation. *Thomas v. Capital Sec. Services, Inc*., 836 F.2d 866, 873-74 (5th Cir. 1988) (en banc).  A District Court's determination that a violation of Rule 11 has occurred is reviewed for an abuse of discretion.  *Id*. at 873.

This is not an exceptional case and there is no basis for a violation of Rule 11.

## ARGUMENT

I.      **This Case is Not Exceptional and There was No Violation of Rule 11 Because There was an Objectively Reasonable Basis for Sorkin's Patent Infringement Lawsuit and Sorkin's Counsel Conducted The Required Pre-Filing Investigation**

UBP's motion fails because Sorkin had an objectively reasonable basis for alleging patent infringement against UBP's accused products. The question whose answer affirmatively defeats UBP's motion is whether a hypothetical attorney could argue some case of infringement based upon a proper construction of the claims of the '367 Patent. Prior to filing this suit, Sorkin obtained an infringement opinion that concluded UBP's accused products infringe the '367 Patent, which affirmatively answers that question. The following discussion further outlines the objective and reasonable basis for infringement and the steps taken by Sorkin and Counsel prior to filing Sorkin's patent infringement lawsuit against UBP.

### A.      Sorkin Theory of Literal Infringement Was Objectively Reasonable

Determining whether UBP's accused products infringe any claims of the '367 Patent requires comparison of the products with the patent claims. *Amstar Corp. v. Envirotech Corp*., 730 F.2d 1476 (Fed. Cir. 1984). Infringement does not occur unless the accused products fall within the scope of one of the patent's claims. *Smithkline Diagnostics, Inc. v. Helena Labs. Corp*., 859 F.2d 878 (Fed. Cir. 1988). The accused products would only infringe a claim if it contains every limitation of the claim, either literally (literal infringement) or by substantial equivalent (infringement by the doctrine of equivalents). *Carroll Touch, Inc. v. Electro Mechanical Sys*., 3 F.3d 404 (Fed. Cir. 1993); *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991); *Becton Dickinson and Co. v. C.R. Bard, Inc*., 922 F.2d 792 (Fed. Cir. 1990). Based upon many possible and proper constructions of the claims of the '367 Patent, Sorkin had and, pre-appeal, still has multiple valid

theories of infringement both literally and, although not asserted, under the doctrine of equivalents.

Claim interpretation starts with the claims. When, as in this case, the parties concur that the words in the claims have no special industry meaning, this Court should interpret the claims under the "ordinary and customary" meaning of the words. The focus of construing claims "must begin and remain centered on the language of the claims themselves." *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1370 (Fed. Cir. 2005) (quotations omitted). "Unless compelled otherwise, a court will give a claim term the full range of its ordinary meaning as understood by persons skilled in the relevant art." *Gemstar-TV Guide Int'l, Inc. v. ITC*, 383 F.3d 1352, 1364 (Fed. Cir. 2004) (quotations omitted). If an ordinary meaning exists, the words of a claim are normally given their ordinary and accustomed meaning, unless it appears from the specification and prosecution history that the inventor used them differently. *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994).

The patent specification is "the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, , 415 F.3d 1303, 1315 (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The description of terms in the specification "may act as a sort of dictionary, which explains the invention and defines terms used in the claims." *Markman v.* Westview *Instruments, Inc.*, 517 U.S. 370 (1996). Stated differently, "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess." *Phillips*, 415 F.3d at 1316. In these cases, the patentee's lexicography governs. *Id.*

The prosecution history contains the complete record of the proceedings before the PTO, including any express representations made by the Applicant regarding the scope of the claims. The prosecution history is "less useful" than the specification, but may be used in specific instances to help interpret the meaning of language used in the patent claims. *Phillips*, 415 F.3d at 1316.

In most situations, an analysis of the intrinsic evidence alone (the claims, specification and prosecution history) will resolve any ambiguity in a disputed claim term.  In such circumstances, it is improper to rely on extrinsic evidence.  *Vitronics*, 90 F.3d at 1583 (citations omitted); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1340 (Fed. Cir. 2001).  Extrinsic evidence "consists of all evidence external to the patent and the prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  *Phillips*, 415 F.3d at 1317 (quoting *Markman*, 52 F.3d at 980). In those circumstances where the intrinsic evidence does not resolve an ambiguity, it is proper to rely on extrinsic evidence.  *Markman*, 52 F.3d at 979; *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998).

In the end, the Court ruled that none of the accused products fulfill the limitation, found in each asserted claim of the '367 Patent, that the construction chair include a "pin member."  The Court did not provide analysis or a ruling as to any of the other required limitations of the independent claims of the '367 Patent.

### B.      The Doctrine of Claim Differentiation Bolsters Sorkin's Claim for Infringement

The Court determined that the accused products lacked a "pin member" as construed by the Court.  After claim construction briefing and oral hearing, the Court defined the term "pin member" as "a portion of the leg that comes to one or more points sharp enough to help prevent the chair from moving when it is under load on the surface on which the chair is placed."  Doc. # 33, at p. 19. Sorkin had and still maintains that the term pin member does not require a point, and certainly not a "sharp" point.  The doctrine of claim differentiation supports Sorkin's position.  "Under the doctrine of claim differentiation, dependent claims are presumed to be of narrower scope than the independent claims from which they depend."  *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1242 (Fed.

Cir. 2003) (noting that the broader independent claims must be broad enough to encompass the elements cited in the dependent claims) (citations omitted).

During claim construction, Sorkin argued that the Court should construe the term "pin member" to mean "a member having a bottom positioned below a top, the bottom having a profile smaller than a profile of the flat bottom surface of the leg." Sorkin's proposed definition follows the doctrine of claim differentiation, was supported by intrinsic evidence, and was consistent with the stated purpose of the pin member, and does not impermissibly limit the disputed term to the preferred embodiment.

Sorkin's proposed definition of "pin member" did not include the limitation of a "point" because this added and further limitation is found in other dependent claims (claim 4). Specifically, dependant Claim 4, which depends on the *broader* independent Claim 1, requires the pin member to contain the added limitation of a "point." *See AK Steel*, 344 F.3d. At 1242 (holding that dependent claims are presumed to be of narrower scope than independent claims). Therefore, properly applying the claim differentiation doctrine to the facts here, "pin member," as used in Claim 1 must be broader than the element that expressly requires a point in the dependent Claim 4. In short, the term "pin member" cannot be construed to include a point because that limitation is found in dependent Claim 4. Sorkin's proposed definition follows the established claim construction principle of claim differentiation, accounts for the purpose of the pin member, and affords the proper construction for the "pin member" term.

Sorkin also highlighted that further intrinsic evidence supported his proposed construction. For example, the claims of the '367 Patent describe the pin member:  Independent Claim 1 discloses:

> 1.  A chair comprising: a receiving area, a plurality of legs extending downwardly from said receiving area . . . ; and a pin member extending vertically downwardly

from said flat bottom surface.

*'367 Pat.*, 7:24–46 and 8:8–34.  Independent Claim 1 discloses a chair that has a pin member

extending downwardly from the flat bottom surface.  Other claims disclose:

> 3.  The chair of Claim 1, said pin member being a single pin member of inverted conical
> shape.  4.  The chair of Claim 1, said pin member **having a point** formed at an end thereof
> opposite said flat bottom surface.

*Id.* at 7:49–52 (emphasis added). Claims 3 and 4 are each dependent upon independent Claim 1.

Dependent Claim 3 requires the pin member to have "an inverted conical shape."  Dependent Claim

4 adds and requires the limitation of a "point" to the pin member.  Claim 9 discloses a pin member

without the limitations of having an inverted conical shape or a point.  *Id.* at 8:33–34.  Claim 11

discloses a pin member with the limitations of having an inverted conical shape and a point.  *Id.* at

8:53:57.

> The specification also discusses the pin member:

> Experiments with the product associated with these patents have indicated that fewer
> pin members than those indicated in these patents could achieve the same purpose
> of proper placement and holding capability as the three pin version.

*Id.* at 4:10–14.  Prior art chairs use multiple pin members to properly place prior art chairs so as to

support reinforcing bars, but experimentation found that a single pin member in combination with

the unique design of the chair of the '367 Patent would perform the same function of proper

placement and holding capability.  The specification goes on to describe the purpose of the pin

member:

> Pin member 28 extends vertically downwardly from the flat bottom surface 30.  The
> pin member 28 is only a single pin member having an inverted conical shape.  In
> particular, a point 50 is formed at an end of the pin member 28 opposite the flat
> bottom surface 30.  As a result, each of the legs 14, 16, 18, and 20 will have only a
> minimal profile on the exposed surface of the wall upon which the chair 10 is placed.

*Id.* at 6:53–60.  Thus, the pin member is important because it minimizes the profile of the chair on the exposed surface of the wall.

Sorkin's further argued that his proposed definition of "pin member" appropriately accounts for this purpose by requiring a smaller profile on the bottom of the pin member than the profile on the top of the pin member.  Notably, the inverted conical shape of the pin member helps the pin member minimize the profile of the pin member on the exposed wall.  The inverted conical-shape limitation is disclosed in dependent Claim 3 of the '367 Patent.  *Id.* at 7:49–50.  Likewise, the point of the pin member helps the pin member minimize the profile of the pin member on the exposed wall.  Dependent Claim 4 requires the chair of Claim 1 to include a point:  "said pin member having a point formed at an end thereof opposite said flat bottom surface."  *Id*. at 7:51–52.

In addition, Sorkin urged that the express claim language of the '367 Patent discloses the term "pin member" without the limitation of "inverted conical shape" or a "point" in both independent Claims 1 and 9, while independent Claim 11 includes these limitations.  Therefore, the proper construction for "pin member" *cannot* include the limitations "point" or "inverted conical surface."  Sorkin's proposed construction is legally sound and bolstered by the plain meaning of the claims, the specification and the file history.  Sorkin's infringement opinion obtained prior to filing suit concluded that the claims themselves and other intrinsic evidence supported his proposed definition for pin member.  Under Sorkin's proper claim construction, there was an objectively reasonable basis for infringement.  There were also other valid theories of infringement under other reasonable claim constructions.

**C.     Objectively Reasonable Basis for Infringement Under Both Sorkin's Proposed Construction of "Pin Member" and the Court's Adopted Construction**

Under multiple and reasonable claim constructions of the term "pin member," there was an objectively reasonable basis for literal infringement.  *See* Exhibit B (Egbert Dec.). In this case, Sorkin set forth his infringement contentions and provided affidavit testimony as to where, under the Court's claim construction,  each of the required claims were located in the accused products. *See* Dkt. Nos. 41 & 42.  There was also an objectively reasonable basis for infringement under Sorkin's proposed construction as well as other reasonable constructions of the term "pin member."  *See* Exhibit B (Egbert Dec.).

Sorkin had sufficient factual and legal basis to assert that the accused products include a pin member.  Prior to filing suit, Sorkin obtained an opinion of counsel that concluded that the UBP products included a "pin member", under multiple reasonable constructions of the term when applied to the accused products.  *See* Exhibit A (Sorkin Dec.).  Thus, prior to filing this case, a hypothetical attorney (in fact, more than one) concluded that there was a reasonable case for infringement upon a proper construction of the claims of the '367 Patent.  *See* Exhibit B (Egbert Dec.).  Sorkin's counsel conducted an extensive pre-filing investigation that included inspection of the accused products at a trade show in Las Vegas, Nevada, inspecting physical samples of the products and comparing those products to the claims of the '367 Patent, reviewing the file history of the '367 Patent, and rendering an infringement opinion that concluded, under multiple theories, that the accused products infringed the '367 Patent.  *See* Exhibit B (Egbert Dec.).  This basis alone defeats UBP's motion because Sorkin's proposed construction and theory of infringement was objectively reasonable.

Under the Court's construction of "pin member," there was also an objectively reasonable basis for literal infringement. The Court defined the term "pin member" as "a portion of the leg that comes to one or more points sharp enough to help prevent the chair from moving when it is under load on the surface on which the chair is placed." Dkt. No. 33, at p. 19. Under this construction, Sorkin provided affidavit testimony and claim charts that specifically identified where the pin member was located on the accused UBP products. Dkt. No. 41 & 42; Exhibit A (Sorkin Dec.). Attached to Sorkin's affidavit and labeled Exhibit B was a claim chart showing the early version of UBP's construction chair product. *Id*. Sorkin identified exactly where the pin member was located. *Id*. The claim chart shows that the UBP product includes a triangular member that is attached to and extends vertically downwardly from the flat bottom surface of the second portion of the chair's leg. *Id*. It also shows that the pin member comes to a point that is sharp enough to help prevent the chair from moving when it is under load on the surface that the chair is placed. *Id*. In the alternative, the photograph also shows that the pin member comes to several points. As shown in the photographs of the claim chart, this UBP product includes a pin member as defined by the Court. Although the Court ruled that the pin member element was lacking, there was still an objectively reasonable basis to assert that the UBP product included the required pin member element.

Likewise, Sorkin provided claim charts for each of the current UBP construction chair product and identifies where the pin member is located on each of those products. Dkt. 41 & 42; Exhibit A (Sorkin Dec.). This product also includes a triangular member that extends vertically downwardly from the flat bottom surface of the second portion of the chair's leg. *Id*. The member is generally the width of the leg at the top portion of the member and extends downwardly at an angle from all sides toward the bottom portion of the member. *Id*. The member further comes to

one or more points sharp enough to help prevent the chair from moving when it is under load on the surface on which the chair is placed. *Id.* More specifically, the member continues in this triangular angle to a blade that forms one or more points that are sharp enough to "dig in" to the surface upon which the chair is placed. *Id.* These UBP products also include a pin member under the Court's claim construction. Again, the Court ruled that the pin member element was lacking, but there was still an objectively reasonable basis to assert that the UBP accused products include a pin member. To be sure, more than one hypothetical attorney concluded that the products included the pin member element prior to filing this suit. *See* Exhibit B (Egbert Dec.).

Prior to filing suit, Sorkin was provided with information that UBP construction chair products were made from a nylon material. *See* Exhibit A (Sorkin Dec.). At that time, upon information and belief, it appeared that the accused products inspected were composed of a nylon material. *Id.* Sorkin was informed that those products were available in multiple materials and one of the available materials was nylon. *Id.* Sorkin was also informed that UBP would manufacture large orders upon customer specifications and one specification was that the products be constructed of a nylon material. *Id.* When the physical samples were inspected at the World of Concrete Exhibition in Las Vegas, Nevada, they appeared to be comprised of a nylon material. *Id.* The Court ruled on UBP's motion for summary judgment prior to the completion of discovery. Sorkin had not completed discovery from UBP. Sorkin had not yet deposed the corporate representative of UBP. In that deposition, Sorkin would have inquired as to the materials that formed the UBP products and whether the allegation and belief that the UBP products were manufactured of nylon was substantiated by the evidence. Sorkin had a good faith basis for asserting infringement of dependent claim 8 and took the required steps to investigate that basis. Sorkin asserted infringement of claim

8 on a subjective good faith belief that UBP made, used or offered for sale the accused products of

a nylon material. There was also a valid basis for infringement under the doctrine of equivalents.

### D. While Not Asserted, There was an Objectively Reasonable Basis for Infringement Under the Doctrine of Equivalents

Even if the accused UBP products do not literally infringe, there was still an objectively

reasonable basis for infringement under the doctrine of equivalents. The doctrine of equivalents has

to do with equity and fairness. The essential question under the doctrine of equivalents is: "Does

the UBP accused products contain features identical or equivalent to each limitation." *Warner-*

*Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 40 (1997). All limitations of the

claim must be present literally or as equivalents in the UBP accused products. *SciMed Life Systems,*

*Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1347 (Fed. Cir. 2001). In other

words, the doctrine of equivalents will not effectively eliminate an element in its entirety. *Warner-*

*Jenkinson*, 520 U.S. at 29. Further, there are several additional limitations on the doctrine of

equivalents. First, the patent owner cannot recapture under the doctrine of equivalents anything that

he surrendered by argument or amendment during the application process. *Festo Corp. v. Shoketsu*

*Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 729-740 (U.S. 2002). Second, the patent owner cannot

capture under the doctrine of equivalents anything that was in the public domain. Third, the patent

owner cannot capture practices that have more than an insubstantial difference from the claims.

*Warner Jenkinson*, 520 U.S. 17. Finally, the patent owner cannot capture a process that is so far

changed in principle that it performs the function of the claimed process in a substantially different

way. *SmithKline Diagonstics, Inc.* v. *Helena Labs.*, 859 F.2d 878 (Fed. Cir. 1988). There was an

objectively reasonable basis for Sorkin to assert infringement under the doctrine of equivalents.

There was an objectively reasonable basis for Sorkin to argue that the accused UBP products include a pin member that is a substantial equivalent. Little explanation is needed. Sorkin could argue that the structure of the UBP pin member performs substantially the same function in substantially the same way to achieve substantially the same result. Experts in the field of tilt-wall concrete construction, such as Sorkin, would consider the UBP pin member to be a substantial equivalent. UBP's pin member accomplishes the same purpose in the same way to achieve the same result. Both versions extend vertically and downwardly from the flat bottom surface of the second portion of the chair's leg to a point sharp enough to secure the chair and to keep the chair in place when forces from the load are applied to the chair. Nothing in the prosecution history precludes Sorkin from arguing infringement under the doctrine of equivalents. Sorkin's pre-filing infringement opinion concluded that there was a reasonable basis for infringement under the doctrine of equivalents. Sorkin had sufficient facts to make reasonable argument for infringement under the doctrine of equivalents. This objectively reasonable theory of infringement is another basis to deny UBP's motion.

## II.     Subjective Good Faith Underpins this Case

In the unlikely event that this Court finds no objective basis for the suit, UBP's motion fails because Sorkin had a subjective good faith basis for the suit. Prior to filing suit, Sorkin obtained UBP's construction chair products, sought and received an infringement opinion that concluded that the products that made the basis of the suit infringed the '367 Patent. *See* Exhibit A (Sorkin Dec.). Specifically, the opinion of counsel concluded that, under a reasonable and proper construction of the term "pin member", the accused products included a pin member. *See* Exhibit B (Egbert Dec.).

Sorkin provided a legal basis for his proposed construction of the term pin member and provided factual support from the claims of the patent, the specification and other extrinsic evidence. *See* Exhibit A (Sorkin Dec.). Sorkin alleged his subjective good faith theory of infringement against the accused products and maintained that theory throughout the case. *Id*. Sorkin did not take unreasonable positions with regard to claim construction or infringement contentions. *Id*. Sorkin provided the basis for his theory of infringement in the form of claim charts and provided affidavit testimony that detailed that theory. *Id*. Sorkin pointed to the accused product and indicated where each required element of the asserted claims were located. *Id*. Sorkin did not take unreasonable positions in this case. *Id*. Sorkin did not harass UBP or engage in unnecessary discovery. *See* Exhibit A (Sorkin Dec.). Sorkin did not file any frivolous motions. *Id*. Sorkin set forth his basis for infringement and provided factual and legal basis for infringement. *Id*. Sorkin had a subjective good faith basis for the suit.

## III.    Sorkin Engaged in No Litigation Misconduct

Starting with due diligence prior to filing this lawsuit and throughout the litigation, Sorkin did not engage in any litigation misconduct. Over the course of the litigation Sorkin complied with all Court orders. *See* Exhibit A (Sorkin Dec.). Sorkin compiled with the Court's Local and Patent Rules for the Eastern District of Texas. *Id*. Sorkin complied with all requirements of this Court and all reasonable and meaningful requests of opposing counsel. *Id*. Sorkin was never sanctioned by this Court. *Id*. Sorkin acted in good faith and approved and agreed to extensions of time to opposing counsel upon request. *Id*.

At all times, Sorkin took good faith positions with respect to his infringement contentions and provided legal and factual basis for those good faith and reasonable infringement theories and

positions.    *See* Exhibit A (Sorkin Dec.).    In support of those contentions and theories of infringement, Sorkin provided claim charts that detailed how the accused products infringed and identified where each of the required elements were located in the accused products.    *Id*. Sorkin further sought to streamline this case by relying upon and asserting his case for literal infringement despite other reasonable theories of infringement, such as infringement under the doctrine of equivalents.    *See* Exhibit A (Sorkin Dec.); *See* Exhibit B (Egbert Dec.).    There were multiple, valid theories of infringement.    *See* Exhibit B (Egbert Dec.).

Sorkin filed his suit based upon a good faith belief, and opinion of counsel, that the accused products infringed upon the asserted claims of the '367 Patent.    *See* Exhibit A (Sorkin Dec.); *See* Exhibit B (Egbert Dec.).    Sorkin did not instruct counsel to engage in any overly burdensome or unnecessary discovery.    *See* Exhibit A (Sorkin Dec.).    In fact, Sorkin instructed counsel to manage the litigation in a cost effective and efficient manner.    *Id*.    Sorkin's counsel complied with this instruction and did not engage in any unnecessary discovery, including subpoenas to customers or unnecessary depositions.    *Id*.    Sorkin's case was managed in a highly efficient manner with an eye toward efficient and economical management of the litigation.    *Id*.    From the outset, Sorkin filed this case and pursued the same to defend his patent rights and to eliminate the infringement of UBP and not for any other improper purpose.    *Id*.

In support of Sorkin's Response to UBP's motion for summary judgment he provided an affidavit.    Dkt. 42 & 41.    In the affidavit, Sorkin stated the background of the patent-in-suit and identified the accused products of UBP.    *Id*.    Sorkin further provided a detailed analysis of his good faith case for infringement against the UBP products.    *Id*.    Sorkin identified in each of the accused products where each of the required elements, as construed by this Court, were located.    *Id*.    Sorkin

further attached his infringement contentions and claim charts to the affidavit. *Id*. Sorkin properly set forth his case for infringement and submitted factual and legal support for his case for infringement. The infringement contentions were bolstered by an opinion of seasoned patent counsel that concluded, prior to filing under multiple reasonable claim constructions of the disputed claim terms, that the accused products infringed upon Sorkin's '367 Patent. See Exhibit B (Egbert Dec.).

Sorkin did not take any unreasonable or frivolous positions in this litigation. At all times, his case was pursued in good faith with the goal of eliminating UBP's infringement of his patent rights. *See* Exhibit A (Sorkin Dec.). At no time did Sorkin interfere with customers or potential customers. *Id*. When additional sizes of UBP's accused products were disclosed, Sorkin instructed counsel to conduct infringement analysis of those products. *Id*. Sorkin did not assert infringement against those sizes that counsel concluded lacked required elements of the claims of the '367 Patent. Sorkin, through counsel, worked with opposing counsel to avoid piecemeal litigation over multiple product lines and numerous sizes of those products by agreeing to include all of those products in this litigation. *See* Exhibit A (Sorkin Dec.); *See* Exhibit B (Egbert Dec.). At all times Sorkin pursued his infringement case against UBP in good faith and did not engage in even a scintilla of misconduct. *See* Exhibit A (Sorkin Dec.). In short, there is no evidence to support the allegation Sorkin engaged in any litigation misconduct whatsoever.

## IV.    The Amount of Requested Fees is Unreasonable and Unnecessary

In the unlikely event that the Court should find that Sorkin filed an objectively and subjectively baseless suit and the totality of the circumstances under the five-part test militate by clear and convincing evidence that some fees should be awarded, the Court still has discretion not

to award any fees.  The Court should exercise that discretion and not award UBP the requested fees. The amount of fees allegedly sustained by UBP in this action are unreasonable, excessive and were unnecessary.  *See* Exhibit B (Egbert Dec.).  By UBP's admission, this case was handled in an efficient and economical manner.  *See* Dkt 48, p. 14 ¶ 1.  The amount of fees allegedly sustained by UBP are simply unreasonable considering the amount in controversy, complexity of the technology involved in this case and the amount of discovery that was conducted.

This Court may only award an amount of fees commensurate with the actual conduct that informs any finding of exceptional conduct under § 285.  Sorkin respectfully submits that there is no conduct that supports a finding of an exceptional case or a violation of Rule 11.  There is no proper basis to shift any attorneys fees to Sorkin, and UBP's motion should be denied in its entirety.

## V.      CONCLUSION

For the foregoing reasons, Sorkin respectfully requests this Court to overrule the Motion and that the Court grant Sorkin all available whole, partial, general, specific, legal, equitable, statutory of other relief.

Respectfully submitted,


    /s/Paul S. Beik
John S. Egbert
Texas Bar No. 06479550
Paul S. Beik
Texas Bar No. 24054444
Egbert Law Offices, PLLC
412 Main Street, 7th Floor
Houston, Texas  77002
Telephone: (713) 224-8080
Facsimile:  (713) 223-4873
Email: mail@egbertlawoffices.com
Email: pbeik@egbertlawoffices.com

Attorneys for Plaintiff
Felix L. Sorkin

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served via the Court's electronic filing systems on the 14th day of December, 2009 to the following counsel of record:

Kenneth R. Nowakowski
Lisa Arent
Gary R. Plotecher
Whyte Hirschboeck Dudek S.C.
555 East Wells Street, Suite 1900
Milwaukee, WI 53202

Attorneys for Defendant
Universal Building Products, Inc.

            /s/Paul S. Beik             
Paul S. Beik