**\*\* NOT FOR PRINTED PUBLICATION \*\***

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| FELIX L. SORKIN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 1:08-CV-133 |
| v. | § | |
| | § | |
| UNIVERSAL BUILDING PRODUCTS INC., | § | JUDGE RON CLARK |
| | § | |
| *Defendant*. | § | |

## ORDER GRANTING IN PART DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND COSTS

Plaintiff Felix L. Sorkin filed suit against Defendant Universal Building Products, Inc.

("UBP"), claiming that thirteen of UBP's UNI-CHAIR construction chairs literally infringed one

or more claims of United States Patent No. 7,237,367 ("the '367 patent").  The court granted

UBP's Motion for Summary Judgment of Non-Infringement on the grounds that none of the

accused products have a "pin member" as required by each asserted claim, and entered Final

Judgment in favor of UBP on November 5, 2009.  *See* Docs. # 46, 47.  UBP now moves for

attorney's fees and costs in the amount of $300,738.94 pursuant to 35 U.S.C. § 285 and Fed. R.

Civ. P. 11 and 54.

The court finds that this case is exceptional under 35 U.S.C. § 285 because Mr. Sorkin's

literal infringement claims became, at a minimum, objectively baseless and pursued in subjective

bad faith after the court's July 9, 2009 claim construction order.  An award of reasonable

attorney's fees from that point on is warranted under the facts of this case.  Therefore, the motion

1

is granted in part.  UBP is awarded: (1) $63,533,50 in reasonable attorney's fees under 35 U.S.C.

§ 285, and (2) $4,103.79 in total costs.

## I.  Background

The relevant background of the patent-in-suit and accused products can be found in the

court's November 2, 2009 Order Granting Defendant's Motion for Summary Judgment [Doc. #

46].  For purposes of this motion, the following additional facts are relevant.

On August 11, 2008, Mr. Sorkin provided Defendants with his P.R. 3-1 and 3-2

disclosures, pursuant to the Scheduling Order.  Although twenty-eight different UBP products

were accused, only two claim charts were provided at that time.  Neither chart identified which

size was being accused, nor did they specifically identify where in the accused products each

element of the asserted claim was found.

UBP provided manufacturing drawings for the first and second generation products, as

well as the currently manufactured products, to Mr. Sorkin on September 18, 2008.  Laboratory

tests purporting to demonstrate that the accused products were composed of polypropylene were

also produced at that time, as were samples of the currently manufactured products in thirteen

different sizes.  After subsequent discussion between counsel, Mr. Sorkin provided additional

claim charts for twelve of the thirteen currently manufactured products on November 10 and 11,

2008.  No claim charts were ever provided for the accused first or second generation construction

chairs, beyond the two claim charts produced on August 11.  Mr. Sorkin accused all products of

literal infringement only; the doctrine of equivalents was never asserted.

On December 23, 2008, UBP served a motion pursuant to Fed. R. Civ. P. 11(c)(2) on Mr.

Sorkin, arguing that the infringement allegations lacked a factual and legal basis.  Echoing UBP's

later arguments on claim construction and summary judgment, it suggested that the accused

products lacked legs entirely, had only one portion legs which did not have a tapering first or

second portion, were not made of nylon, did not have an inverted conical shaped foot, and did

not contain a pin member.  Mr. Sorkin failed to respond to the motion, and continued to pursue

his case.

The court issued its claim construction order on July 9, 2009, construing, among other

terms, "pin member" to mean "a portion of the leg that comes to one or more points sharp

enough to help prevent the chair from moving when it is under load on the surface on which the

chair is placed."  Doc. # 33, at 19.  In its motion for summary judgment filed on August 3, 2009,

UBP argued in part that none of the accused products had a "pin member" as that term was

defined by the court, and could therefore not literally infringe any of the asserted claims.

## II.  Applicable Law

UBP moves for attorney's fees both under 35 U.S.C. § 285 and Fed. R. Civ. P. 11.  The

awarding of attorney's fees under Section 285 is an issue that is unique to patent law, and

therefore governed by Federal Circuit law.  *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340,

1343 (Fed. Cir. 2001). However, Fifth Circuit law will be applied to UBP's Rule 11 motion.

*Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007).

The district court can, in exceptional cases, award attorney's fees to the prevailing party

in a patent infringement suit under 35 U.S.C. § 285.  "The prevailing party must prove the case is

exceptional by clear and convincing evidence."  *Forest Group, Inc. v. Bon Tool Co.*, – F.3d –,

2009 WL 5064353 at *7 (Fed. Cir. Dec. 28, 2009).  The determination of whether attorney's fees

should be awarded under Section 285 is a two step process whereby the district court first

determines whether a case is exceptional, then decides whether attorney's fees are appropriate. *Wedgetail Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302,1304 (Fed. Cir. 2009).

Only a "limited universe of circumstances" will justify a finding that a patent case is exceptional: "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Id.*; *see also Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1321-22 (Fed. Cir. 2006) ("Exceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions. . . Absent misconduct in the litigation or in securing the patent, a trial court may only sanction the patentee if both the litigation is brought in subjective bad faith and the litigation is objectively baseless."). A Rule 11 violation can also form the basis for an award of sanctions. *Digeo*, 505 F.3d at 1368.

Fed. R. Civ. P. 11(c)(4) allows for monetary sanctions against an attorney, law firm, or party that has violated Rule 11(b). Rule 11(b) provides that, by submitting to the court a pleading, motion, or other paper, a party certifies that it is not presented to the court for improper purposes—like harassment, needless delay, or to increase the costs of litigation,—that the legal contentions and claims are supported in law and not frivolous, and that all of the paper's allegations are likely to have evidentiary support. While courts must impose the least severe sanction on attorneys who violate Rule 11, the Fifth Circuit has "affirmed a district court's determination that the least severe sanction for a lawsuit that is wholly frivolous is the imposition

of reasonable attorney's fees and expenses." *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001).

The burden of proof differs for a Rule 11 and a Section 285 motion.  While the burden remains with the moving party to show, by clear and convincing evidence, that the case is exceptional under Section 285, the burden under Rule 11 is a shifting one. *See, e.g.*, *Digeo*, 505 F.3d at 1368 ("Once a litigant moves based upon non-frivolous allegations for a Rule 11 sanction, the burden of proof shifts to the non-movant to show it made a reasonable pre-suit inquiry into its claim.").

### III.  Analysis

UBP argues that it is entitled to an award of attorney's fees under either Section 285 or Rule 11, on the grounds that Mr. Sorkin's claims were objectively baseless, because he knew or should have known that there was no plausible basis for asserting literal infringement against the accused products, and pursued in subjective bad faith.

A.      Sanctions Under Section 285

1.      *Whether the case is exceptional*

Throughout the course of this litigation, Mr. Sorkin pursued claims that were either: (1) untenable from a very early date, or (2) became so after the court's July 9, 2009 claim construction order.

First, claim 8 of the '367 patent requires that the construction chair's receiving area and legs be made of a "nylon material."  '367 patent, 8:6-7.  It is difficult to imagine how Mr. Sorkin could have, in good faith, alleged that UBP's polypropylene construction chairs literally infringed claim 8 after UBP provided Mr. Sorkin with laboratory tests on September 18, 2008.  Mr. Sorkin

has never asserted the doctrine of equivalents, and even counsel with little to no chemistry

expertise should have been able to perform a reasonable investigation, both pre-suit[1] and after

UBP's documents were received.  If Mr. Sorkin's counsel had done so, they would have found

that asserting that construction chairs made of polypropylene literally infringed claims requiring

the chairs to be made of nylon was frivolous and a waste of the parties'—and this court's—time

and resources.[2]

Second, even assuming Mr. Sorkin's position on the claim term "pin member" was

reasonable prior to the July 9, 2009 claim construction order—an assumption called into doubt

by Mr. Sorkin's own previous patents, which consistently define a "pin member" with a pointed

end sharp enough to "bite" into a surface[3]—the court rejected Mr. Sorkin's argument that a pin

member need not have a sharp point in that Order.  *See* Doc. # 33, 16-19.  Regardless of Mr.

Sorkin's belief in this correctness of this construction, the accused products could not infringe

the asserted claims unless this claim limitation, as construed by the court, was present.  None of

---

[1]Although it does not "mandate" a finding of exceptionalness or require that attorney fees be awarded, the "[i]nadequacy of pre-filing preparation may be relevant to the 'exceptional' case question." *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1035 (Fed. Cir. 2002).

[2]Without mentioning these laboratory results, Mr. Sorkin suggests that he was somehow still uncertain that the chairs were not made of nylon at the time the court granted summary judgment for UBP, because he "had not completed discovery from UBP . . . [and] had not yet deposed the corporate representative of UBP."  Pl. Resp. Mot. Attorney Fees, at 13 [Doc. # 57]. This assertion is ridiculous.  The court assumes, because Mr. Sorkin has not stated otherwise, that Mr. Sorkin was in possession of UBP's laboratory results, as well as physical samples of the accused products, in September 2008.  Any failure to utilize the fourteen months between that date and the case's dismissal on November 5, 2009 to obtain the requisite discovery or obtain independent laboratory testing is entirely Mr. Sorkin's fault.  The failure to explore such an obvious avenue of investigation is not the same thing as acting in good faith.

[3]*See* United States Patent Nos. 5,791,095, 5:38-40; and 5,555,693, 3:6-10.

the accused products have a leg which ends in a sharp point; rather, the accused first generation products have a leg with a flat rectangular bottom, and the currently manufactured products have a leg which ends in a wedge-shaped foot that comes to a narrow flat ridge.

Nevertheless, Mr. Sorkin continued to pursue his claims after the claim construction order. The court ultimately granted UBP's motion for summary judgment on precisely these grounds nearly four months after the Order had issued, concluding that the accused chairs could not literally infringe any of the asserted claims because none had a "pin member" as that term had been construed. *See* Doc. # 46. Again, it is difficult to understand how Mr. Sorkin could have opposed the motion for summary judgment in good faith on this issue, as the claim construction had made it clear that none of the accused products contained this claim limitation.[4]

The court finds this to be an exceptional case by clear and convincing evidence, because the litigation was objectively baseless and pursued in subjective bad faith, at a minimum, after the July 9 claim construction order.[5] Mr. Sorkin repeatedly took positions that were contrary to

---

[4]UBP also cites the court's construction on a number of other terms as further proof that Mr. Sorkin knew or should have known, at a minimum, after the court's claim construction order that his literal infringement claims were untenable. The court granted summary judgment on the "pin member" limitation, and therefore did not need to consider UBP's arguments regarding "tapering", "converging", and "second portion." While the court will not revisit whether summary judgment would also have been appropriate based on the constructions of these terms, Mr. Sorkin should have re-evaluated his claims in light of these constructions as well.

[5]The court rejects UBP's argument that Mr. Sorkin engaged in litigation misconduct regarding: (a) incomplete claim charts and disclosures, (b) failure to follow the Local Rules for summary judgment briefing, and (c) alleged false statements, misrepresentation, and re-urging of claim constructions already rejected in his summary judgment response and corresponding affidavit. While counsel is always required to comply fully with the appropriate federal and local rules in discovery and motion practice, in the absence of strong evidence to the contrary, the court will give Mr. Sorkin the benefit of the doubt and consider these omissions inadvertent, rather than deliberate gamesmanship.

his own prior art and not even remotely supported by the claim language and the court's claim construction order. Under these circumstances, it is appropriate to find this case exceptional.

    2.    *Whether attorney's fees are appropriate and, if so, in what amount*

    a.    **Whether attorney's fees are appropriate**

The court determines that reasonable attorney's fees are appropriate in this case, to be awarded for the work performed by UBP's counsel after the July 9, 2009 claim construction order issued. Until that date, it was at least remotely possible that the court might have agreed with Mr. Sorkin's position on "pin member," which could have rendered some of his claims tenable. However, as discussed above, Mr. Sorkin could have had no expectation, based on the court's construction of "pin member," that he could prevail on his literal infringement claims after that date.

    b.    **The amount of reasonable attorney's fees to be awarded**

As a general rule, the appropriate way to assess the reasonableness of attorney's fees in the Fifth Circuit is by first calculating the lodestar amount[6], then considering the twelve *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) factors to determine if the lodestar figure should be adjusted upward or downward.[7]

---

[6]The "lodestar" fee is determined "by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

[7]The twelve factors are as follows: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar

To determine whether a request for attorney's fees is reasonable, "there must be some evidence to support the reasonableness of, *inter alia*, the billing rate charged and the number of hours expended." *Lam, Inc., v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983). UBP provided detailed and unredacted billing records, *in camera*, to the court for the relevant time periods and counsel involved in the case, as well as evidence of the typical hourly rates for counsel in a patent case. *See* Def. Mot. Attorney Fees, Decl. L. Arent, ¶¶ 16-25 (stating that the 2009 AIPLA Report of the Economic Survey found the average billing rates for partners was between $429.00 and $472.00, depending on experience; and between $311.00 and $408.00 for associates, depending on experience). Redacted billing records were provided to Mr. Sorkin, and he has raised no objection to the bills as somehow incomplete in his briefing.

The attorneys who worked on this case are: (1) Kevin Walters, a special partner with over twenty years of litigation experience, who billed at $225.00 per hour; (2) Lisa Arent, an associate with over sixteen years of litigation experience and eleven as a patent litigator, who billed during the relevant time period[8] at $275.00; (3) Kenneth Nowakowski, a shareholder with nearly thirty years of litigation experience and fifteen as a patent litigator, who billed at $395.00 per hour; (4) Gary Plotecher, a shareholder with over thirty-five years of experience as a patent litigator, who billed at $450.00 per hour; (5) Christian Lavers, an associate who billed at $240.00 per hour; and

---

cases. *Johnson,* 488 F.2d at 717-19. Of these factors, the court should give "special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel." *Migis*, 135 F.3d at 1047.

[8]The hourly rates of Ms. Arent, Ms. Price, Mr. Nowakowski, and Mr. Plotecher increased throughout the course of this case. During the relevant time period—i.e., after the court's July 9, 2009 claim construction order—their billing rates were $275.00, $180.00, $395.00, and $450.00 per hour, respectively.

(6) Pamela Price, a paralegal who billed at $180.00 per hour.  Although the experience of Mr.

Lavers and Ms. Price are not provided, both individuals' work on the case was negligible—0.30

hours and 4.9 hours, respectively.  Summarized within the relevant time period, the following

chart depicts the time and fee claimed for each individual:

| Attorney Name and Title | Law Firm | Hourly Rate | Dates Work Performed | Total Hours | Total Fee |
|---|---|---|---|---|---|
| Kevin Walters (special partner) | Chaffee McCall | $225.00 | July 31-August 31, 2009 | 2.3 | $517.50 |
| Lisa Arent (associate) | Whyte Hirschboeck | $275.00 | July 10, 2009-October 20, 2009 | 154.94 | $42,608.50 |
| Kenneth Nowakowski (shareholder) | Whyte Hirschboeck | $395.00 | July 10, 2009-October 16, 2009 | 29.8 | $11,771.00 |
| Gary Plotecher (shareholder) | Whyte Hirschboeck | $450.00 | July 10, 2009-October 17, 2009 | 14.85 | $6,682.50 |
| Christian Lavers (associate) | Whyte Hirschboeck | $240.00 | July 31, 2009 | 0.30 | $72.00 |
| Pamela Price (paralegal) | Whyte Hirschboeck | $180.00 | July 29, 2009-Sept. 25, 2009 | 4.9 | $882.00 |
| **TOTAL:** | | | | **207.09** | **$63,533.50** |

   Taking into account applicable case law regarding the lodestar amount and the factors for

determining the reasonableness of an attorney's fee award[9], the court concludes that the fees

_____

   [9] Several district courts have used the *Johnson* factors in the context of a patent case.  *See, e.g., O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 2007 WL 2329833 (E.D. Tex. Aug. 13, 2007); *Microtune (Texas), L.P. v. Broadcom Corp.*, 2004 WL 716697 (E.D. Tex. Mar.

requested for the above six individuals are reasonable and do not require adjustment.  Patent

cases are time and labor intensive, requiring careful and skilled consideration of complex and

sometimes novel questions of law.  The total number of hours claimed, 207.09, is reasonable

considering Mr. Sorkin's claims, the amount of money at stake in this litigation, the time needed

to prepare for and attend the *Markman* hearing, and the number of documents filed on both sides

in this court.  Given the experience and skill of UBP's attorneys, the hourly rates requested are

commensurate with the AIPLA rates for partners and associates.  The court has also reviewed the

request in light of the rates and hours claimed by other patent counsel practicing in this court.

Counsel obtained a favorable result in this case, and was able to avert trial when UBP's motion

for summary judgment was granted.

Despite lodging a general statement that the attorney's fees requested are unreasonable,

Mr. Sorkin provides no specific argument as to the exact areas he thinks are problematic—i.e.,

total hours or hourly rate—nor any suggestion as to alternative figures to use in calculating the

---

18, 2004), *vacated per the parties' agreement*, 2004 WL 2358181 (E.D. Tex. Aug. 30, 2004);
*Sanitec Indus., Inc. v. Micro-Waste Corp.*, 2009 WL 1457157 (S.D. Tex. May 22, 2009); *Dippin'
Dots, Inc., v. Mosey*, 2005 WL 1866839 (N.D. Tex. Aug. 4, 2005), *rev'd in part on other
grounds*, 476 F.3d 1337 (Fed. Cir. 2007); *but see In re Electro-Mechanical Indus.*, 2009 WL
4928359, at *5 (Fed. Cir. Dec. 22, 2009) ("Section 285 allows only for the award of 'reasonable
attorney fees' to the prevailing party, it does not allow for enhancement of those reasonable
fees.").  Accordingly, this court does not consider the *Johnson* factors for any enhancement.
However, many of these factors are useful in determining whether the hourly fees charged and
time claimed are reasonable.  In this regard, the *Johnson* factors are similar to the eight factors
considered in determining a reasonable attorney's fee under Texas law.  *See Arthur Andersen &
Co. v. Perry Equip. Co.*, 945 S.W. 812, 818 (Tex. 1997) (citing Tex. Disciplinary R. Prof.
Conduct 1.04).  Importantly, "[t]he determination of a reasonable attorney fee requires the court
to consider all the relevant circumstances in a particular case[.]"  *Junker v. Eddings*, 396 F.3d
1359, 1365 (Fed. Cir. 2005).

lodestar amount.  The court therefore awards reasonable attorney's fees to UBP in the amount of $63,533,50.

B.    Sanctions Under Rule 11

An important difference between Rule 11 and Section 285 is that the former contains a safe harbor provision that requires the moving party to serve the motion for sanctions on the opposing party.  Rule 11(c)(2).  The opposing party then has twenty-one days to withdraw the pleading in question and, if it does not, the moving party may then file a motion for sanctions with the court.  *Id.*  However, "one purpose of the 21-day safe harbor is to provide an incentive to opposing attorneys to file Rule 11 motions promptly: delay past the point at which a pleading or motion may be amended or withdrawn may work a forfeiture of Rule 11 remedies." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 154 (2d Cir. 2009); *see also Tompkins v. Cyr*, 202 F.3d 770, 778 (5th Cir. 2000); *Gen'l Motors Acceptance Corp. v. Bates*, 954 F.2d 1081, 1086-87 (5th Cir. 1992) (finding that when the Rule 11 motion was not served and filed until nearly three years after the alleged violation, "the purposes behind Rule 11 were not served."); *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003).

In this case, UBP served its Rule 11 motion for sanctions on Mr. Sorkin on December 23, 2008, arguing that the March 12, 2008 Complaint, August 11, 2008 Infringement Contentions, and November 10 and 11, 2008 Amended Infringement Contentions be withdrawn.  Mr. Sorkin failed to respond or withdraw the pleadings in question.  UBP did not actually file its motion for sanctions with the court until the November 19, 2009 motion for attorney's fees.

Because the court has found this case to be exceptional under Section 285 and awarded reasonable attorney's fees under that statute, it need not consider whether UBP's motion, served

12

nearly one year before the instant motion requesting sanctions was filed with the court, would be

timely or could request attorney's fees which were incurred after the motion was filed.

C.      Costs

The court awarded costs to the prevailing party, UBP, in the Final Judgment. These

taxable costs are awarded pursuant to Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920, and are

governed by Fifth Circuit law. *Electro Sci. Indus., Inc. v. Gen'l Scanning Inc*., 247 F.3d 1341,

1349 (Fed. Cir. 2001); *Maxwell v. Angel-Etts of California, Inc*., 53 F. App'x 561, 569 (Fed. Cir.

2002).  However, an award of attorney's fees pursuant to 35 U.S.C. § 285 allows for recovery of

non-taxable costs as well, "beyond those enumerated in § 1920." *Id.*  Section 285 costs include

"those sums that the prevailing party incurs in the preparation for and performance of legal

services related to the suit[.]" *Id.* (internal quotation omitted).

Two problems in this case are: (1) UBP did not separate the disbursements and other

costs noted on the attorney invoices for the relevant time period—which would be recoverable

under Section 285—from the costs sought under Section 1920 for photocopying and transcripts;

and (2) it is not clear that Mr. Sorkin is opposing the original award of costs under Section

1920.[10]  The court will first determine costs allowable under Section 1920, then determine

whether additional costs should be awarded under Section 285.  This approach will avoid

reimbursing UBP twice for the same costs.

---

[10]A bill of costs was entered by the Clerk's Office, taxing costs in the amount of
$1,957.54, on November 24, 2009.  Doc. # 52.  Under Fed. R. Civ. P. 54(d)(1), Mr. Sorkin could
have filed a timely motion objecting to the bill of costs.  Although he did not do so, the court
considers his response to UBP's motion for attorney's fees and costs as an objection to taxing
costs in this amount.

1.    *Section 1920 costs*

UBP requests the following costs under Section 1920: (a) $175.00 in costs for the

*Markman* hearing transcript; (b) $403.54 in costs of duplicating UBP documents for production

to Mr. Sorkin; (c) $1,103.00 in color photographs used in UBP's claim construction and

summary judgment filings; and (d) $276.00 for copies of documents filed with the court and/or

Mr. Sorkin, for a total of $1,957.54.  According to the bill of costs, Mr. Sorkin opposes

categories (b) through (d).  The court is not certain about this, however, as Mr. Sorkin failed to

discuss costs in his response or file a separate opposition to the bill of costs.   Nevertheless, the

court will assume for purposes of this motion that categories (b) through (d) are opposed.

28 U.S.C. § 1920(4) allows a prevailing party to recover "[f]ees for exemplification and

copies of paper necessarily obtained for use in the case."  To recover costs under this Section,

the prevailing party must show the court that the cost was necessary to litigate the case.  *Coats v.*

*Penrod Drilling Corp*., 5 F.3d 877, 891 (5th Cir. 1993).  While the prevailing party need not

"identify every xerox copy made for use in the course of the legal proceedings" when seeking

costs, the court does "require some demonstration that the reproduction costs necessarily result

from the litigation."  *Fogelman*, 920 F.2d at 286.  Fees for color copies may be permissible, if

necessarily obtained for use in the case.  *See, e.g., West v. Perry*, 2009 WL 2225579 at *6 (E.D.

Tex. Jul. 23, 2009); *Conner v. Celanese, Ltd.*, 2007 WL 2329870 at *2 (S.D. Tex. Aug. 15,

2007).

UBP submitted a detailed list to the court of the costs of individual copies, what

documents each charge corresponds to, and the appropriate invoices.  All relate to documents

copied and produced to Mr. Sorkin, courtesy copies provided to the court, and color photographs

used in UBP's claim construction and summary judgment filings.  Mr. Sorkin did not identify

any specific amount as unreasonable, and gave no reason that the total was unreasonable.  The

court finds these costs were for copies "necessarily obtained for use in the case."  Pursuant to 28

U.S.C. § 1920, the court awards costs to UBP in the amount of $1,957.54.

      2.    *Section 285 costs*

      UBP included in its itemized bills a number of disbursements incurred during the relevant

time period.  The total amount requested is as follows:

| Date of Invoice and Firm Generating It | Dates Covered by Invoice | Type of Cost Incurred | Amount of Disbursement |
|---|---|---|---|
| August 6, 2009 (Whyte Hirschboeck) | July 1, 2009 - August 5, 2009 | Photocopies (color and black and white) | $816.35[11] |
| September 3, 2009 (Whyte Hirschboeck) | August 5, 2009 - August 31, 2009 | Photocopies, labels, mailing costs, and PACER searches | $2,891.00 |
| October 5, 2009 (Whyte Hirschboeck) | September 1, 2009 - September 25, 2009 | Westlaw research, photocopies, mailing costs | $387.16 |
| November 4, 2009 (Whyte Hirschboeck) | October 14, 2009 - October 20, 2009 | PACER searches | $9.28 |
| **TOTAL:** | | | **$4,103.79** |
| **TOTAL less $1,957.54 in Section 1920 Costs:** | | | **$2,146.25** |

---

    [11]Although this invoice includes nine days for which the court does not award attorney's fees—July 1 through July 9—none of the attorney activities during those nine days appear to have generated photocopies; rather, they appear to have been incurred later in the month when preparing UBP's summary judgment motion.  The court will therefore include this entire total in the costs calculation.

Mr. Sorkin does not specifically challenge any of these costs, other than a general statement that the request is excessive.  The court finds that these costs, all of which are for research and office expenses, are reasonably included in "those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Maxwell,* 53 F. App'x at 569.  Therefore, the court will award UBP $2,146.25 in costs pursuant to Section 285.

       3.    *Conclusion*

UBP will recover a total of $4,103.79 in costs—$1,957.54 in costs under Section 1920 and $2,146.25 in costs under Section 285.

D.    <u>Time from Which Appeal Will Run</u>

On December 1, 2009, the court granted UBP's unopposed motion for an order under Fed. R. Civ. P. 58(e), ordering that the instant motion for attorney's fees would have the same effect under Fed. R. App. P. 4(a)(4) as a timely motion filed under Fed. R. Civ. P. 59.  Doc. # 55. The motion for attorney's fees now having been resolved, the time for any party to file an appeal will run in accordance with Fed. R. App. 4(a)(1).

IT IS THEREFORE ORDERED that Defendant Universal Building Products, Inc.'s Motion for an Award of Attorney's Fees and Costs [Doc. # 48] is GRANTED IN PART.  UBP is awarded: (1) $63,533.50 in reasonable attorney's fees under 35 U.S.C. § 285 and (2) $4,103.79 in total costs.

So **ORDERED** and **SIGNED** this **9**  day of **February, 2010.**

_____

Ron Clark, United States District Judge